## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

**SCOTTSDALE INSURANCE COMPANY,**

**Plaintiff,**

vs.

**LOCK TOWNS COMMUNITY MENTAL HEALTH CENTER, INC., an administratively dissolved inactive Florida corporation, MARK KNOBEL, as officer of LOCK TOWNS COMMUNITY MENTAL HEALTH CENTER, INC., and KIMBERLY FOSTER,**

**CASE NO.**

**05 - 22630**

CIV-KING

JUDGE

**Defendants.**                    /

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, SCOTTSDALE INSURANCE COMPANY ("SCOTTSDALE"), hereby sues Defendants, LOCK TOWNS COMMUNITY MENTAL HEALTH CENTER, INC. ("LOCK TOWNS"), MARK KNOBEL ("KNOBEL"), as an officer of LOCK TOWNS, and KIMBERLY FOSTER ("FOSTER"), and seeks Declaratory Judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure for purposes of determining a question of actual controversy between the parties.

## PARTIES

1.     At all pertinent times, SCOTTSDALE was, and still is, a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Arizona.

2.      At all times pertinent to the issues giving rise to this lawsuit, LOCK TOWNS was a corporation organized and existing under the laws of the State of Florida, with its principal place of business in Miami-Dade County, Florida.

3.      As of September 16, 2005, LOCK TOWNS, became an administratively dissolved inactive corporation, under the laws of the State of Florida.

4.      At all time pertinent to the issues giving rise to this lawsuit, KNOBEL was an officer of LOCK TOWNS.

5.      At all pertinent times, FOSTER, was, and still is, a natural person and resident of Dade County, Florida.

6.      As the plaintiff in the underlying lawsuit styled, *Kimberly F. v. Citrus Health Network, Inc., Locktowns, and Department of Children and Families*, Case No.: 03-22842-CA-32, in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida (the "Underlying Lawsuit"), FOSTER, is a necessary party to this declaratory judgment action.

7.      Upon information and belief, at the time the Underling Lawsuit was filed, FOSTER was a foster child in the custody of the Department of Children and Families.

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest, attorneys' fees and costs.

9.     Venue is proper in the United States District Court of the Southern District of Florida, because a substantial part of the events or omissions giving rise to the claims asserted below occurred within this District.

## NATURE OF THE CLAIM

10.     This is an action for Declaratory Judgment pursuant to 28 U.S.C. § 2201 for the purposes of determining the rights and obligations, if any, of the parties to said insurance policy.  An actual controversy exists regarding whether coverage is afforded under the terms, conditions, provisions, limitations, and exclusions of the insurance policies for the claims asserted in the underlying lawsuit styled, *Kimberly F. v. Citrus Health Network, Inc., Locktowns, and Department of Children and Families*, Case No.: 03-22842-CA-32, in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida (the "Underlying Lawsuit").  (A copy of the underlying Amended Complaint is attached hereto as "Exhibit A.")

## THE SCOTTSDALE POLICIES

11.     SCOTTSDALE issued to LOCK TOWNS the following insurance policies:

    a.     Commercial General Liability Policy CLS206139, effective July 1, 1994 to July 1, 1995 (the "CGL Policy 1994-1995") (A copy of the CGL Policy 1994-1995 is attached hereto as "Exhibit B.") (See Ex. B.);

    b.     Commercial General Liability Policy CLS206598, effective July 1, 1995 to July 1, 1996 (the "CGL Policy 1995-1996") (A copy of the CGL Policy 1995-1996 is attached hereto as "Exhibit C.") (See Ex. C.);

c.      Commercial General Liability Policy CLS207074, effective July 1, 1996 to July 1, 1997 (the "CGL Policy 1996-1997") (A copy of the CGL Policy 1996-1997 is attached hereto as "Exhibit D.") (See Ex. D.);

d.      Professional Liability Policy CLS169442, effective July 1, 1994 to July 1, 1995 ( the "Professional Liability Policy 1994-1995") (A copy of the Professional Liability Policy 1994-1995 is attached hereto as "Exhibit E.") (See Ex. E.);

e.      Professional Liability Policy CLS262381, effective July 1, 1995 to July 1, 1996 ( the "Professional Liability Policy 1995-1996") (A copy of the Professional Liability Policy 1995-1996 is attached hereto as "Exhibit F.") (See Ex. F.);

f.      Professional Liability Policy CLS322578, effective July 1, 1996 to July 1, 1997 ( the "Professional Liability Policy 1996-1997") (A copy of the Professional Liability Policy 1996-1997 is attached hereto as "Exhibit G.") (See Ex. G.);

g.      **Directors and Officers Liability Policy DES004753, effective** November 17, 1995 to November 17, 1996 (the "DOL Policy 1995-1996") (A copy of the DOL Policy 1995-1996 is attached hereto as "Exhibit H.") (See Ex. H.);

h.      Directors and Officers Liability Policy DES005818, effective November 17, 1996 to November 17, 1997 (the "DOL Policy 1996-1997") (A copy of the DOL Policy 1996-1997 is attached hereto as "Exhibit I.") (See Ex. I.);

i.      Policy OPS000607 provided CGL Coverage, Professional Liability Coverage, and Directors and Officers Liability Coverage, effective July 1, 1997 to July 1, 1998 (the "Commercial Lines Policy 1997-1998") (A copy of the Commercial Lines Policy 1997-1998 is attached hereto as "Exhibit J.") (See Ex. J.).

## UNDERLYING LAWSUIT

12.     FOSTER brought a lawsuit styled, *Kimberly F. v. Citrus Health Network, Inc., Locktowns, and Department of Children and Families*, Case No.: 03-22842-CA-32, in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida, the Underlying Lawsuit. (See Ex. A.)

13.     The Amended Complaint in the Underlying Lawsuit alleges that LOCK TOWNS served as a residential locked facility to which FOSTER was improperly relegated for approximately three years (See Ex. A, ¶10) and that LOCK TOWNS had a duty to use reasonable care to provide for FOSTER's safety and well being while at its facility. (See Ex. A, ¶11.)

14.     The Amended Complaint further alleges that LOCK TOWNS breached its obligations and violated FOSTER's rights to be kept safe and that while she was at the **LOCK TOWNS facility, LOCK TOWNS inflicted abuse on her by excessive force, chemical restraints, hitting, broken bones, other harms, and emotional and mental trauma** through continual disparagement, ridicule, taunting and insults. (See Ex. A, ¶12.)

15.     In the Amended Complaint, FOSTER asserted that as a result of LOCK TOWNS' abuses and negligent acts, she sustained harm. (See Ex. A, ¶13.)

## COUNT I
## THE CGL POLICIES

16.     The allegations of Paragraphs 1 through 15 are incorporated herein by reference, as though fully set forth herein.

17.     The CGL Policy 1994-1995, 1995-1996, and 1996-1997 and the CGL Coverage Part of the Commercial Lines Policy 1997-1998 (collectively the "CGL

5

Policies") are written on an occurrence basis. (See Exs. B and C, Form CG0001 (10-93); Exs. D and J, Form CG0001 (01-96).)

18.     Pursuant to the Inuring Agreement of the CGL Coverage Part under Form CG0001 (10-93) and Form CG0001 (01-96) (collectively the "CGL Coverage"), Scottsdale "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

19.     The CGL Coverage applies to "bodily injury" and "property damage" only if it is caused by an "occurrence" that takes place in the coverage territory and occurs during the policy period.

20.     This claim does not allege "bodily injury" caused by an "occurrence" that occurred during the policy period to which the policies' insurance applies.

21.     **The CGL Coverage is endorsed by Exclusion—Designated Professional Services, which provides that the insurance does not apply to "bodily injury," "property damage," "personal injury," or "advertising injury" due to the rendering or failure to render any professional service.** (See Exs. B, C, and J, Exclusion—Designated Professional Services, Forms CG2116 (11-85) and/or Form CG2116 (11-85).)

22.     FOSTER's claims directly trigger the Exclusion—Designated Professional Services because they allege that LOCK TOWNS failed to render professional services to her. (See Ex. A, ¶¶11-14.)

23.     The Exclusion—Designated Professional Services precludes CGL coverage for the claim under the CGL Policies. (See Exs. B, C, and J, Exclusion—Designated Professional Services, Forms CG2116 (11-85) and/or Form CG2116 (11-85).)

24.    The CGL Policies do not provide coverage for the claims subject of the Underlying Suit.

## COUNT II
## THE PROFESSIONAL LIABILITY POLICIES

25.    The allegations of Paragraphs 1 to 15 are incorporated herein by reference, as though fully set forth herein.

26.    The Professional Liability Policies 1994-1995, 1995-1996, and 1996-1997 and the Professional Liability Part of the Commercial Lines Policy 1997-1998 (collectively the "Professional Liability Policies") are written on a claims made basis (See Ex. E, Form CLS-PRO-1 (7-86); Exs. F, G and J, Form CLS-PRO-1 (10-94).)

27.    Pursuant to the Insuring Agreement of the Professional Liability Coverage Parts under Forms CLS-PRO-1 (7-86) and CLS-PRO-1 (10-94) (collectively the "Professional Liability Coverage"), Scottsdale "will pay those sums that the insured becomes legally obligated to pay as damages because of injury as a result of a 'wrongful act.' This insurance applies to injury only if claim for damages because of the injury is first made against the insured during the 'policy year.'" The insurance "does not apply to injury caused by a 'wrongful act' which was committed before the Retroactive Date shown in the Declarations or which occurs after the 'policy year.'" "A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by any insured or by us, whichever comes first." (See Ex. E, Form CLS-PRO-1 (7-86); Exs. F, G and J, Form CLS-PRO-1 (10-94).)

28.    FOSTER's claim was made to LOCK TOWNS by service of the Complaint on March 17, 2004.

29.     The Professional Liability Policies 1994-1995, 1995-1996, 1996-1997, and the Commercial Lines Policy 1997-1998 expired on July 1, 1995, July 1, 1996, July 1, 1997, and July 1, 1998, respectively. (See Exs. E, F, G and J.)

30.     Because FOSTER's claim was not reported within the policy period of any of the Professional Liability Policies, the Professional Liability Policies do not provide coverage for the claim.

31.     Even if FOSTER's claim had been first made against LOCK TOWNS within the policy period of any of the Professional Liability Policies, the Professional Liability Policies contain Duties In the Event of Wrongful Act, Claim, or Suit. (See Ex. E, F, G and J, Form CLS-PRO-1 (7-86).)

32.     The Duties In the Event of Wrongful Act, Claim, or Suit provided that "[i]f a claim is received by any insured you must: (1) Immediately record the specifics of the claim and the date received; and (2) Notify us as soon as practicable." The Insured must also "[i]mmediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or a 'suit.'" (See Ex. E, F, G and J, Form CLS-PRO-1 (7-86).)

33.     If FOSTER'S claim had been made against LOCK TOWNS within the policy period of any of the Professional Liability policies, by failing to notify SCOTTSDALE as soon as practicable of FOSTER's claim and the Underlying Lawsuit in accordance with the Professional Liability Policies' Duties In the Event of Wrongful Act, Claim, or Suit, LOCK TOWNS breached the Professional Liability Policies' Duties In the Event of Wrongful Act, Claim, or Suit and the Professional Liability Policies would not provide coverage for the claim.

## COUNT III
## THE DIRECTORS AND OFFICERS LIABILITY POLICIES

34. The allegations of Paragraphs 1 to 15 are incorporated herein by reference, as though fully set forth herein.

35. The DOL Policies 1995-1996, 1996-1997 and the Directors and Officers Liability Coverage Part of the Commercial Lines 1997-1998 (collectively the "DOL Policies") are written on a claims made basis (See Ex. H, Form DES-J-1 (9-95); Ex. I, Form DES-J-1 (1-96); and Ex. J, Form DES-P-1(7-96).)

36. Pursuant to the Insuring Agreement of the Directors and Officers Liability Coverage, Scottsdale "will pay on behalf of the INDIVIDUAL INSURED(S) and/or the ENTITY, in accordance with the terms, conditions and exclusions of the Coverage Part, LOSS which the INDIVIDUAL INSURED(S) and/or the ENTITY shall become legally obligated to pay by reason of any claim or claims made against the INDIVIDUAL INSURED(S) and/or the ENTITY as the result of a WRONGFUL ACT, provided always that the claim is first made against the INDIVIDUAL INSURED(S) and/or the ENTITY during the POLICY PERIOD." (See Ex. H, Form DES-J-1 (9-95); Ex. I, Form DES-J-1 (1-96); and Ex. J, Form DES-P-1 (7-96).)

37. FOSTER's claim was made to LOCK TOWNS by service of the Complaint on February 21, 2004.

38. The DOL Policies 1995-1996, 1996-1997, and 1997-1998 expired on November 17, 1996, November 17, 1997 and July 1, 1998, respectively. (See Exs. H, I and J, Declarations.)

9

39. Because FOSTER's claim was not reported within the policy period of any of the DOL Policies, the DOL Policies do not provide coverage for FOSTER's claims subject of the Underlying Lawsuit.

40. Even if FOSTER's claim had been first made against LOCK TOWNS during the policy period of any of the DOL Policies, the DOL Policies contain Exclusion (H) which precludes coverage for "any claim made against the Insured based on the rendering or failure to render any professional service." (See Ex. H, I and J, Exclusion (H).) Therefore, because the claims subject of the Underlying Complaint involve LOCK TOWNS failed to render professional services, the DOL Policies would not provide coverage for the claim.

41. Furthermore, even if FOSTER's claim had been first made against LOCK TOWNS during the policy period of any of the DOL Policies, LOCK TOWNS breached the DOL Policies' Notice of Claim or Loss Provisions. (See Ex. H, Form DES-J-1 (9-95); Ex. I, Form DES-J-1 (1-96); and Ex. J, Form DES-P-1 (7-96).)

42. Pursuant to the Notice of Claim or Loss Provisions, "[i]f, during the policy year or the Extended Reporting Periods, the **INSURED(S)** shall receive written or oral notice from any party that it is the intention of such party to hold the **INSURED(S)** responsible for any **WRONGFUL ACT(S)**, the **INSURED(S)** shall give written notice to the Company of the receipt of such written or oral notice as soon as practicable." Moreover, "[t]he **INSURED(S)** shall give written notice to the Company as soon as practicable of any claim made against the **INSURED(S)** or of any specific circumstances involved which may result in a claim." (See Ex. H, Form DES-J-1 (9-95); Ex. I, Form DES-J-1 (1-96); and Ex. J, Form DES-P-I (7-96).)

10

43.   By failing to notify SCOTTSDALE of FOSTER's claim in accordance with the DOL Policies' Notice of Claim or Loss Provisions, LOCK TOWNS breached the DOL Policies' Notice of Claim or Loss Provisions and the DOL Policies would not provide coverage for the claim.

44.   SCOTTSDALE seeks declaration that LOCK TOWNS is not entitled to a defense or indemnity under the CGL Policies, Professional Liability Policies, or the DOL Policies for the claims subject of the Underlying Lawsuit.

45.   An actual controversy exists between the parties to this lawsuit regarding whether the CGL Policies, Professional Liability Policies, and the DOL Policies provide coverage for the claims subject of the Underlying Lawsuit.

46.   SCOTTSDALE requests the Court to declare that based on the language of the CGL Policies, Professional Liability Policies, and the DOL Policies, LOCK TOWNS is not entitled to coverage, for defense or indemnity, for the claims asserted against it in the Underlying Lawsuit.

WHEREFORE, SCOTTSDALE respectfully requests that this Court enter a judgment in favor of SCOTTSDALE hereby declaring that (1) the CGL Policies do not provide coverage for defense or indemnity for the claims subject of the Underlying Lawsuit; (2) the Professional Liability Policies do not provide coverage for defense or indemnity for the claims subject of the Underlying Lawsuit; (3) the Directors and Officers Liability Policies do not provide coverage for defense or indemnity for the claims subject of the Underlying Lawsuit; and granting (4) SCOTTSDALE further and supplemental relief this Honorable Court deems necessary and proper.

Respectfully submitted this **30ᵗʰ day of September, 2005**.


**PHELPS DUNBAR LLP**


_Julie K. Narhi_

Julie K. Narhi
Fla. Bar No. 0571601
Matthew Litsky
Florida Bar No. 0992194
100 South Ashley Drive • Suite 1900
Tampa, Florida 33602-5311
(813) 472-7550 Phone
(813) 472-7570 Fax

TRIAL ATTORNEYS FOR PLAINTIFF
SCOTTSDALE INSURANCE COMPANY

TA.109123.1

.

## Exhibit A

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

KIMBERLY F.,                          GENERAL JURISDICTION DIVISION

      Plaintiff,                     CASE NO.: 03-22842-CA32

v.

CITRUS MENTAL HEALTH, LOCKTOWNS,                    AMENDED
and DEPARTMENT OF CHILDREN AND          COMPLAINT FOR DAMAGES
FAMILIES,                               (Jury Trial Requested)

      Defendants.

_____

      Plaintiff Kimberly Foster sues Defendants Citrus Mental

Health [Citrus], Locktowns [Locktowns] and Department of

Children and Families [DCAF], and alleges:

      1. This is an action for damages that exceed

$50,000.00 and for other relief within the jurisdiction of this

Court.

      2. Venue is appropriate in Dade County because the

majority of the Plaintiff's claims accrued here, the Defendants

are located either in Dade or Broward County, and the only

Broward County Defendant [Locktowns] is no longer doing business

in Broward County, so defending the action in Dade County will

be no more burdensome for Locktowns than defending in Broward.

      3. At all times material, Plaintiff was a foster child

in the custody of the Department of Children and Family

Services.

4. All conditions precedent, including the notice provisions of Section 768.28, Florida Statutes, have been complied with, satisfied or waived.

### Claims Against Defendant Citrus

Plaintiff realleges all prior paragraphs and further alleges:

5. At all times material, Defendant Citrus f/k/a Northwest Dade served as the contracted health case manager for the Plaintiff and served as staff to the triage committee known as the Case Review Committee.

6. In this capacity, Defendant Citrus had the duty to use reasonable care in providing for the services needed by Plaintiff and to keep the Plaintiff safe in the placement selected for her by Defendant Citrus.

7. Defendant Citrus also, at all times material, operated a foster care system and, in that capacity, had a duty to make sure that its therapeutic foster parents were given proper training, supervision and support so that children were not endangered while in their custody.

8. Defendant Citrus breached its obligation to Plaintiff and was negligent in that:

a. Defendant Citrus caused the Plaintiff to be left essentially abandoned at a facility in central Florida known as Devereux, despite having been advised

2

on numerous occasions beginning in late 2000 forward that the Plaintiff, although fragile, was doing well and was making progress.

b. Defendant Citrus ignored the information provided by Devereux that the Plaintiff upon her return to Dade County should be placed in a therapeutic environment in which she was allowed to participate in mainstream classes and work part time as she continued to work toward the subsidized independent living program.

c. Citrus, instead of putting Plaintiff in an appropriate therapeutic placement on a timely basis, delayed for several months the child's transfer to Dade County then put the Plaintiff in a therapeutic foster home where Citrus would not allow her to attend mainstream classes or work outside the home at a part time job comparable to the one that she had already demonstrated her ability to handle.

d. Citrus knew that it had not provided proper training to its therapeutic foster parents regarding the administration and securing of Plaintiff's medications, particularly in situations where the Plaintiff was going to have rights denied her by Citrus.

3

e. The Citrus therapeutic foster parents for whom Citrus is vicariously liable allowed Plaintiff access to several weeks worth of medication, which resulted in an overdose and near death of Plaintiff.

f. Following Plaintiff's admission to a locked psychiatric hospital in Dade, Citrus negligently failed to provide Plaintiff with access to appropriate education and other services, essentially trying to stall until Plaintiff's 18th birthday, in the apparent hope that Plaintiff would therefore not be accepted into the subsidized independent living program.

9. As a result of the negligence of Defendant Citrus, Plaintiff sustained bodily injury, psychological and emotional trauma and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expenses of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and aggravation of a previously existing condition. The losses are either permanent or continuing and Plaintiff will suffer the losses in the future.

<u>Claims Against Defendant Locktowns</u>

Plaintiff realleges paragraphs 1 through 4 and further alleges:

4

03/01/2004 11:30     95424^^846                    OFFICES                         PAGE 08

10. At all times material, Defendant Locktowns served as a residential locked facility to which the Plaintiff was improperly relegated for approximately three years.

11. Defendant Locktowns had a duty to use reasonable care to provide for the safety and well being of the Plaintiff while in Locktowns.

12. Defendant Locktowns breached its obligations and violated the Plaintiff's right to be kept safe in that while at Locktowns Plaintiff was subjected to multiple incidents in which excessive force and abuse was inflicted upon her, Plaintiff was abused through chemical restraints, physically abused by staff hitting her, breaking bones and inflicting other harms upon her, and Plaintiff was subjected to emotional and mental trauma constituting abuse by staff who subjected her to continual disparagement, ridicule, taunting and insults, despite Locktowns and its staff being aware of the impropriety of such conduct, prior abuses to which Plaintiff had been subjected and the resulting fragile mental and psychological state in which Plaintiff was.

13. As a result of Defendant Locktowns' abuses and negligent acts, Plaintiff sustained the harms set forth more fully herein.

5

## Claims Against Defendant DCAF

Plaintiff realleges paragraphs 1 through 4 and further alleges:

14. At all times material, Defendant DCAF had a duty to exercise reasonable care to keep Plaintiff safe and to remove her from places where risk of serious harm to her physical, psychological and emotional well-being were foreseeable.

15. Defendant DCAF breached its obligation to Plaintiff and was negligent in that DCAF failed to remove her from Locktowns, despite having full access to information reflecting the dangerousness of Locktowns, the abuses that were endemic to Locktowns, the chemical restraints that were routinely used, the needless excessive force and excessive isolation, acts of staff abuse of the children there, and DCAF knew that Plaintiff was being subjected to these harms and abuses.

16. Beginning prior to 1997 [despite requests Defendant DCAF has still not produced its records regarding Plaintiff prior to 1998], numerous incidents regarding Plaintiff were reported to the Department.

17. Instead of taking action to provide for the safety of the Plaintiff, Defendant DCAF left Plaintiff at Locktowns, to her detriment and repeated acts of harm, abuse, terrorization, disparagement and other injuries.

6

18. Additionally, in late 2000, Defendant DCAF was advised that Plaintiff had satisfactorily completed the Devereux program in central Florida, and needed to be moved to a safe therapeutic home where her needs could be provided for.

19. Instead of removing Plaintiff from Devereux promptly as obligated, Defendant DCAF essentially abandoned Plaintiff, leaving her in the central Florida facility for several months, apparently delaying the required move of Plaintiff to a position of safety and appropriateness where she would not be suffering further harm.

20. Defendant DCAF was also negligent in that, when it finally arranged for Plaintiff to be transferred to south Florida from Devereux in late June 2001, it failed to take the necessary precautions with respect to the large supply of psychotropic and other prescription medications which Devereux provided for Plaintiff and left these medications where Plaintiff would have access to them despite its knowledge of her several prior suicide attempts.

21. Defendant DCAF compounded the likelihood of Plaintiff using the available, accessible medications by subjecting Plaintiff to the further trauma of denying her access to the part time job and mainstream educational classes which had been recommended for her in order to avoid further

7

psychological trauma and to put her on track for independent living.

22. As a result, Plaintiff sustained harm as set forth more fully above and herein.

23. As a result of the Department's negligence and other misconduct in putting the Plaintiff in the facilities in question, the Department committed abuse and neglect pursuant to Florida law and violated its obligations to Plaintiff and as a result Plaintiff sustained bodily and mental injury, resulting pain and suffering, mental anguish, psychological trauma, emotional distress, loss of capacity for the enjoyment of life, expense of hospitalization and residential and related care medical care, psychological care, and related expenses, loss of her ability to maximize her potential, loss of her ability to earn money, aggravation of a previously existing condition and loss of her SSI trust funds.  The losses are permanent and continuing in nature and the Plaintiff will suffer the losses in the future.

24. The Plaintiff has been attempting to obtain her records from the Department and has had to file suit to obtain same.  Although DCAF agreed to produce Plaintiff's records, it produced some records but withheld and continues to withhold other significant records, interfering with the Plaintiff's ability to identify individuals at the Department

8

who are responsible or may have responsibility for violations of the civil rights of the Plaintiff.

25. Throughout Plaintiff's stay in foster care, in addition to ignoring Plaintiff's rights to safety and a family, DCAF concealed the abuses of Plaintiff from the Court, violated its obligation to notify the Hotline and conduct proper investigations and withheld or misrepresented information to law enforcement officials who tried to look into some of the attacks and abuses on Plaintiff, thus preventing the proper and timely investigation of these claims.

### Liability

26. Because the damages caused Plaintiff by each Defendant overlap or are coextensive, damages cannot be apportioned as to each Defendant, each Defendant is fully liable.

WHEREFORE Plaintiff demands judgment against the Defendants for damages in excess of $50,000.00 and such further relief as the Court deems appropriate. Plaintiff also demands trial by jury of all issues so triable as of right.

Dated this 26th day of November, 2003.

9

GIEVERS, P.A.
Counsel for Plaintiff

KAREN GIEVERS
Fla. Bar No.: 262005
524 East College Avenue
Suite 2
Tallahassee, FL 32301
T - 850/222-1961
F - 850/222-2153

Roy Wasson, Esquire
Co-Counsel for Plaintiff
Suite 450, Gables One Tower
1320 South Dixie Highway
Miami, FL 33146
T - 305-666-5053
F - 305-666-0010

10

03/01/2004  11:30   9542477946                    OFFICES                          PAGE  02



IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR DADE COUNTY, FLORIDA

KIMBERLY F.,                          GENERAL JURISDICTION DIVISION

     Plaintiff,                       CASE NO.: 03-22842-CA-32

v.

CITRUS MENTAL HEALTH, LOCKTOWNS,
and DEPARTMENT OF CHILDREN AND        CIVIL ACTIO      ONS
FAMILIES,

     Defendant

_____/

THE STATE OF FLORIDA:

TO Each Sheriff of Said State:

YOU ARE HEREBY COMMANDED to serve this Summons and Amended
Complaint for Damages in this action on Defendant Locktowns, by
serving:

               Howard Newman
               c/o Locktowns
               d/b/a Locktowns Residential Facilities, Inc.
               20201 NW 37th Avenue
               Miami, FL 33056

or any other person authorized to accept service

Defendant is required to serve written defenses to the complaint
to Karen Gievers, Plaintiff's attorney, whose address is 524
East College Avenue, Suite 2, Tallahassee, Florida 32301, within
20 days after service of this summons, exclusive of the day of
service, and to file the original of the defenses with the clerk
of this court either before service on plaintiff's attorney or
immediately thereafter.  If said Defendant fails to do so, a
default may be entered against said Defendant for the relief
demanded in the complaint.

FEB 11 2004

    DATED ON _____.

                       HARVEY RUVIN
                       as Clerk of said Court
                       SHARON SANDS

                       By:_____
                         as Deputy Clerk

03/01/2004  11:30    9542431946                     OFFICES                                   PAGE  03

                                                IN THE CIRCUIT COURT OF THE
                                                11TH JUDICIAL CIRCUIT IN AND
                                                FOR DADE COUNTY, FLORIDA

KIMBERLY F.,                                    GENERAL JURISDICTION DIVISION

        Plaintiff,                              CASE NO.: 03-22842-CA-32

V.
CITRUS MENTAL HEALTH, LOCKTOWNS,
and DEPARTMENT OF CHILDREN AND                  CIVIL ACTION SUMMONS
FAMILIES,

        Defendant
_____/

THE STATE OF FLORIDA:

TO Each Sheriff of Said State:

YOU ARE HEREBY COMMANDED to serve this Summons and Amended
Complaint for Damages in this action on Defendant Locktowns, by
serving:

                Howard Newman
                c/o Locktowns
                d/b/a Locktowns Residential Facilities, Inc.
                20201 NW 37th Avenue
                Miami, FL 33056

or any other person authorized to accept service

Defendant is required to serve written defenses to the complaint
to Karen Gievers, Plaintiff's attorney, whose address is 524
East College Avenue, Suite 2, Tallahassee, Florida 32301, within
20 days after service of this summons, exclusive of the day of
service, and to file the original of the defenses with the clerk
of this court either before service on plaintiff's attorney or
immediately thereafter.  If said Defendant fails to do so, a
default may be entered against said Defendant for the relief
demanded in the complaint.

        DATED ON _____ FEB 13 2004 _____.

                                HARVEY RUVIN
                                    as Clerk of said Court
                                    CHARON SANDS
                                By:_____
                                    as Deputy Clerk

# **Exhibit B**



## SCOTTSDALE INSURANCE COMPANY ®

8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A STOCK COMPANY

# Commercial Lines Policy

THIS POLICY CONSISTS OF: DECLARATION, COMMON POLICY CONDITIONS, ONE OR MORE
COVERAGE PARTS. A COVERAGE PART CONSISTS OF: ONE OR MORE COVERAGE FORMS,
APPLICABLE FORMS AND ENDORSEMENTS.

CLS-J-2 (11-93)

## ADDENDUM

Some internal notes, or stamps, or typing on the declaration sheet may appear. The Intended use for these is internal only and may not have been a part of the policy received by the insured.

Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly appointed representative of the company if so required by local law.

Secretary

President

CLS-J-2 (11-93)

# COMMERCIAL LIABILITY DECLARATIONS

## Scottsdale Insurance Company®

GLS448714
RENEWAL OF NUMBER

8877 North Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 or in AZ 1-800-225-9458
A STOCK COMPANY

CLS206139

To Be Completed By Agent
INSPECTION
☐ Ordered Date ____
☐ Attached
☐ Not Necessary
% of Manual | Comm

Item 1. Named Insured and Mailing Address:

Lock Towns Community Mental Health Center, Inc.
18475 N.W. 2nd Avenue *See end.#4*
Miami, Florida 33169

Agent Name and Address:     KB CLS 206598

J. J. Negley Associates, Inc.
P.O. Box 206
Cedar Grove, New Jersey 07009     X|R CLS169442     Agent No: _____ 295012

Item 2. Policy Period     From: 07/01/94     To: 07/01/95

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3. Retroactive Date:   None

**PREMIUM FINANCED**

Item 4: Business Description:  Mental Health Center

Item 5.  In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | CG0001 (10/93) | $    8,662.00 |
| Professional Liability Coverage Part | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

| | | |
|---|---|---|
| Total | $ | 8,662.00 |
| SURPLUS LINES TAX | | 434.35 |
| POLICY FEE | | 25.00 |

Item 6.  Forms and endorsements applicable to all Coverage Parts:

CLS-J-2(11/93)     CG0001(10/93)     CLS-D-1(10/92)     CLS-SD-1(02/92)     CG2021(10/93)
CG2116(11/85)     CG2147(10/93)     CG2149(10/93)     IL0021(11/85)     IL0017(11/85)
CG2011(11/85)     CG2026(11/85)     UTS-9g(05/92)     Endt #1 thru 3,4,5,6,

Countersigned     07/13/94     CG     By

DATE

**THIS IS A TRUE AND CERTIFIED COPY**
AUTHORIZED REPRESENTATIVE

CLS-D-1 (10-92)

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

HOME OFFICE COPY

Scottsdale Insurance Company ®
### COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number __CLS206139__

## LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products / Completed Operations) | $ 1,000,000 |
| Products / Completed Operations Aggregate Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Fire Damage Limit | $ 50,000  any one fire |
| Medical Expense Limit | $ 1,000  any one person |

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:

☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (Other than Partnership or Joint Venture)

Business description:

  Mental Health Center

Location of all premises you own, rent or occupy:

  SEE BELOW

## PREMIUM

| Classification | Code No. | *Premium Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| Mental Health Center | | | | | | |
| | | a) Square Feet | | | $ Included | $8,662 |

LOCATION SCHEDULE:
~~001   18475 NW 2nd Ave.,   Miami FL~~ deleted end.#6
002   18555 NW 85th Ave.,   Opalocka FL
003   1000 SW 84th Ave.,   Hollywood FL
004   15055 NW 27th Ave.,   Opalocka FL
5- end.#5

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)**
Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

This Supplemental Declarations and the Commercial Liability Declarations, together with the common policy conditions, coverage form(s) and endorsements complete the above numbered policy.
CLS-SD-1 (2-92)

COMMERCIAL GENERAL LIABILITY
CG 00 01 10 93

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN-INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I - COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement.**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

   b. This insurance applies to "bodily injury" and "property damage" only if:

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

      (2) The "bodily injury" or "property damage" occurs during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **Exclusions.**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   b. **Contractual Liability**

      "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

      (1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

      (2) That the insured would have in the absence of the contract or agreement.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

      This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Copyright, Insurance Services Office, Inc., 1992

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

Copyright, Insurance Services Office, Inc., 1992   CG 00 01 10 93   □

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

   (a) Less than 26 feet long; and

   (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

### h. Mobile Equipment

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

### i. War

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

### j. Damage to Property

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

### k. Damage to Your Product

"Property damage" to "your product" arising out of it or any part of it.

### l. Damage to Your Work

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

### m. Damage to Impaired Property or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

 Copyright, Insurance Services Office, Inc., 1992

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

   Copyright, Insurance Services Office, Inc., 1992   CG 00 01 10 93

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement.

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions.

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II - WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

   (2) "Property damage" to property:

      (a) Owned, occupied or used by,

      (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

      you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

   Copyright, Insurance Services Office, Inc., 1992   CG 00 01 10 93   ☐

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   (1) How, when and where the "occurrence" or offense took place;

   (2) The names and addresses of any injured persons and witnesses; and

   (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

   (1) Immediately record the specifics of the claim or "suit" and the date received; and

   (2) Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

     Copyright, Insurance Services Office, Inc., 1992     CG 00 01 10 93   □

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

9. **When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V - DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in a. above; or

**(b)** The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b. You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

b. Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

b. A sidetrack agreement;

c. Any easement or license agreement. except in connection with construction or demolition operations on or within 50 feet of a railroad;

d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph f. does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

    Copyright, Insurance Services Office. Inc., 1992    CG 00 01 10 93   ▢

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

(1) When all of the work called for in your contract has been completed.

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

**15.** "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

**16.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

**17.** "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

**18.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**19.** "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

 Copyright, Insurance Services Office, Inc., 1992 CG 00 01 10 93   □

COMMERCIAL GENERAL LIABILITY
CG 20 21 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - VOLUNTEER WORKERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

WHO IS AN INSURED (Section II) is amended to include as an insured any person(s) who are volunteer worker(s) for you, but only while acting at the direction of, and within the scope of their duties for you. However, no volunteer workers(s) are insureds for:

1. "Bodily injury" or "personal injury":

   a. To you, to your partners or members (if you are a partnership or joint venture), to your other volunteer worker(s) or to your "employees" arising out of and in the course of their duties for you;

   b. To the spouse, child, parent, brother or sister of your volunteer worker(s) or your "employees" as a consequence of paragraph 1.a. above;

   c. For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs 1.a or b. above; or

   d. Arising out of his or her providing or failing to provide professional health care services.

2. "Property damage" to property:

   a. Owned, occupied, or used by,

   b. Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your other volunteer worker(s), your "employees" or, if you are a partnership or joint venture, any partner or member.

CG 20 21 10 93                    Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER: CLS206139    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION--DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Description of Professional Services:**

1. All Professional Services

2.

3.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect ot any professional services shown in the Schedule, this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" due to the rendering or failure to render any professional service.

CG 21 16 11 85          Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY
CG 21 47 10 93

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY IN-JURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Bodily Injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Personal Injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 10 93                Copyright, Insurance Services Office, Inc., 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:
COMMERICAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) is replaced by the following:

This insurance does not apply to:

f. (1) "Bodily injury" or "property damage" which would not have occured in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:
   (a) Request, demand or order that any insured or others test for, monitor, clean up. remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

CG 21 49 10 93                    Copyright, Insurance Services Office, Inc., 1992

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

> BUSINESSOWNERS POLICY
> COMMERCIAL AUTO COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:
   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:
   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material";

   "Source material", "special nuclear material:, and and "by-product material" have the meanings given them in the atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

 Copyright, Insurance Services Office, Inc., 1983, 1984

"Waste" means any waste material (a) containing "by-product material' other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipement or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 5;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium;
   or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreement between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authroized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regualtions, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspecitons, surveys reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85                    Copyright, Insurance Services Office, Inc., 1982, 1983

POLICY NUMBER:     CLS2061                     COM RCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

1 . Designation of Premises(Part Leased to You):

16555 NW 85th Ave.,

Opalocka, FL

2. Name of Person or Organization(Additional Insured):
North Dade Health Center

3.  Additional Premium:     Included

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following exclusion:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demoliton operations performed by or on behalf of the person or organizaiton shown in the Schedule.

SCHEDULE OF LOCATIONS

CG 20 11 11 85                Copyright, Insurance Services Office, Inc. 1984

POLICY NUMBER:   CLS206139                     COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITONAL INSURED ---DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

Community Health Facilities Fund,

1000 16th St., NW, Suite 500
Washington, DC

(If no entry appears abaove, information required to compleate this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented you.

CG 20 26 11 85                    Copyright, Insurance Services Office, Inc. 1984

 **Scottsdale Insurance Company** ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12.01 | NOON | | |
| CLS206139 | 07 | 01 | 94 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company/or Underwriters to pay any amount claimed to be due under this policy, the Company/or Underwriters at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court.

It is further agreed that service of process in such suit may be made upon

Insurance Commissioner of Florida
200 East Gaines
Tallahassee, Florida 32301

and that in any suit instituted against any one of them under this contract, the Company/or Underwriters agree to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company/or Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that it or they will enter a general appearance upon the Company's/or Underwriter's behalf in the event a suit is instituted.

Pursuant to any statute of any state, territory or district of the United States of America, which makes a provision, the Company/or Underwriters will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance). The above named is designated as the person to whom the officer is authorized to mail the process or a true copy.

07/13/94

AUTHORIZED REPRESENTATIVE                    DATE

UTS-9g (5-92)

 **Scottsdale Insurance Company**®

**Endorsement No.** 1

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO | DAY | YR. | 12:01 | NOON | | |
| | | | | A.M. | | | |
| CLS206139 | 07 | 01 | 94 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEXUAL MISCONDUCT EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION 1--COVERAGES, COVERAGE A. BODILY INURY AND PROPERTY DAMAGE LIABILITY, 2. EXCLUSIONS** is amended to include the following:

This insurance does not apply to:
"Bodily injury" to any person arising out of "sexual misconduct."

**SECTION 1--COVERAGES, COVERAGE B. PERSONAL AND ADVERTISNG INJURY LIABILITY, 2. EXCLUSIONS**

This insurance does not apply to:
"Personal injury" or "advertising injury" arising out of "sexual misconduct".

**SECTION V--DEFINITIONS** is amended to include the following:

"Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured, whether committed by, caused by or contributed to by any insured, or which is caused by or contributed to by the failure of any insured to:

a. Properly train, hire or supervise any employee; or

b. Properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured.

_____
AUTHORIZED REPRESENTATIVE

 **Scottsdale Insurance Company** ®                   **Endorsement**

**No.** 2

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS206139 | 07 | 01 | 94 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295012 |

In consideration of charged premium the following is added to form CG2011(11/85):

Name of Person or Organization
- - - - - - - - - - - - - - - - - - - - - - - - - - - -
South Florida State Hospital

Designated Premises
- - - - - - - - - - - - - - - - - - -
1000 SW 84th Ave.,
Hollywood,
FL

_____     07/13/94
AUTHORIZED REPRESENTATIVE          DATE

 

# Scottsdale Insurance Company®

**Endorsement No.** 3

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS206139 | 07 | 01 | 94 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295012 |

In consideration of charged premium the following is added to form CG2026(11/85):

    Osceola Co Industrial Dev Authority c/o Economic Dev. Comm
    200 E. Robinson St., Suite 600
    Orlando, FL

    First Union National Bank of Florida
    Corporate Trust Dept.
    Jacksonville, FL

| | 07/13/94 |
|---|---|
| AUTHORIZED REPRESENTATIVE | DATE |

## SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. 4**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12.01 | NOON | | |
| CLS206139 | 03 | 14 | 95 | A.M. X | | Lock Towns Community Mental health Center | L.J. Negley Assoc. 295012 |

Mailing Address is amended to read:

20201 N.W. 37th Avenue
Miami, Florida 33055

**RECEIVED**

APR 14 1995

**PROFESSIONAL LINES**

UTS-2g

AUTHORIZED REPRESENTATIVE

DATE 3/27/95 mk



# SCOTTSDALE INSURANCE COMPANY

**ENDORSEMENT**
**NO.** 5

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12.01 A.M. | NOON | | |
| CLS206139 | 03 | 14 | 95 | X | | Lock Towns Community Mental Health Center | J.J. Negley Assoc. 295012 |

Commercial General Liability Coverage Part:

ADD:  Loc. #5 - 20201 NW 37th Avenue, Miami, Florida

Additional Premium:      $312.
S/L Tax:                    15.60

_____          / _5/11/95 mk_
AUTHORIZED REPRESENTATIVE              DATE

UTS-2g (3-92)

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT**
NO. ____6____

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS206139 | 05 | 16 | 95 | X | | Lock Towns Community Mental Health Center, Inc. | J.J. Negley Assoc. 295012 |

Commercial General Liability Coverage Part:

DELETE:  Loc. #1 - 18475 NW 2nd Avenue, Miami, Florida

Return Premium:   $318.
S/L Tax:              15.90



_____    /    5/23/95 mk
AUTHORIZED REPRESENTATIVE                DATE

UTS-2g (3-

# Exhibit C



SCOTTSDALE INSURANCE COMPANY®

8877 North Gainey Center Drive • Scottsdale, Arizona 85258

A STOCK COMPANY

# Commercial Lines Policy

THIS POLICY CONSISTS OF: DECLARATION, COMMON POLICY CONDITIONS, ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF: ONE OR MORE COVERAGE FORMS, APPLICABLE FORMS AND ENDORSEMENTS.

CLS-J-2 (6-94)

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly appointed representative of the company if so required by local law.

*[signature]*

Secretary

*[signature]* Vickie J. Kartchner

President

CLS-J-2 (5-94)

# ADDENDUM

Some internal notes, or stamps, or typing on the declaration sheet may appear.  The Intended use for these is internal only and may not have been a part of the policy received by the insured.

Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.

# COMMERCIAL LIABILITY DECLARATIONS

## Scottsdale Insurance Company®

8877 North Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 or in AZ 1-800-225-9458
A STOCK COMPANY

CLS206139
RENEWAL OF NUMBER

CLS206598

**To Be Completed By Agent**
INSPECTION
☐ Ordered Date
☐ Attached
☐ Not Necessary
% of Manual | Commission

**Item 1. Named Insured and Mailing Address:**

Lock Towns Community Mental Health Center, Inc.
20201 N.W. 37TH Avenue
Miami, Florida 33055

**Agent Name and Address:**

J. J. Negley Associates, Inc.      *R6: CLS207074*
P.O. Box 206
Cedar Grove, New Jersey 07009   *X/R CLS262381*

Agent No: _____

**Item 2. Policy Period**   From: 07/01/95   To: 07/01/96

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3. Retroactive Date:  **None**

Item 4: Business Description: Mental Health Center

**PREMIUM FINANCED**

Item 5. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | CG0001(10/93) | $ 8,900.00 |
| Professional Liability Coverage Part | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Total  $   8,900.00
SURPLUS LINES TAX   446.25
POLICY FEE   25.00

Item 6. Forms and endorsements applicable to all Coverage Parts:
CLS-J-2(06/94)   CG0001(10/93)   CLS-D-1(10/92)   CLS-SD-1(02/92)   CG2021(10/93)
CG2116(11/85)   CG2147(10/93)   CG2149(10/93)   CG2011(11/85)   CG2026(11/85)
GLS-127s(06/94)   CLS-62s-FL(06/93)   UTS-9g(05/92)   IL0017(11/85)   IL0021(11/85)
Endt #1 and 2,3

Countersigned   07/20/95   MK   By _____
DATE                        AUTHORIZED REPRESENTATIVE

CLS-D-1 (10-92)

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

THIS IS A TRUE AND CERTIFIED COPY

HOME OFFICE COPY

## Scottsdale Insurance Company
### COMMERCIAL GENERAL LIABILITY COVERAGE PART
### SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number ___CLS206598___

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products / Completed Operations) | $ 1,000,000 |
| Products / Completed Operations Aggregate Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Fire Damage Limit | $ 50,000 any one fire |
| Medical Expense Limit | $ 1,000 any one person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:

☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (Other than Partnership or Joint Venture)

Business description:

  Mental Health Center

Location of all premises you own, rent or occupy:

  SEE BELOW

### PREMIUM

| Classification | Code No. | *Premium Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| Mental Health Center | | | | | | |
| | | a) Square Feet | | | $ Included | $8,900 |

LOCATION SCHEDULE:
001    20201 N.W. 37th Avenue   Miami FL
002    15055 N.W. 27th Avenue   Opalocka FL
003    1000 SW 84th Ave.,  Hollywood FL
004    16555 N.W. 25th Avenue   Opalocka FL
005    2351 N.W. 135th Street  N. Miami, Florida  Endt. #3

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

This Supplemental Declarations and the Commercial Liability Declarations, together with the common policy conditions, coverage form(s) and endorsements complete the above numbered policy.

CLS-SD-1 (2-92)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROP-ERTY DAMAGE LIABILITY

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in LIMITS OF INSUR-ANCE (SECTION III); and

   (2) Our right and duty to defend end when we have used up the applicable limit of insur-ance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   (2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organiza-tion for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions.**

This insurance does not apply to:

a. **Expected or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b. **Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a con-tract or agreement. This exclusion does not apply to liability for damages:

   (1) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subse-quent to the execution of the contract or agreement; or

   (2) That the insured would have in the absence of the contract or agreement.

c. **Liquor Liability**

   "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

   (1) Causing or contributing to the intoxication of any person;

   (2) The furnishing of alcoholic beverages to a person under the legal drinking age or un-der the influence of alcohol; or

   (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alco-holic beverages.

   This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

(i) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

(ii) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

     Copyright, ISO Commercial Risk Services, Inc., 1992     CG 00 01 10 93   ☐

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

k. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

l. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to:

(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions.**

This insurance does not apply to:

a. "Personal injury" or "advertising injury":

(1) Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured; or

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

   Copyright, ISO Commercial Risk Services, Inc., 1992   CG 00 01 10 93

## COVERAGE C. MEDICAL PAYMENTS

**1. Insuring Agreement.**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

    **(1)** On premises you own or rent;

    **(2)** On ways next to premises you own or rent; or

    **(3)** Because of your operations;

    provided that:

    **(1)** The accident takes place in the "coverage territory" and during the policy period;

    **(2)** The expenses are incurred and reported to us within one year of the date of the accident; and

    **(3)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    **(1)** First aid administered at the time of an accident;

    **(2)** Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    **(3)** Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions.**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim or "suit" we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $100 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. An organization other than a partnership or joint venture, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than your "executive officers", but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, no "employee" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), or to a co-"employee" while in the course of his or her employment or while performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees" or, if you are a partnership or joint venture, by any partner or member.

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b.  Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c.  Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1.  The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

    a.  Insureds;

    b.  Claims made or "suits" brought; or

    c.  Persons or organizations making claims or bringing "suits".

2.  The General Aggregate Limit is the most we will pay for the sum of:

    a.  Medical expenses under Coverage C;

    b.  Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

    c.  Damages under Coverage B.

3.  The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4.  Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5.  Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a.  Damages under Coverage A; and

    b.  Medical expenses under Coverage C

    because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6.  Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7.  Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy.**

    Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit.**

    a.  You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

        (1)  How, when and where the "occurrence" or offense took place;

        (2)  The names and addresses of any injured persons and witnesses; and

        (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.  If a claim is made or "suit" is brought against any insured, you must:

        (1)  Immediately record the specifics of the claim or "suit" and the date received; and

        (2)  Notify us as soon as practicable.

        You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

c. You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance.**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)** That is Fire insurance for premises rented to you; or

**(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverage A or B to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

1. "Advertising injury" means injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in **a.** above; or

c. All parts of the world if:

(1) The injury or damage arises out of:

(a) Goods or products made or sold by you in the territory described in **a.** above; or

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection or engineering services.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. a. "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned.

b. "Your work" will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed.

   (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

   (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification in this Coverage Part or in our manual of rules includes products or completed operations.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

17. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

18. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

         Copyright, ISO Commercial Risk Services, Inc., 1992         CG 00 01 10 93   ☐



COMMERCIAL GENERAL LIABILITY
CG 20 21 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - VOLUNTEER WORKERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

WHO IS AN INSURED (Section II) is amended to include as an insured any person(s) who are volunteer worker(s) for you, but only while acting at the direction of, and within the scope of their duties for you. However, no volunteer workers(s) are insureds for:

1. "Bodily injury" or "personal injury":

   a. To you, to your partners or members (if you are a partnership or joint venture), to your other volunteer worker(s) or to your "employees" arising out of and in the course of their duties for you;

   b. To the spouse, child, parent, brother or sister of your volunteer worker(s) or your "employees" as a consequence of paragraph 1.a. above;

   c. For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs 1.a or b. above; or

   d. Arising out of his or her providing or failing to provide professional health care services.

2. "Property damage" to property:

   a. Owned, occupied, or used by,

   b. Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your other volunteer worker(s), your "employees" or, if you are a partnership or joint venture, any partner or member.

CG 20 21 10 93                    Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER: CLS2065●  ●MMERCIAL GENERAL LIABILITY

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION--DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies Insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Description of Professional Services:**

1. All Professional Services

2.

3.

(If no entry appears above, Information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect ot any professional services shown in the Schedule, this Insurance does not apply to "bodily Injury", "property damage", "personal Injury" or "advertising Injury" due to the rendering or failure to render any professional service.

CG 21 16 11 85       Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY
CG 21 47 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY IN-JURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

B.  The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Personal injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 10 93                        Copyright, Insurance Services Office, Inc., 1992



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:
COMMERICAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) is replaced by the following:

This insurance does not apply to:

f. (1) "Bodily Injury" or "property damage" which would not have occured in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

   (2) Any loss, cost or expense arising out of any:
      (a) Request, demand or order that any insured or others test for, monitor, clean up. remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   (b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

CG 21 49 10 93                Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER:   · CLS2065                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT  CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

1 . Designation of Premises(Part Leased to You):

15055 N.W. 27th Avenue

Opalocka, FL

2. Name of Person or Organization(Additional Insured):
North Dade Health Center

3.   Additional Premium:
Included

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

SCHEDULE OF LOCATIONS

CG 20 11 11 85          Copyright, Insurance Services Office, Inc. 1984

 **Scottsdale Insurance Company** ®

**Endorsement No.** 1

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS206598 | 07 | 01 | 95 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295012 |

In consideration of charged premium the following is added to form CG2011(11/85):

Name of Person or Organization
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
South Florida State Hospital

Designated Premises
- - - - - - - - - - - - - - - - - -
1000 SW 84th Ave.,
Hollywood,
FL

---
07/20/95

AUTHORIZED REPRESENTATIVE                    DATE

POLICY NUMBER:   CLS206598

COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED----DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

Community Health Facilities Fund,

1000 16th St., NW, Suite 500
Washington, DC

(If no entry appears above, Information required to complete this endorsement will be shown  In the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) Is amended to include as an Insured the person or organization shown In the Schedule as an Insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

CG 20 26 11 85

Copyright, Insurance Services Office, Inc. 1984

 **Scottsdale Insurance Company**®

**Endorsement No. 2**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| | | | | A.M. | | | |
| CLS206598 | 07 | 01 | 95 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295012 |

In consideration of charged premium the following is added to form CG2026(11/85):

Osceola Co Industrial Dev Authority c/o Economic Dev. Comm
200 E. Robinson St., Suite 600
Orlando, FL

First Union National Bank of Florida
Corporate Trust Dept.
Jacksonville, FL

_____    07/20/95
AUTHORIZED REPRESENTATIVE          DATE

 **Scottsdale Insurance Company** ®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS206598 | 07 | 01 | 95 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295012 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SEXUAL MISCONDUCT EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I---COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions,** is amended to include the following:

This insurance does not apply to:

"Bodily injury" to any person arising out of "sexual misconduct".

**SECTION I---COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions,** is amended to include the following:

This insurance does not apply to:

"Personal injury" or "advertising injury" arising out of "sexual misconduct".

**SECTION V---DEFINITIONS** is amended to include the following:

"Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the Named Insured, whether committed by, caused by or contributed to by any insured, or which is caused by or contributed to by the failure of any insured to:

a. Properly train, hire or supervise any employee; or

b. Properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the Named Insured.

_____/_____
AUTHORIZED REPRESENTATIVE                    DATE

GLS-127s (6/94)

 

# Scottsdale Insurance Company®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS206598 | 07 | 01 | 95 | A.M.<br>X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley<br>295012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## CANCELLATION AND NONRENEWAL---FLORIDA

**COMMON POLICY CONDITIONS A. CANCELLATION** is deleted in its entirety and is replaced by the following:

**A. CANCELLATION.**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation of policies in effect for ninety (90) days or less.**

   If this policy has been in effect for ninety (90) days or less and is not a renewal, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. Thirty (30) days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

      (1) A material misstatement or misrepresentation; or

      (2) A failure to comply with underwriting requirements established by the insurer.

3. **Cancellation of policies in effect for more than ninety (90) days.**

   If this policy has been in effect for more than ninety (90) days or this is a renewal or continuation of a policy issued by us, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained by material misrepresentation;

c. There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the effective date of coverage;

d. There has been a substantial change in the risk covered by the policy; or

e. The cancellation is for all insureds under such policies for a given class of insureds.

   If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   (1) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2) Forty-five (45) days before the effective date of cancellation if we cancel for any of the reasons stated in 3.b., c., d. or e. above.

4. We will give notice to the first Named Insured at the last mailing address known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

CLS-62sFL (6-93)                    Page 1 of 2

Condition 9. **When We Do Not Renew** is deleted in its entirety and is replaced by the following:

**9. When We Do Not Renew.**

a. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason or reasons for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

b. Any notice of nonrenewal will be mailed or delivered to the last mailing address of the first Named Insured known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____/_____

**AUTHORIZED REPRESENTATIVE**          **DATE**

CLS-62s-FL (6-93)                       page 2 of 2

 **Scottsdale Insurance Company**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12.01 | NOON | | |
| CLS206598 | 07 | 01 | 95 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company/or Underwriters to pay any amount claimed to be due under this policy, the Company/or Underwriters at the request of the insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court.

It is further agreed that service of process in such suit may be made upon

Insurance Commissioner of Florida
200 East Gaines
Tallahassee, Florida 32301

and that in any suit instituted against any one of them under this contract, the Company/or Underwriters agree to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company/or Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that it or they will enter a general appearance upon the Company's/or Underwriter's behalf in the event a suit is instituted.

Pursuant to any statute of any state, territory or district of the United States of America, which makes a provision, the Company/or Underwriters will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance). The above named is designated as the person to whom the officer is authorized to mail the process or a true copy.

| | 07/20/95 |
|---|---|
| AUTHORIZED REPRESENTATIVE | DATE |

UTS-9g (5-92)

# COMMON POLICY CONDITIONS



All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium;
   or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreement between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85      Copyright, Insurance Services Office, Inc., 1982, 1983

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION

1. The insurance does not apply:
   A. Under any Liability Coverage, to "bodily injury" or "property damage":

   (1) With respect to which an "insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

   (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

   (1) The "nuclear material" (a) is at any "nuclear facility" owned by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

   (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

   (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:
   "Hazardous properties" include radioactive, toxic or explosive properties;

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material";

   "Source material", "special nuclear material:, and and "by-product material" have the meanings given them in the atomic Energy Act of 1954 or in any law amendatory thereof;

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor";

IL 00 21 11 85          Copyright, Insurance Services Office, Inc., 1983, 1984          Page 1 of 2

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a)  Any "nuclear reactor";

(b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"Property damage" includes all forms of radioactive contamination of property.



# SCOTTSDALE INSURANCE COMPANY®

## ENDORSEMENT NO. 3



| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS206598 | 03 | 04 | 96 | A.M. X | | Lock Towns Community MH Ctr. | J.J. Negley Assoc. 295012 |

Commercial General Liability Coverage Part:

ADD:  Loc. #5 - 2351 NW 135th Street
             N. Miami, Florida

**RECEIVED**

MAY 14 1996

**PROFESSIONAL LINES**

Additional Premium:        $1089.
Surplus Lines Tax:              54.45

.326

_____          _____ 4/10/96 mk
AUTHORIZED REPRESENTATIVE                                DATE

UTS-3g (3-92)

# Exhibit D



## SCOTTSDALE INSURANCE COMPANY®

8877 North Gainey Center Drive · Scottsdale, Arizona 85258
A STOCK COMPANY

# Commercial Lines Policy

THIS POLICY CONSISTS OF: DECLARATION, COMMON POLICY CONDITIONS, ONE OR MORE
COVERAGE PARTS. A COVERAGE PART CONSISTS OF: ONE OR MORE COVERAGE FORMS,
APPLICABLE FORMS AND ENDORSEMENTS.

CLS-J-2 (2-95)

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                   President

CLS-J-2 (2-95)

# ADDENDUM

Some internal notes, or stamps, or typing on the declaration sheet may appear.  The Intended use for these is internal only and may not have been a part of the policy received by the insured.

Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.

# COMMERCIAL LIABILITY DECLARATIONS

## Scottsdale Insurance Company®

8877 North Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 or in AZ 1-800-225-9456
A STOCK COMPANY

CLS206598
RENEWAL OF NUMBER

CLS207074

To Be Completed By Agent
INSPECTION
☐ Ordered Date
☐ Attached
☐ Not Necessary
% of Manual / Commission

| REG DESK | CODING | UW | FILE |
|---|---|---|---|

**Item 1. Named Insured and Mailing Address:**

Lock Towns Community Mental Health Center, Inc.
20201 N.W. 37TH Avenue
Miami, Florida 33055

**Agent Name and Address:**

J. J. Negley Associates, Inc.
P.O. Box 206
Cedar Grove, New Jersey 07009    R/B OPS000607    Agent No: 295012

| Item 2. Policy Period | From: 07/01/96 | To: 07/01/97 |
|---|---|---|

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3. Retroactive Date:  None

Item 4. Business Description:  Mental Health Center

Item 5.  In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | CG0001(01/96) | $ 14,468.00 |
| Professional Liability Coverage Part | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

Total $ 14,468.00
SURPLUS LINES TAX   724.65
POLICY FEE   25.00

**Item 6. Forms and endorsements applicable to all Coverage Parts:**
CLS-J-2(02/95)    CG0001(01/96)    CLS-D-1(10/92)    CLS-SD-1(02/92)    CG2021(10/93)
CG2116(11/85)    CG2147(10/93)    CG2149(10/93)    CG2011(11/85)    CG2026(11/85)
GLS-127s(06/94)    CLS-62s-FL(06/93)  UTS-9g(05/92)    IL0021(11/94)    IL0017(11/85)
Endt #1 and 2, 3

N

Countersigned   07/30/96   MK   By _____
DATE                AUTHORIZED REPRESENTATIVE

CLS-D-1 (10-92)

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS ... **CERTIFIED COPY**

HOME OFFICE COPY

COMMERCIAL GENERAL LIABILITY
CG 00 01 01 96

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

  (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

  (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

b. This insurance applies to "bodily injury" and "property damage" only if:

  (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

  (2) The "bodily injury" or "property damage" occurs during the policy period.

c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

  (1) That the insured would have in the absence of the contract or agreement; or

  (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

    (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

---

CG 00 01 01 96          Copyright, Insurance Services Office, Inc., 1994             □

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

**(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

**(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

 Copyright, Insurance Services Office, Inc., 1994 CG 00 01 01 96   ☐

Subparagraphs **(a)** and **(d)(i)** do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

**(b)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

**(1)** A watercraft while ashore on premises you own or rent;

**(2)** A watercraft you do not own that is:

**(a)** Less than 26 feet long; and

**(b)** Not being used to carry persons or property for a charge;

**(3)** Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

**(4)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

**(5)** "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

**(1)** The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

**(2)** The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

**j. Damage to Property**

"Property damage" to:

**(1)** Property you own, rent, or occupy;

**(2)** Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

**(3)** Property loaned to you;

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3), (4), (5)** and **(6)** of this exclusion do not apply to liability assumed under a side-track agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or danger-ous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and ac-cidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replace-ment, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or tempo-rarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section III).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured be-comes legally obligated to pay as damages be-cause of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "per-sonal injury" or "advertising injury" to which this insurance does not apply. We may, at our dis-cretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSUR-ANCE (SECTION III); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insur-ance in the payment of judgments or set-tlements under Coverages A or B or medi-cal expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless ex-plicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding ad-vertising, publishing, broadcasting or tele-casting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**COVERAGE C. MEDICAL PAYMENTS**

**1. Insuring Agreement**

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

**2. Exclusions**

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

---

**SUPPLEMENTARY PAYMENTS – COVERAGES A AND B**

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

    a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

    a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

        (1) "Bodily injury" or "personal injury":

            (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

            (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

            (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

            (d) Arising out of his or her providing or failing to provide professional health care services.

        (2) "Property damage" to property:

            (a) Owned, occupied or used by,

            (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

        you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

    b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

    c. Any person or organization having proper temporary custody of your property if you die, but only:

        (1) With respect to liability arising out of the maintenance or use of that property; and

        (2) Until your legal representative has been appointed.

    d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

    a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

    b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

    a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   a. You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      (1) How, when and where the "occurrence" or offense took place;

      (2) The names and addresses of any injured persons and witnesses; and

      (3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

   b. If a claim is made or "suit" is brought against any insured, you must:

      (1) Immediately record the specifics of the claim or "suit" and the date received; and

      (2) Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

---

Page 8 of 13                Copyright, Insurance Services Office, Inc., 1994                CG 00 01 01 96     ☐

c. You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

**(1)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(2)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

**(3)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertising injury" means injury arising out of one or more of the following offenses:

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

   c. All parts of the world if:

      (1) The injury or damage arises out of:

         (a) Goods or products made or sold by you in the territory described in a. above; or

Copyright, Insurance Services Office, Inc., 1994

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

  if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

   **f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   **(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

   **(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

     **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

     **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   **(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

---

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

   However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

      (a) Snow removal;

      (b) Road maintenance, but not construction or resurfacing; or

      (c) Street cleaning;

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

      (a) When all of the work called for in your contract has been completed.

      (b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

      (c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

   Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

 Copyright, Insurance Services Office, Inc., 1994

## Scottsdale Insurance Company
## COMMERCIAL GENERAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number ___CLS207074___

### LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products / Completed Operations) | $ 1,000,000 |
| Products / Completed Operations Aggregate Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Fire Damage Limit | $ 100,000  any one fire |
| Medical Expense Limit | $ 1,000  any one person |

### BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:

☐ Individual  ☐ Joint Venture  ☐ Partnership  ☒ Organization (Other than Partnership or Joint Venture)

Business description:

Mental Health Center

Location of all premises you own, rent or occupy:

SEE BELOW

### PREMIUM

| Classification | Code No. | *Premium Basis | Rate PR/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|
| Mental Health Center | | | | | | |
| | | a) Square Feet | | | $ Included | $14,468 |

LOCATION SCHEDULE:
```
001   20201 N.W. 37th Avenue  Miami FL
002   15055 N.W. 27th Avenue  Opalocka FL
003   1000 SW 84th Ave:,  Hollywood FL
004   16555 N.W. 25th Avenue  Opalocka FL
005   2351 NW 135th Street  W. Miami
006   1000 SW 84th Avenue  Hollywood FL
007   14950-52 NE 11th Avenue  Miami FL
008   1075 NW 149th Street  Miami FL
009   1095 NW 149th Street  Miami FL
010   11115 NE 13th Avenue  Miami FL
011   1301 NE 111th Street  Miami FL
012   11 NW 135th  Miami FL
013   480 NW 123rd Street  Miami FL
014   16690-92 NE 18th Avenue  Miami FL
015   330 Lake Crest Court  Ft. Lauderdale FL
```

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

This Supplemental Declarations and the Commercial Liability Declarations, together with the common policy conditions, coverage form(s) and endorsements complete the above numbered policy.

CLS-SD-1 (2-82)

COMMERCIAL GENERAL LIABILITY
CG 20 21 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - VOLUNTEER WORKERS

This endorsement modifies Insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

WHO IS AN INSURED (Section II) Is amended to Include as an Insured any person(s) who are volunteer worker(s) for you, but only while acting at the direction of, and within the scope of their duties for you.  However, no volunteer workers(s) are Insureds for:

1. "Bodily Injury" or "personal Injury":

   a. To you, to your partners or members (If you are a partnership or Joint venture), to your other volunteer worker(s) or to your "employees" arising out of and In the course of their duties for you;

   b. To the spouse, child, parent, brother or sister of your volunteer worker(s) or your "employees" as a consequence of paragraph 1.a. above;

   c. For which there Is any obligation to share damages with or repay someone else who must pay damages because of the Injury described In paragraphs 1.a or b. above; or

   d. Arising out of his or her providing or failing to provide professional health care services.

2. "Property damage" to property:

   a. Owned, occupied, or used by,

   b. Rented to, In the care, custody or control of, or over which physical control Is being exercised for any purpose by

      you, any of your other volunteer worker(s), your "employees" or, If you are a partnership or Joint venture, any partner or member.

CG 20 21 10 93          Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER: CLS207074           CERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION--DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Description of Professional Services:**

1. All Professional Services

2.

3.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect ot any professional services shown in the Schedule, this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" due to the rendering or failure to render any professional service.

CG 21 16 11 85          Copyright, Insurance Services Office, Inc., 1984



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY IN-JURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Bodily Injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Personal Injury" to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 10 93                    Copyright, Insurance Services Office, Inc., 1992

COMMERCIAL GENERAL LIABILITY
CG 21 49 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:
COMMERICAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) is replaced by the following:

This insurance does not apply to:

f. (1) "Bodily injury" or "property damage" which would not have occured in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:
(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

CG 21 49 10 93                 Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER:       CLS207074                     COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - MANAGERS OR LESSORS OF PREMISES

This endorsement modifies Insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

## SCHEDULE

1. Designation of Premises(Part Leased to You):
   15055 N.W. 27th Avenue

   Opalocka, FL

2. Name of Person or Organization(Additional Insured):
   North Dade Health Center

3. Additional Premium:
                  Included

WHO IS INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This Insurance does not apply to:

1. Any "occurrence" which takes place after you cease to be a tenant in that premises.

2. Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

SCHEDULE OF LOCATIONS

CG 20 11 11 85           Copyright, Insurance Services Office, Inc. 1984

POLICY NUMBER:  CLS207074   COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED----DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies Insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

Community Health Facilities Fund,

1000 16th St., NW, Suite 500
Washington, DC

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an Insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.

CG 20 26 11 85          Copyright, Insurance Services Office, Inc. 1984



POLICY NUMBER:   CLS207074

COMMERCIAL GENERAL LIABILITY

LOCK TOWNS COMMUNITY MENTAL HEALTH CENTER, INC.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# ADDITIONAL INSURED—DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

ENDT. #3            SCHEDULE            EFF. 7/1/96

**Name of Person or Organization:**

Metropolitan Dade County

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule as an insured but only with respect to liability arising out of your operations or premises owned by or rented to you.



J.J. Negley Associates, Inc.
#205011
8/20/96 mk

CG 20 26 11 85            Copyright, Insurance Services Office, Inc., 1984            □

 **Scottsdale Insurance Company** °

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS207074 | 07 | 01 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295012 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEXUAL MISCONDUCT EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, is amended to include the following:**

This insurance does not apply to:

"Bodily injury" to any person arising out of "sexual misconduct".

**SECTION I—COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, is amended to include the following:**

This insurance does not apply to:

"Personal injury" or "advertising injury" arising out of "sexual misconduct".

**SECTION V—DEFINITIONS is amended to include the following:**

"Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the Named Insured, whether committed by, caused by or contributed to by any insured, or which is caused by or contributed to by the failure of any insured to:

a. Properly train, hire or supervise any employee; or

b. Properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the Named Insured.

AUTHORIZED REPRESENTATIVE          DATE

GLS-127s (6/94)



# Scottsdale Insurance Company®

## Endorsement No.

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS207074 | 07 | 01 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295012 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CANCELLATION AND NONRENEWAL—FLORIDA

COMMON POLICY CONDITIONS A. CANCELLATION is deleted in its entirety and is replaced by the following:

A. CANCELLATION.

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. Cancellation of policies in effect for ninety (90) days or less.
   If this policy has been in effect for ninety (90) days or less and is not a renewal, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. Thirty (30) days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

      (1) A material misstatement or misrepresentation; or

      (2) A failure to comply with underwriting requirements established by the insurer.

3. Cancellation of policies in effect for more than ninety (90) days.

   If this policy has been in effect for more than ninety (90) days or this is a renewal or continuation of a policy issued by us, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained by material misrepresentation;

c. There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the effective date of coverage;

d. There has been a substantial change in the risk covered by the policy; or

e. The cancellation is for all insureds under such policies for a given class of insureds.

   If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   (1) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2) Forty-five (45) days before the effective date of cancellation if we cancel for any of the reasons stated in 3.b., c., d. or e. above.

4. We will give notice to the first Named Insured at the last mailing address known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first Named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

CLS-62sFL (6-93)                    Page 1 of 2

Condition 9. **When We Do Not Renew** is deleted in its entirety and is replaced by the following:

**9. When We Do Not Renew.**

a. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason or reasons for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

b. Any notice of nonrenewal will be mailed or delivered to the last mailing address of the first Named Insured known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____/_____

**AUTHORIZED REPRESENTATIVE**          **DATE**

CLS-62s-FL (6-93)                          page 2 of 2

 **Scottsdale Insurance Company**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS207074 | 07 | 01 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295012 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company/or Underwriters to pay any amount claimed to be due under this policy, the Company/or Underwriters at the request of the insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court.

It is further agreed that service of process in such suit may be made upon

Insurance Commissioner of Florida
200 East Gaines
Tallahassee, Florida 32301

and that in any suit instituted against any one of them under this contract, the Company/or Underwriters agree to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company/or Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that it or they will enter a general appearance upon the Company's/or Underwriter's behalf in the event a suit is instituted.

Pursuant to any statute of any state, territory or district of the United States of America, which makes a provision, the Company/or Underwriters will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance). The above named is designated as the person to whom the officer is authorized to mail the process or a true copy.

_____   07/30/96
AUTHORIZED REPRESENTATIVE          DATE

UTS-9g (5-92)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1.  The insurance does not apply:
    A. Under any Liability Coverage, to "bodily injury" or "property damage":

    (1) With respect to which an "insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

    C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

    (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed thereform;

    (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

    (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2.  As used in this endorsement:
    "Hazardous properties" include radioactive, toxic or explosive properties.

    "Nuclear material" means "source material", "Special nuclear material" or "by-product material";

    "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

    "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

IL 00 21 11 94          Copyright, Insurance Services Office, Inc., 1994          Page 1 of 2

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a)  Any "nuclear reactor";

(b)  Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c)  Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d)  Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreement between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85

Copyright, Insurance Services Office, Inc., 1982, 1983

 **Scottsdale Insurance Company**

**Endorsement No.** 1

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 A.M. | NOON | | |
| CLS207074 | 07 | 01 | 96 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295012 |

In consideration of charged premium the following is added to form CG2011(11/85):

Name of Person or Organization
-------------------------------
South Florida State Hospital

Designated Premises
-------------------
1000 SW 84th Ave.,
Hollywood,
FL

_____      07/30/96
AUTHORIZED REPRESENTATIVE        DATE

 **Scottsdale Insurance Company** ®

**Endorsement No.** 2

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS207074 | 07 | 01 | 96 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295012 |

In consideration of charged premium the following is added to form CG2026(11/85):

> Osceola Co Industrial Dev Authority c/o Economic Dev. Comm
> 200 E. Robinson St., Suite 600
> Orlando, FL
>
> First Union National Bank of Florida
> Corporate Trust Dept.
> Jacksonville, FL

_____  07/30/96
AUTHORIZED REPRESENTATIVE          DATE

.

# **Exhibit E**



## SCOTTSDALE INSURANCE COMPANY®

8877 North Gainey Center Drive • Scottsdale, Arizona 85258
**A STOCK COMPANY**

# Commercial Lines Policy

THIS POLICY CONSISTS OF: DECLARATION, COMMON POLICY CONDITIONS, ONE OR MORE
COVERAGE PARTS. A COVERAGE PART CONSISTS OF: ONE OR MORE COVERAGE FORMS,
APPLICABLE FORMS AND ENDORSEMENTS.

## THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.

CLS-J-1 (11-93)

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly appointed representative of the company if so required by local law.

Secretary

President

CLS-J-1 (11-93)

# ADDENDUM

Some internal notes, or stamps, or typing on the declaration sheet may appear.  The Intended use for these is internal only and may not have been a part of the policy received by the insured.

Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.



COMMERCIAL LIABILITY
DECLARATIONS

## Scottsdale Insurance Company®

8877 North Gamey Center Drive, Scottsdale, Arizona 85250
1-800-423-7675 or in AZ 1-800-225-9458
A STOCK COMPANY

CLS062437
**RENEWAL OF NUMBER**

CLS169442

To Be Completed By Agent
INSPECTION
☐ Ordered Date _____
☐ Attached
☐ Not Necessary

**Item 1. Named Insured and Mailing Address:**

Lock Towns Community Mental Health Center,
18476 N.W. 2nd Avenue
Miami, Florida 33169

**Agent Name and Address:**

J. J. Negley Associates, Inc.
P.O. Box 206
Cedar Grove, New Jersey 07009

Agent No: _____ 295011

| Item 2. Policy Period | From: 07/01/94 | To: 07/01/95 |
|---|---|---|

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

Item 3. Retroactive Date: 04/16/85

Item 4. Business Description: Mental Health Center

Item 5. In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | | $ |
| Professional Liability Coverage Part | CLS-PRO-1(7/86) | $ 26,648.00 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | Total | $ 26,648.00 |

POLICY FEE          25.00

INSPECTION FEE          85.00
SURPLUS LINES TAX  1,337.90

Item 6. Forms and endorsements applicable to all Coverage Parts:
CLS-J-1(11/93)   CLS-D-1(10/92)   CLS-62sFL(06/93)   IL0017(11/85)   CLS-24(08/91)
CLS-25(07/91)   CLS-18(04/91)   CLS-3s(10/92)   CLS-PRO-1(07/86)   CLS-SD-2(02/92)
CLS-59s(06/93)   UTS-9g(05/92)   Endt #1   End#2,3,4,5

THIS IS A TRUE AND CERTIFIED COPY

Countersigned   07/13/94
DATE

By
AUTHORIZED REPRESENTATIVE

CLS-D-1 (10-92)

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS,
COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

HOME OFFICE COPY

 **Scottsdale Insurance Company**

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS169442 | 07 | 01 | 94 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CANCELLATION AND NONRENEWAL—FLORIDA

COMMON POLICY CONDITIONS A. CANCELLATION is deleted in its entirety and is replaced by the following:

**A. CANCELLATION.**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation of policies in effect for ninety (90) days or less.**

   If this policy has been in effect for ninety (90) days or less and is not a renewal, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. Thirty (30) days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

   (1) A material misstatement or misrepresentation; or

   (2) A failure to comply with underwriting requirements established by the Insurer.

3. **Cancellation of policies in effect for more than ninety (90) days.**

   If this policy has been in effect for more than ninety (90) days or this is a renewal or continuation of a policy issued by us, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained by material misrepresentation;

c. There has been a failure to comply with under-writing requirements established by us within ninety (90) days of the effective date of coverage;

d. There has been a substantial change in the risk covered by the policy; or

e. The cancellation is for all insureds under such policies for a given class of insureds.

   If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   (1) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   (2) Forty-five (45) days before the effective date of cancellation if we cancel for any of the reasons stated in 3.b., c., d. or e. above.

4. We will give notice to the first Named Insured at the last mailing address known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

CLS-62sFL (6-93)                    Page 1 of 2

Condition 9. **When We Do Not Renew** is deleted in its entirety and is replaced by the following:

**9. When We Do Not Renew.**

a. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason or reasons for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

b. Any notice of nonrenewal will be mailed or delivered to the last mailing address of the first Named Insured known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____ /_____
AUTHORIZED REPRESENTATIVE        DATE

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium;
   or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreement between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regualtions, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspecitons, surveys reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85                    Copyright, Insurance Services Office, Inc., 1982, 1983

 **Scottsdale Insurance Company**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS169442 | 07 | 01 | 94 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## EMPLOYMENT PRACTICES EXCLUSION

This endorsement modifies insurance provided under:
**Professional Liability Coverage Part**

**SECTION II - EXCLUSIONS** (g) has been added to the policy.

This Insurance does not apply:

(g) (1) to employment related "wrongful acts" including:

    (a)  Termination of employment;

    (b)  Refusal to employ;

    (c)  Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

    (d)  Consequential injury as a result of (a) through (c) above.

This exclusion applies:

    (1)  Whether the Insured may be liable as an employer or in any other capacity; and

    (2)  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

_____

AUTHORIZED REPRESENTATIVE

CLS-24 (8-91)

 **Scottsdale Insurance Company**°

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 | NOON | | |
| CLS169442 | 07 | 01 | 94 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROFESSIONAL LIABILITY COVERAGE PART AMENDMENT

This endorsement modifies insurance provided under this Coverage Part:

SECTION VI - PROFESSIONAL LIABILITY CONDITIONS - Paragraph 2.a. is deleted and replaced by the following:

2. Duties in the Event of "Wrongful Act", Claim or "Suit"

    a. If, during the "policy year" or Extended Reporting Period (if purchased), you first are made aware of a "wrongful act" (or alleged "wrongful act") and coverage as provided by this Coverage Part would otherwise apply and if you provide written notice during the "policy year" or Extended Reporting Period, including:

        (1) the specific "wrongful act"; and

        (2) the injury or damage which has or may result because of the "wrongful act"; and

        (3) the name(s) of the party(ies) involved; and

        (4) how and when you first became aware of the "wrongful act",

than any claim that may be made arising out of such "wrongful act" shall be deemed to have been made during the "policy year", or Extended Reporting Period.

Subsequent policies issued by us will not apply to any claims arising from any circumstances of which a notice of a "wrongful act" has been given under this Coverage Part.

_____

**AUTHORIZED REPRESENTATIVE**

CLS-25 (07-91)

 **Scottsdale Insurance Company**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS169442 | 07 | 01 | 94 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER:

### PROFESSIONAL LIABILITY COVERAGE PART

### SEXUAL MISCONDUCT LIMITATION ENDORSEMENT

In consideration of the premium charged, this endorsement will provide limited coverage under SECTION I COVERAGE for any "wrongful act", arising out of "sexual misconduct".

### SUBLIMIT OF LIABILITY

| | |
|---|---|
| Each claim limit | $100,000 |
| Aggregate limit | $300,000 |

Subject to the each claim limit and aggregate limit shown on the professional liability Supplemental Declarations. SECTION IV - LIMITS OF INSURANCE is amended to include the following:

(d)  The sublimit of liability shown in this endorsement is the most we will pay for all damages because of injury arising out of any one claim for "sexual misconduct". The aggregate limit stated in this endorsement is the most we will pay for all claims arising out of "sexual misconduct" in any "policy year".

SECTION VII - DEFINITIONS is amended to include the following:

6.  "Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured, whether committed by, caused by or contributed to by failure of any insured to:

1.  Properly train, hire or supervise any employee, or;

2.  Properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured.

**AUTHORIZED REPRESENTATIVE**

CLS-18 (4/91)

 **Scottsdale Insurance Company®**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12.01 | NOON | | |
| | | | | A.M. | | | J. J. Negley |
| CLS169442 | 07 | 01 | 94 | X | | Lock Towns Community Mental Health Center, Inc. | Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PROFESSIONAL LIABILITY AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under:

### PROFESSIONAL LIABILITY COVERAGE PART

**SECTION III-WHO IS AN INSURED** is amended to include the following:

Each of the following is also an insured:

(1) Your employees and volunteers, but only for acts within the scope of their employment by you.

(2) Physicians, whether salaried or contracted by you, are insureds under this policy with respect to any claims arising from the rendering or failure to render professional services to your patients.

Coverage for physicians shall apply in excess over any other valid and collectible insurance.

**SECTION VI-PROFESSIONAL LIABILITY CONDITIONS 4. OTHER INSURANCE** is deleted in its entirety and replaced by the following:

**SECTION VI-PROFESSIONAL LIABILITY CONDITIONS**

**4. Other Insurance**

If other valid collectible insurance is available to the insured for a loss we cover, our obligations are limited as follows:

a. Primary Insurance

This Insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in d. below.

b. Excess Insurance

This Insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the "policy year" shown in the Declarations of this insurance and applies to professional liability on other than a claims-made basis, if:

(1) No Retroactive Date is shown in the Declarations of this insurance; or

(2) The other insurance has a "policy year" which continues after Retroactive Date shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

CLS-3s (10-92)                                   Page 1 of 2

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c.   When physician(s) are included under this Coverage Part as an insured, the coverage afforded by this Coverage Part shall apply in excess over any other valid and collectible insurance, and shall apply only to claims arising out of the treatment of patients of the Named Insured.

d.   Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

_____
**AUTHORIZED REPRESENTATIVE**

# PROFESSIONAL LIABILITY COVERAGE PART

 **Scottsdale Insurance Company**
Scottsdale, Arizona
(A stock insurance company, herein called Company)
**THIS IS A CLAIMS MADE POLICY. READ YOUR POLICY CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION III - WHO IS AN INSURED. Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION VII - DEFINITIONS.

## SECTION I - COVERAGE

Insuring Agreement.

We will pay those sums that the insured becomes legally obligated to pay as damages because of injury as a result of a "wrongful act." This insurance applies to injury only if claim for damages because of the injury is first made against the insured during the "policy year."

This insurance does not apply to injury caused by a "wrongful act" which was committed before the Retroactive Date shown in the Declarations or which occurs after the "policy year."

(1) A claim by a person or organization seeking damages will be deemed to have been made when notice of such claim is received and recorded by any insured or by us, whichever comes first.

(2) All claims arising out of the same "wrongful act" shall be considered as having been made at the time the first claim is made.

We will have the right and duty to select counsel and to defend any "suit" seeking damages. But:

(1) The amount we will pay for damages is limited as described in **SECTION IV - LIMITS OF INSURANCE;**

(2) We may, at our discretion, investigate any "wrongful act" and settle any claim or "suit" that may result; and

(3) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

## SUPPLEMENTARY PAYMENTS

We will pay, with respect to any claim or "suit" we defend:

(1) All expenses we incur.

(2) The cost of bonds to release attachments, but only bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

(3) All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit" including actual loss of earnings up to $100 a day because of time off from work.

(4) All costs taxed against the insured in the "suit".

(5) Pre-judgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

(6) All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

CLS-PRO-1 (7-86)

## SECTION II - EXCLUSIONS

This insurance does not apply:

(a) to bodily injury to an employee of the insured arising out of and in the course of employment by the insured;

(b) to any obligation of any insured under any workers' compensation, unemployment compensation, or disability benefits law or under any similar law;

(c) to injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading and unloading".

(d) to injury arising out of a criminal act by any insured;

(e) (1) to injury arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    (a) At or from premises you own, rent or occupy;

    (b) At or from any site or location used by or for you or others for the handling, storage, disposal, processing or treatment of waste;

    (c) Which are at any time transported, handled, stored, treated, disposed of, or processed as waste by or for you or any person or organization for whom you may be legally responsible; or

    (d) At or from any site or location on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations:

      (i) If the pollutants are brought on or to the site or location in connection with such operations; or

      (ii) if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize the pollutants.

(2) Any loss, cost or expense arising out of any governmental direction or request that you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

(f) to injury for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to damages that the insured would have in the absence of a contract or agreement.

## SECTION III- WHO IS AN INSURED

If you are designated in the Declarations as:

(a) an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are sole owner.

(b) a partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

(c) an organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

## SECTION IV - LIMITS OF INSURANCE

Regardless of the number of:

(a) Insureds;

(b) Claims made or "suits" brought;

(c) Persons or organizations making claims or bringing "suits":

the total amount we will pay for all damages because of injury arising out of any one claim shall not exceed the limit of liability stated in the supplemental declarations as applicable to "each claim."

The most we will pay for all damages because of all injury to which this insurance applies shall not be more than the limits of liability stated in the schedule as aggregate.

## SECTION V - POLICY TERRITORY

This insurance applies to damages for injury caused by a "wrongful act" anywhere in the world, so long as the original suit for such damages is brought in the United States, it's territories or possessions, Puerto Rico or Canada.

## SECTION VI - PROFESSIONAL LIABILITY CONDITIONS

1. **Bankruptcy.**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of "Wrongful Act", Claim Or "Suit."**

a. You must see to it that we are notified as soon as practicable of a "wrongful act" which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "wrongful act" took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "wrongful act." Notice of a "wrongful act" is not notice of a claim.

b. If a claim is received by any insured you must:

(1) Immediately record the specifics of the claim and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses of legal papers received in connection with the claim or a "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement or defense of the claim or "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

3. **Legal Action Against Us.**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance.**

If other valid collectible insurance is available to the insured for a loss we cover, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the "policy year" shown in the Declarations of this insurance and applies to professional liability on other than a claims-made basis, if:

(a) No Retroactive Date is shown in the Declarations of this insurance; or

(b) The other insurance has a "policy year" which continues after the Retroactive Date shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any claim or "suit" that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit.**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the "policy year" is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations.**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds.**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us.**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew.**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**10. Your Right To Claim And "Wrongful Act" Information.**

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding general liability claims-made Coverage Part we have issued to you during the previous three years:

a. A list or other record of each "wrongful act", not previously reported to any other insurer, of which we were notified in accordance with paragraph 2.a. of this Section. We will include the date and brief description of the "wrongful act" if that information was in the notice we received.

b. A summary by "policy year", of payments made and amounts reserved.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than 30 days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within 60 days after the end of the "policy year". In this case, we will provide this information within 45 days of receipt of the request.

We compile claim and "wrongful act" information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

# SECTION VII - DEFINITIONS

1. "Wrongful act" means any act, error or omission in the furnishing of professional health care services. It includes the furnishing of food, beverages, medications or appliances in connection with those services.

   Any "wrongful act" committed in the furnishing of professional services to any one person shall be considered one "wrongful act".

2. "Suit" means a civil preceeding in which damages for injury to which this insurance applies are alleged. "Suit" includes an arbitration proceeding alleging such damages to which you must submit or submit with our consent.

3. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment.

4. "Loading or unloading" means the handling of persons or property:

   a. After being moved from the place where accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While in or on an aircraft, watercraft or "auto"; or

   c. While being moved from aircraft, watercraft or "auto" to the place of final delivery.

5. "Policy year" means the period shown in item 2 of the Declarations.

## SECTION VIII - EXTENDED REPORTING PERIODS

1. We will provide one or more Extended Reporting Periods, as described below, if:
   a. This Coverage Part is cancelled or not renewed for reasons other than your non-payment of premium;
   b. We renew or replace this Coverage Part with insurance that:
      (1) Has a Retroactive Date later than the date shown in the Declarations of the Coverage Part; or
      (2) Does not apply to injury because of "wrongful acts" on a claims-made basis.

2. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the "policy year" and lasts for 60 days. The Basic Extended Reporting Period does not apply to claims covered under any subsequent insurance you purchase.

   Alternatively, up to 3 Supplemental Extended Reporting Periods of twelve (12) months each are available, but only if added by endorsement and for an additional premium charge. This supplemental period starts 60 days after the end of the "policy year".

   You have the right to select the number of Supplemental Extended Reporting Periods you desire. Up to three (3) Supplemental Extended Reporting Periods of twelve (12) months each may be chosen.

An additional premium charge of seventy-five (75) percent of the current policy premium is immediately due for each Supplemental Extended Reporting Period chosen.

You must give us a written request for the endorsement within 30 days of the cancellation or non-renewal. Your request should specify the length of the Supplemental Extended Reporting Period desired. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and unless you make written request within 30 days of policy cancellation or non-renewal.

3. The Extended Reporting Periods do not extend the "policy year" or change the scope of coverage provided. Subject otherwise to the policy's terms, limits of liability, exclusions and conditions, the policy is extended to apply to claims first made against the insured during the Basic Extended Reporting Period, or if purchased, the Supplemental Extended Reporting Period, but only to claims because of "wrongful acts" committed before the end of the "policy year" (but not before the Retroactive Date shown in the Declarations).

   Extended Reporting Periods do not reinstate or increase the limits of liability of the policy. Claims for injury which are first received and recorded during the Basic Extended Reporting Period or during the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the "policy year".

## Scottsdale Insurance Company
## PROFESSIONAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number  CLS169442

| LIMITS OF INSURANCE | |
|---|---|
| Aggregate Limit | $ 2,000,000 |
| Each Claim  Limit | $ 1,000,000 |

### BUSINESS DESCRIPTION

Form of business:

☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization (Other than Partnership or Joint Venture)

Business description:
  Mental Health Center

### PREMIUM

| Classification | Code No. | *Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| Mental Health Center | | | | |
| | | o) Beds/OPV/Clients | | $ 26,648 |

### FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this poicy at time of issue:

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

This Supplemental Declarations and the Commercial Liability Declarations, together with the common policy conditions, coverage form(s) and endorsements complete the above numbered policy.

CLS-SD-2 (2-92)

 **Scottsdale Insurance Company®**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS169442 | 07 | 01 | 94 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED---DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

nity Health Facilities Fund
16th St., NW, Suite 500
hington, DC

In consideration of the premium charged the coverage afforded under this Coverage Part is extended to the Person or Organization designated above as an Additional Insured but only as respects those professional services or operations performed by the Named Insured.

_____ / _____
AUTHORIZED REPRESENTATIVE            DATE

CLS-59s(6/93)

 **Scottsdale Insurance Company**®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS169442 | 07 | 01 | 94 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company/or Underwriters to pay any amount claimed to be due under this policy, the Company/or Underwriters at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court.

It is further agreed that service of process in such suit may be made upon
Insurance Commissioner of Florida
200 East Gaines
Tallahassee, Florida 32301

and that in any suit instituted against any one of them under this contract, the Company/or Underwriters agree to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company/or Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that it or they will enter a general appearance upon the Company's/or Underwriter's behalf in the event a suit is instituted.

Pursuant to any statute of any state, territory or district of the United States of America, which makes a provision, the Company/or Underwriters will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance). The above named is designated as the person to whom the officer is authorized to mail the process or a true copy.

07/13/94

AUTHORIZED REPRESENTATIVE          DATE

UTS-9g (5-92)

 **Scottsdale Insurance Company**

**Endorsement No. 1**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS169442 | 07 | 01 | 94 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

In consideration of charged premium the following is added to form CLS-59s(06/93):

Osceola Co Industrial Dev. Authority
C/O Economic Dev Comm Mid-FL  200 E. Robinson St., Suite 600
Orlando, FL

First Union National Bank of Florida
Corporate Trust Dept. FL0122  P.O. Box 44204
Jacksonville, FL

_____     07/13/94
AUTHORIZED REPRESENTATIVE      DATE

 SCOTTSDALE INSURANCE COMPANY™

**ENDORSEMENT**
NO. ___2___

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS169442 | 07 | 01 | 94 | x | | Locks Town Comm MHC Inc | 295011 |

## PENDING AND PRIOR LITIGATION EXCLUSION

The Company shall not be obligated to make any payment or defend any lawsuit in connection with any claim made against the insured(s) or Entity arising from any litigation pending or filed prior to the inception date of this policy or any future claims or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

_____   _____
AUTHORIZED REPRESENTATIVE                    DATE

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. 3**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS169442 | 03 | 14 | 95 | X | | Lock Towns Community Mental Health Center | J.J. Negley Assoc. 295011 |

··Mailing Address is amended to read:

20201 N.W. 37th Avenue
Miami, Florida  33055

RECEIVED
APR 20 1995
PROFESSIONAL LINES

RECEIVED
APR 14 1995
PROFESSIONAL LINES

_Edward Murphy_
AUTHORIZED REPRESENTATIVE                    3/27/95 mk
                                              DATE

UTS-2g (3-92)

C. FLEMING APR 30 1995   ALROSO JUN 1995 Filing   D. CARTER JUN 06 1995

 SCOTTSDALE INSURANCE COMPANY®

**ENDORSEMENT NO. 4**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS169442 | 03 | 14 | 95 | X | | Lock Towns Community Mental Health Center, Inc. | J.J. Negley Assoc. 295012 |

Professional Liability Coverage Part:

Outpatient Office is added at:

20201 NW 37th Avenue, Miami, Florida

**RECEIVED**

JUN 1 2 1995

PROFESSIONAL LINES

_____
AUTHORIZED REPRESENTATIVE

/  5/23/95 mk
DATE

UTS-2g (3-92)



## SCOTTSDALE INSURANCE COMPANY ®

**ENDORSEMENT NO. 5**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS169442 | 05 | 16 | 95 | X | | Lock Towns Community Mental Health Center, Inc. | J.J. Negley Assoc. 295012 |

Professional Liability Coverage Part:

Outpatient Office is deleted:

18475 NW 2nd Avenue, Miami, Florida

_Edward Murphy_
AUTHORIZED REPRESENTATIVE

5/23/95 mk
DATE

UTS-2g (3-92)

**Exhibit F**



## SCOTTSDALE INSURANCE COMPANY®

8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A STOCK COMPANY

# Commercial Lines Policy

THIS POLICY CONSISTS OF: DECLARATION, COMMON POLICY CONDITIONS, ONE OR MORE
COVERAGE PARTS. A COVERAGE PART CONSISTS OF: ONE OR MORE COVERAGE FORMS,
APPLICABLE FORMS AND ENDORSEMENTS.

**THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.**

CLS-J-1 (6-94)

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly appointed representative of the company if so required by local law.

Secretary

President

CLS-J-1 (8-94)

## ADDENDUM

Some internal notes, or stamps, or typing on the declaration sheet may appear. The Intended use for these is internal only and may not have been a part of the policy received by the insured.

Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.

# COMMERCIAL LIABILITY DECLARATIONS

## Scottsdale Insurance Company®

8877 North Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 or in AZ 1-800-225-9458
A STOCK COMPANY

CLS169442
RENEWAL OF NUMBER

CLS262381

To Be Completed By Agent
INSPECTION
☐ Ordered Date _____
☐ Attached
☐ Not Necessary
% of Manual   Commission

**Item 1. Named Insured and Mailing Address:**

Lock Towns Community Mental Health Center, Inc.
20201 N.W. 37TH Avenue
Miami, Florida 33055

**Agent Name and Address:**

J. J. Negley Associates, Inc.  RB:CLS372 5TH
P.O. Box 206
Cedar Grove, New Jersey 07009   X/R CLS206598

Agent No: _____

**Item 2. Policy Period**     From: 07/01/95     To: 07/01/96

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3. Retroactive Date:** 04/16/85

**Item 4: Business Description:** Mental Health Center

**Item 5.** In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | | $ |
| Professional Liability Coverage Part | CLS-PRO-1(10/94) | $ 30,559.00 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| **Total** | | $ 30,559.00 |

SURPLUS LINES TAX   1,529.20
POLICY FEE             25.00

**Item 6. Forms and endorsements applicable to all Coverage Parts:**

CLS-J-1(06/94)    CLS-D-1(10/92)    CLS-PRO-1(10/94)    CLS-77s(03/95)    CLS-62s-FL(06/93)
CLS-SD-2(02/92)   CLS-18(04/91)     CLS-59s(06/93)      CLS-75s(11/94)    UTS-9g(05/92)
IL0017(11/85)     Endt #1, 2

Countersigned  07/20/95
DATE   MK

By _____
AUTHORIZED REPRESENTATIVE

CLS-D-1 (10-92)   THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS TOGETHER WITH THE
COVERAGE FORM(S) AND ENDORSEMENTS
HOME OFFICE COPY

# PROFESSIONAL LIABILITY COVERAGE PART



SCOTTSDALE INSURANCE COMPANY®

Scottsdale, Arizona

(A stock insurance company)

**THIS IS A CLAIMS MADE POLICY. READ YOUR POLICY CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION III—WHO IS AN INSURED**. Other words and phrases that appear in capitalized bold print have special meaning. Refer to **SECTION VII—DEFINITIONS**.

## SECTION I—COVERAGE

### INSURING AGREEMENT

We will pay those sums that the insured becomes legally obligated to pay as **DAMAGES** because of injury as a result of a **WRONGFUL ACT**. This insurance applies to injury only if **CLAIM** for **DAMAGES** because of the injury is first made against the insured during the **POLICY YEAR**.

This insurance does not apply to injury caused by a **WRONGFUL ACT** which was committed before the Retroactive Date shown in the Declarations or which occurs after the **POLICY YEAR**.

A. A **CLAIM** by a person or organization seeking **DAMAGES** will be deemed to have been made when notice of such **CLAIM** is received and recorded by any insured or by us, whichever comes first.

B. All **CLAIMS** arising out of the same **WRONGFUL ACT** shall be considered as having been made at the time the first **CLAIM** is made.

We will have the right and duty to select counsel and to defend any **SUIT** seeking **DAMAGES**. But:

A. The amount we will pay for **DAMAGES** is limited as described in **SECTION IV—LIMITS OF INSURANCE**;

B. We may, at our discretion, investigate any **WRONGFUL ACT** and settle any **CLAIM** or **SUIT** that may result; and

C. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

### SUPPLEMENTARY PAYMENTS

We will pay, with respect to any **CLAIM** or **SUIT** we defend:

A. All expenses we incur.

B. The cost of bonds to release attachments, but only bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

C. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the **CLAIM** or **SUIT** including actual loss of earnings up to $100 a day because of time off from work.

D. All costs taxed against the insured in the **SUIT**.

E. Pre-judgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

CLS-PRO-1 (10-94)

F. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II—EXCLUSIONS

This insurance does not apply:

A. to bodily injury to an employee of the insured arising out of and in the course of employment by the insured;

B. to any obligation of any insured under any workers' compensation, unemployment compensation, or disability benefits law or under any similar law;

C. to injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **AUTO** or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and **LOADING OR UNLOADING**;

D. to injury arising out of a criminal act by any insured;

E. 1. to injury arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

   a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   b. At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   d. At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

      (1) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

      (2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs a. and d.(1) do not apply to injury arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2. Any loss, cost or expense arising out of any:

   a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

   b. **CLAIM** or **SUIT** by or on behalf of a governmental authority for **DAMAGES** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

F. to injury for which the insured is obligated to pay **DAMAGES** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to **DAMAGES** that the Insured would have in the absence of a contract or agreement.

G. to employment related **WRONGFUL ACTS** including:

   1. Termination of employment;

   2. Refusal to employ;

   3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

   4. Consequential injury as a result of 1. through 3. above.

This exclusion applies:

   1. Whether the insured may be liable as an employer or in any other capacity; and

   2. To any obligation to share **DAMAGES** with or repay someone else who must pay **DAMAGES** because of the injury.

CLS-PRO-1 (10-94)

## SECTION III—WHO IS AN INSURED

If you are designated in the Declarations as:

A. an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are sole owner.

B. a partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

C. an organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respects to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Each of the following is also an insured:

A. Your employees and volunteers, but only for acts within the scope of their employment by you.

B. Physicians, whether salaried or contracted by you, are insureds under this policy with respect to any CLAIMS arising from the rendering or failure to render professional services to your patients.

Coverage for physicians shall apply in excess over any other valid and collectible insurance.

## SECTION IV—LIMITS OF INSURANCE

Regardless of the number of:

1. Insureds;

2. CLAIMS made or SUITS brought;

3. Persons or organizations making CLAIMS or bringing SUITS,

the total amount we will pay for all DAMAGES because of injury arising out of any one CLAIM shall not exceed the limits of insurance stated in the supplemental declarations as applicable to EACH CLAIM.

The most we will pay for all DAMAGES because of all injury to which this insurance applies shall not be more than the limits of insurance stated in the schedule as aggregate.

## SECTION V—POLICY TERRITORY

This insurance applies to DAMAGES for injury caused by a WRONGFUL ACT anywhere in the world, so long as the original SUIT for such DAMAGES is brought in the United States, its territories or possessions, Puerto Rico or Canada.

## SECTION VI—PROFESSIONAL LIABILITY CONDITIONS

### A. BANKRUPTCY

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### B. DUTIES IN THE EVENT OF WRONGFUL ACT, CLAIM OR SUIT

1. If, during the POLICY YEAR or Extended Reporting Period (if purchased), you first are made aware of a WRONGFUL ACT (or alleged WRONGFUL ACT) and coverage as provided by this Coverage Part would otherwise apply and if you provide written notice to us during the POLICY YEAR or Extended Reporting Period, including:

   a.  the specific WRONGFUL ACT; and

   b.  the injury or DAMAGE which has or may result because of the WRONGFUL ACT; and

   c.  the name(s) of the party(ies) involved; and

   d.  how and when you first became aware of the WRONGFUL ACT;

   then any CLAIM that may be made arising out of such WRONGFUL ACT shall be deemed to have been made during the POLICY YEAR, or Extended Reporting Period.

   Subsequent policies issued by us will not apply to any CLAIMS arising from any circumstances of which a notice of a WRONGFUL ACT has been given/reported under this Coverage Part.

2. If a CLAIM is received by any insured you must:

   a.  Immediately record the specifics of the CLAIM and the date received; and

   b.  Notify us as soon as practicable.

You must see to it that we receive written notice of the **CLAIM** as soon as practicable.

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **CLAIM** or a **SUIT**;

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the **CLAIM** or **SUIT**; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or **DAMAGE** to which this insurance may also apply.

4. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

## C. LEGAL ACTION AGAINST US

No person or organization has a right under this Coverage Part:

1. To join us as a party or otherwise bring us into a **SUIT** asking for **DAMAGES** from an insured; or

2. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for **DAMAGES** that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## D. NONRENEWAL

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

## E. OTHER INSURANCE

If other valid collectible insurance is available to the insured for a loss we cover, our obligations are limited as follows:

1. Primary Insurance

   This insurance is primary except when 2. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in 4. below.

2. Excess Insurance

   This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the **POLICY YEAR** shown in the Declarations of this insurance and applies to professional liability on other than a claims-made basis, if:

   a. No Retroactive Date is shown in the Declarations of this insurance; or

   b. The other insurance has a **POLICY YEAR** which continues after the Retroactive Date shown in the Declarations of this insurance.

   **When this insurance is excess, we will have no duty to defend any CLAIM or SUIT that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   a. The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   b. The total of all deductible and self-insured amounts under all that other insurance.

   We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

3. When physician(s) are included under this Coverage Part as an insured, the coverage afforded by this Coverage Part shall apply in excess over any other valid

CLS-PRO-1 (10-94)

and collectible insurance, and shall apply only to **CLAIMS** arising out of the treatment of patients of the Named Insured.

4. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## F. PREMIUM AUDIT

1. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

2. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

   Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the **POLICY YEAR** is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## G. REPRESENTATIONS

By accepting this policy, you agree:

1. The statements in the Declarations are accurate and complete;

2. Those statements are based upon representations you made to us; and

3. We have issued this policy in reliance upon your representations.

## H. SEPARATION OF INSUREDS

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

2. Separately to each insured against whom **CLAIM** is made or **SUIT** is brought.

## I. SEVERABILITY CLAUSE

The application, a copy of which is attached to this policy, and the Declarations are the basis of this policy and are to be considered as incorporated in and constituting part of the policy. The particulars and statements contained in the application and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of you. Nothing in this provision will be construed to increase our limits of insurance shown on the Declarations.

## J. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring **SUIT** or transfer those rights to us and help us enforce them.

## K. YOUR RIGHT TO CLAIM AND WRONGFUL ACT INFORMATION

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding professional liability claims-made Coverage Part we have issued to you during the previous three years:

1. A list or other record of each **WRONGFUL ACT**, not previously reported to any other insurer, of which we were notified in accordance with paragraph B.1. of this Section. We will include the date and brief description of the **WRONGFUL ACT** if that information was in the notice we received.

2. A summary by **POLICY YEAR**, of payments made and amounts reserved.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than thirty (30) days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within sixty (60) days after the end of the **POLICY YEAR**. In this case, we will provide this information within forty-five (45) days of receipt of the request. We compile

CLS-PRO-1 (10-94)

CLAIM and WRONGFUL ACT information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

## SECTION VII—DEFINITIONS

A. **AUTO** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.

B. **CLAIM** means the receipt of a demand for money or services naming any insured and alleging a **WRONGFUL ACT**.

C. **DAMAGES** means a monetary judgment, award or settlement, but does not include restitution, fines or statutory penalties whether imposed by law or otherwise. **DAMAGES** covered under this policy will not include monies paid to you as fees or expenses for professional services rendered which are to be reimbursed or disclaimed as a part of the judgment or settlement.

D. **LOADING OR UNLOADING** means the handling of persons or property:

1. After being moved from the place where accepted for movement into or onto an aircraft, watercraft or **AUTO**;

2. While in or on an aircraft, watercraft or **AUTO**; or

3. While being moved from aircraft, watercraft or **AUTO** to the place of final delivery.

E. **POLICY YEAR** means the period shown in Item 2 of the Declarations. If the time shown in Item 2 of the Declarations is less than a year, then for the lesser period shown.

F. **SUIT** means a civil proceeding in which **DAMAGES** for injury to which this insurance applies are alleged. **SUIT** includes an arbitration proceeding alleging such **DAMAGES** to which you must submit or submit with our consent.

G. **WRONGFUL ACT** means any act, error or omission in the furnishing of professional health care services. It includes the furnishing of food, beverages, medications or appliances in connection with those services.

Any **WRONGFUL ACT** committed in the furnishing of professional health care services to any one person shall be considered one **WRONGFUL ACT**.

## SECTION VIII—EXTENDED REPORTING PERIODS

A. We will provide one or more Extended Reporting Periods, as described below, if:

1. This Coverage Part is cancelled or not renewed for reasons other than nonpayment of premium; or

2. We renew or replace this Coverage Part with insurance that:

   a. Has a Retroactive Date later than the date shown in the Declarations of the Coverage Part; or

   b. Does not apply to injury because of **WRONGFUL ACTS** on a claims-made basis.

B. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the **POLICY YEAR** and lasts for sixty (60) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent insurance you purchase.

Alternatively, up to three (3) Supplemental Extended Reporting Periods of twelve (12) months each are available, but only if added by endorsement and for an additional premium charge. This supplemental period starts sixty (60) days after the end of the **POLICY YEAR**.

You have the right to select the number of Supplemental Extended Reporting Periods you desire. Up to three (3) Supplemental Extended Reporting Periods of twelve (12) months each may be chosen. An additional premium charge of seventy-five (75) percent of the expiring annual premium of this Coverage Part is immediately due for each Supplemental Extended Reporting Period chosen.

You must give us a written request for the endorsement within thirty (30) days of the cancellation or nonrenewal. Your request should specify the length of the Supplemental Extended Reporting Period desired. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and unless you make written request within thirty (30) days of policy cancellation or nonrenewal.

CLS-PRO-1 (10-94)

C. The Extended Reporting Periods do not extend the **POLICY YEAR** or change the scope of coverage provided. Subject otherwise to the policy's terms, limits of insurance, exclusions and conditions, the policy is extended to apply to **CLAIMS** first made against the insured during the Basic Extended Reporting Period, or if purchased, the Supplemental Extended Reporting Period, but only to **CLAIMS** because of **WRONGFUL ACTS** committed before the end of the **POLICY YEAR** (but not before the Retroactive Date shown in the Declarations).

Extended Reporting Periods do not reinstate or increase the limits of insurance of the policy. **CLAIMS** for injury which are first received and recorded during the Basic Extended Reporting Period or during the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the **POLICY YEAR**.

CLS-PRO-1 (10-94)

 **Scottsdale Insurance Company**®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 | NOON | | |
| | | | | A.M. | | | |
| CLS262381 | 07 | 01 | 95 | | X | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEVERABILITY CLAUSE AMENDATORY ENDORSEMENT

This endorsment modifies insurance provided under the following:

**Professional Liability Coverage Part**

Condition I. SEVERABILITY CLAUSE, SECITON VI--PROFESSIONAL LIABILITY CONDITIONS, is deleted in its entirety and is replaced by the following:

I. **SEVERABILITY CLAUSE**

The application will be retained on file by us and will be deemed as attached to the policy. The particulars and statements contained in the application and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of you. Nothing in this provision will be construed to increase our limits of insurance shown on the Declarations.

_____       /_____
AUTHORIZED REPRESENTATIVE              DATE

CLS-77s (3/95)

 **Scottsdale Insurance Company**®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| | | | | A.M. | | | |
| CLS262381 | 07 | 01 | 95 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CANCELLATION AND NONRENEWAL---FLORIDA

**COMMON POLICY CONDITIONS A. CANCELLATION**
is deleted in its entirety and is replaced by the following:

**A. CANCELLATION.**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation of policies in effect for ninety (90) days or less.**
   If this policy has been in effect for ninety (90) days or less and is not a renewal, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:
   a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. Thirty (30) days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:
      (1) A material misstatement or misrepresentation; or
      (2) A failure to comply with underwriting requirements established by the Insurer.

3. Cancellation of policies in effect for more than ninety (90) days.
   If this policy has been in effect for more than ninety (90) days or this is a renewal or continuation of a policy issued by us, we may cancel this policy only for one or more of the following reasons:
   a. Nonpayment of premium;
   b. The policy was obtained by material misrepresentation;

c. There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the effective date of coverage;
d. There has been a substantial change in the risk covered by the policy; or
e. The cancellation is for all insureds under such policies for a given class of insureds.

   If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:
   (1) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or
   (2) Forty-five (45) days before the effective date of cancellation if we cancel for any of the reasons stated in 3.b., c., d. or e. above.

4. We will give notice to the first Named Insured at the last mailing address known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

CLS-62sFL (6-93)                          Page 1 of 2

Condition 9. **When We Do Not Renew** is deleted in its entirety and is replaced by the following:

**9. When We Do Not Renew.**

a. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason or reasons for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

b. Any notice of nonrenewal will be mailed or delivered to the last mailing address of the first Named Insured known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____/_____
AUTHORIZED REPRESENTATIVE          DATE

CLS-62s-FL (6-93)                    page 2 of 2

**Scottsdale Insurance Company**

## PROFESSIONAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number   CLS262381

| LIMITS OF INSURANCE | |
|---|---|
| Aggregate Limit | $  2,000,000 |
| Each Claim  Limit | $  1,000,000 |

**BUSINESS DESCRIPTION**

Form of business:

☐ Individual     ☐ Joint Venture     ☐ Partnership     ☒ Organization (Other than Partnership or Joint Venture)

Business description:

Mental Health Center

**PREMIUM**

| Classification | Code No. | *Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| Mental Health Center | | | | |
| | | o)  Beds/OPV/Clients | | $ 30,559 |

*Added Per End # 2*
*2351 NW 135th Street*
*N. Miami, Florida*

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)**

Forms and endorsements applying to this Coverage Part and made part of this poicy at time of issue:

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

This Supplemental Declarations and the Commercial Liability Declarations, together with the common policy conditions, coverage form(s) and endorsements complete the above numbered policy.

CLS-SD-2 (2-92)

 **Scottsdale Insurance Company**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | NO. | DAY | YR. | 1201 | NOON | | |
| CLS262381 | 07 | 01 | 95 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER:

### PROFESSIONAL LIABILITY COVERAGE PART

### SEXUAL MISCONDUCT LIMITATION ENDORSEMENT

In consideration of the premium charged, this endorsement will provide limited coverage under SECTION I COVERAGE for any "wrongful act", arising out of "sexual misconduct".

### SUBLIMIT OF LIABILITY

| | |
|---|---|
| Each claim limit | $100,000 |
| Aggregate limit | $300,000 |

Subject to the each claim limit and aggregate limit shown on the professional liability Supplemental Declarations. SECTION IV - LIMITS OF INSURANCE is amended to include the following:

(d) The sublimit of liability shown in this endorsement is the most we will pay for all damages because of injury arising out of any one claim for "sexual misconduct". The aggregate limit stated in this endorsement is the most we will pay for all claims arising out of "sexual misconduct" in any "policy year".

SECTION VII - DEFINITIONS is amended to include the following:

6. "Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured, whether committed by, caused by or contributed to by failure of any insured to:

1. Properly train, hire or supervise any employee, or;

2. Properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured.

**AUTHORIZED REPRESENTATIVE**

CLS-18 (4/91)



# Scottsdale Insurance Company ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS262381 | 07 | 01 | 95 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED---DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE PART

SCHEDULE

**Name of Person or Organization:**

Community Health Facilities Fund
1000 16th St., NW, Suite 500
Washington, DC

In consideration of the premium charged the coverage afforded under this
Coverage Part is extended to the Person or Organization designated above
as an Additional Insured but only as respects those professional services
or operations performed by the Named Insured.

_____ / _____
AUTHORIZED REPRESENTATIVE          DATE

CLS-59s(6/93)

# Scottsdale Insurance Company®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS262381 | 07 | 01 | 95 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PENDING AND PRIOR LITIGATION EXCLUSION

We shall not be obligated to make any payment or defend any lawsuit in connection with any CLAIM made against you arising from any litigation pending or filed prior to the inception date of this policy or any future CLAIMS or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

_____/_____
AUTHORIZED REPRESENTATIVE            DATE

CLS-75s (11/94)

 **Scottsdale Insurance Company** ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12.01 A.M. | NOON | | |
| CLS262381 | 07 | 01 | 95 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company/or Underwriters to pay any amount claimed to be due under this policy, the Company/or Underwriters at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court.

It is further agreed that service of process in such suit may be made upon

Insurance Commissioner of Florida
200 East Gaines
Tallahassee, Florida 32301

and that in any suit instituted against any one of them under this contract, the Company/or Underwriters agree to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company/or Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that it or they will enter a general appearance upon the Company's/or Underwriter's behalf in the event a suit is instituted.

Pursuant to any statute of any state, territory or district of the United States of America, which makes a provision, the Company/or Underwriters will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance). The above named is designated as the person to whom the officer is authorized to mail the process or a true copy.

_____   07/20/95
AUTHORIZED REPRESENTATIVE           DATE

UTS-9g (5-92)

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium;
   or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreement between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85                 Copyright, Insurance Services Office, Inc., 1982, 1983

 **Scottsdale Insurance Company** ®

**Endorsement No.** 1

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 | NOON | | |
| CLS262381 | 07 | 01 | 95 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

In consideration of charged premium the following is added to form CLS-59s(06/93):

Osceola Co Industrial Dev. Authority
C/O Economic Dev Comm Mid-FL  200 E. Robinson St., Suite 600
Orlando, FL

First Union National Bank of Florida
Corporate Trust Dept. FL0122  P.O. Box 44204
Jacksonville, FL

07/20/95

AUTHORIZED REPRESENTATIVE                DATE

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** \_\_\_\_2\_\_\_\_

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS262381 | 03 | 04 | 96 | X | | Lock Towns Comm. MH Center | J.J. Negley Assoc. 295011 |

Professional Liability Coverage Part:

The following Residential Facility is hereby added:

2351 NW 135th Street
N. Miami, Florida

**RECEIVED**

**MAY 13 1996**

**PROFESSIONAL LINES**

Additional Premium: $469.
Surplus Lines Tax: 23.45



_____ / _4/10/96_ mk
AUTHORIZED REPRESENTATIVE          DATE

UTS-3g (3-92)

# **Exhibit G**



## SCOTTSDALE INSURANCE COMPANY®

8877 North Gainey Center Drive • Scottsdale, Arizona 85258
**A STOCK COMPANY**

# Commercial Lines Policy

THIS POLICY CONSISTS OF: DECLARATION, COMMON POLICY CONDITIONS, ONE OR MORE
COVERAGE PARTS. A COVERAGE PART CONSISTS OF: ONE OR MORE COVERAGE FORMS,
APPLICABLE FORMS AND ENDORSEMENTS.

**THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.**

CLS-J-1 (6-94)

In Witness Whereof, the company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly appointed representative of the company if so required by local law.

Secretary

President

CLS-J-1 (6-94)

## ADDENDUM

Some internal notes, or stamps, or typing on the declaration sheet may appear.  The Intended use for these is internal only and may not have been a part of the policy received by the insured.

Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.

# COMMERCIAL LIABILITY DECLARATIONS

## Scottsdale Insurance Company

**CLS262381**
RENEWAL OF NUMBER

8877 North Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 or in AZ 1-800-225-9458
A STOCK COMPANY

**CLS322578**

To Be Completed By Agent
INSPECTION
☐ Ordered Date _____
☐ Attached
☐ Not Necessary
% of Manual | Commission
% | %

| REG DESK | CODING | U/W | FILE |
|---|---|---|---|
| | | | |

**Item 1. Named Insured and Mailing Address:**

Lock Towns Community Mental Health Center, Inc.
20201 N.W. 37TH Avenue
Miami, Florida 33055

**Agent Name and Address:**

J. J. Negley Associates, Inc.
P.O. Box 206
Cedar Grove, New Jersey 07009

R/B OPS000607    Agent No: _____ 295011 _____

**Item 2. Policy Period**    From: 07/01/96    To: 07/01/97

12:01 A.M. Standard Time at the address of the Named Insured as stated herein.

**Item 3. Retroactive Date:** 04/16/85

**Item 4: Business Description:** Mental Health Center

**Item 5.** In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | Form No. and Edition Date | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | | $ |
| Professional Liability Coverage Part | CLS-PRO-1(10/94) | $ 33,254.00 |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |
| | | $ |

POLICY FEE          25.00

Total $ 33,254.00
INSPECTION FEE         85.00
SURPLUS LINES TAX   1,668.20

**Item 6. Forms and endorsements applicable to all Coverage Parts:**
CLS-J-1(06/94)   CLS-D-1(10/92)   CLS-PRO-1(10/94)   CLS-62s-FL(06/93)   CLS-SD-2(02/92)
CLS-18(04/91)    CLS-77s(03/95)   CLS-59s(06/93)     CLS-75s(11/94)      UTS-9g(05/92)
IL0017(11/85)    Endt #1, 2

Countersigned   07/30/96   MK   By _____
                DATE                    AUTHORIZED REPRESENTATIVE

CLS-D-1 (10-92)

THIS COMMERCIAL LIABILITY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS, TOGETHER WITH [illegible] CONDITIONS, COVERAGE FORM(S) AND [illegible] CONSTITUTE THE ABOVE [illegible] POLICY.

HOME OFFICE COPY

# PROFESSIONAL LIABILITY COVERAGE PART



SCOTTSDALE INSURANCE COMPANY®

Scottsdale, Arizona

(A stock insurance company)

**THIS IS A CLAIMS MADE POLICY. READ YOUR POLICY CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION III—WHO IS AN INSURED**. Other words and phrases that appear in capitalized bold print have special meaning. Refer to **SECTION VII—DEFINITIONS**.

## SECTION I—COVERAGE

### INSURING AGREEMENT

We will pay those sums that the insured becomes legally obligated to pay as **DAMAGES** because of injury as a result of a **WRONGFUL ACT**. This insurance applies to injury only if **CLAIM** for **DAMAGES** because of the injury is first made against the insured during the **POLICY YEAR**.

This insurance does not apply to injury caused by a **WRONGFUL ACT** which was committed before the Retroactive Date shown in the Declarations or which occurs after the **POLICY YEAR**.

A. A **CLAIM** by a person or organization seeking **DAMAGES** will be deemed to have been made when notice of such **CLAIM** is received and recorded by any insured or by us, whichever comes first.

B. All **CLAIMS** arising out of the same **WRONGFUL ACT** shall be considered as having been made at the time the first **CLAIM** is made.

We will have the right and duty to select counsel and to defend any **SUIT** seeking **DAMAGES**. But:

A. The amount we will pay for **DAMAGES** is limited as described in **SECTION IV—LIMITS OF INSURANCE**;

B. We may, at our discretion, investigate any **WRONGFUL ACT** and settle any **CLAIM** or **SUIT** that may result; and

C. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

### SUPPLEMENTARY PAYMENTS

We will pay, with respect to any **CLAIM** or **SUIT** we defend:

A. All expenses we incur.

B. The cost of bonds to release attachments, but only bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

C. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the **CLAIM** or **SUIT** including actual loss of earnings up to $100 a day because of time off from work.

D. All costs taxed against the insured in the **SUIT**.

E. Pre-judgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

CLS-PRO-1 (10-94)

F. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II—EXCLUSIONS

This insurance does not apply:

A. to bodily injury to an employee of the insured arising out of and in the course of employment by the insured;

B. to any obligation of any insured under any workers' compensation, unemployment compensation, or disability benefits law or under any similar law;

C. to injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **AUTO** or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and **LOADING OR UNLOADING**;

D. to injury arising out of a criminal act by any insured;

E. 1. to injury arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    a. At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    b. At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    c. Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    d. At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

      (1) If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

      (2) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs a. and d.(1) do not apply to injury arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2. Any loss, cost or expense arising out of any:

    a. Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    b. **CLAIM** or **SUIT** by or on behalf of a governmental authority for **DAMAGES** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

F. to injury for which the insured is obligated to pay **DAMAGES** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to **DAMAGES** that the Insured would have in the absence of a contract or agreement.

G. to employment related **WRONGFUL ACTS** including:

1. Termination of employment;

2. Refusal to employ;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

4. Consequential injury as a result of 1. through 3. above.

This exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share **DAMAGES** with or repay someone else who must pay **DAMAGES** because of the injury.

CLS-PRO-1 (10-94)

## SECTION III—WHO IS AN INSURED

If you are designated in the Declarations as:

A. an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are sole owner.

B. a partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

C. an organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respects to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Each of the following is also an insured:

A. Your employees and volunteers, but only for acts within the scope of their employment by you.

B. Physicians, whether salaried or contracted by you, are insureds under this policy with respect to any **CLAIMS** arising from the rendering or failure to render professional services to your patients.

**Coverage for physicians shall apply in excess over any other valid and collectible insurance.**

## SECTION IV—LIMITS OF INSURANCE

Regardless of the number of:

1. Insureds;

2. **CLAIMS** made or **SUITS** brought;

3. Persons or organizations making **CLAIMS** or bringing **SUITS**,

the total amount we will pay for all **DAMAGES** because of injury arising out of any one **CLAIM** shall not exceed the limits of insurance stated in the supplemental declarations as applicable to **EACH CLAIM**.

The most we will pay for all **DAMAGES** because of all injury to which this insurance applies shall not be more than the limits of insurance stated in the schedule as aggregate.

## SECTION V—POLICY TERRITORY

This insurance applies to **DAMAGES** for injury caused by a **WRONGFUL ACT** anywhere in the world, so long as the original **SUIT** for such **DAMAGES** is brought in the United States, its territories or possessions, Puerto Rico or Canada.

## SECTION VI—PROFESSIONAL LIABILITY CONDITIONS

### A. BANKRUPTCY

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### B. DUTIES IN THE EVENT OF WRONGFUL ACT, CLAIM OR SUIT

1. If, during the **POLICY YEAR** or Extended Reporting Period (if purchased), you first are made aware of a **WRONGFUL ACT** (or alleged **WRONGFUL ACT**) and coverage as provided by this Coverage Part would otherwise apply and if you provide written notice to us during the **POLICY YEAR** or Extended Reporting Period, including:

   a. the specific **WRONGFUL ACT**; and

   b. the injury or **DAMAGE** which has or may result because of the **WRONGFUL ACT**; and

   c. the name(s) of the party(ies) involved; and

   d. how and when you first became aware of the **WRONGFUL ACT**;

   then any **CLAIM** that may be made arising out of such **WRONGFUL ACT** shall be deemed to have been made during the **POLICY YEAR**, or Extended Reporting Period.

   Subsequent policies issued by us will not apply to any **CLAIMS** arising from any circumstances of which a notice of a **WRONGFUL ACT** has been given/reported under this Coverage Part.

2. If a **CLAIM** is received by any insured you must:

   a. Immediately record the specifics of the **CLAIM** and the date received; and

   b. Notify us as soon as practicable.

CLS-PRO-1 (10-94)

You must see to it that we receive written notice of the **CLAIM** as soon as practicable.

3. You and any other involved insured must:

   a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **CLAIM** or a **SUIT**;

   b. Authorize us to obtain records and other information;

   c. Cooperate with us in the investigation, settlement or defense of the **CLAIM** or **SUIT**; and

   d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or **DAMAGE** to which this insurance may also apply.

4. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

## C. LEGAL ACTION AGAINST US

No person or organization has a right under this Coverage Part:

1. To join us as a party or otherwise bring us into a **SUIT** asking for **DAMAGES** from an **insured**; or

2. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for **DAMAGES** that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## D. NONRENEWAL

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

## E. OTHER INSURANCE

If other valid collectible insurance is available to the insured for a loss we cover, our obligations are limited as follows:

1. Primary Insurance

This insurance is primary except when 2. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in 4. below.

2. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the **POLICY YEAR** shown in the Declarations of this insurance and applies to professional liability on other than a claims-made basis, if:

   a. No Retroactive Date is shown in the Declarations of this insurance; or

   b. The other insurance has a **POLICY YEAR** which continues after the Retroactive Date shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any **CLAIM** or **SUIT** that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

   a. The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

   b. The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

3. When physician(s) are included under this Coverage Part as an insured, the coverage afforded by this Coverage Part shall apply in excess over any other valid

CLS-PRO-1 (10-94)

and collectible insurance, and shall apply only to **CLAIMS** arising out of the treatment of patients of the Named Insured.

4. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## F. PREMIUM AUDIT

1. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

2. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

   Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the **POLICY YEAR** is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## G. REPRESENTATIONS

By accepting this policy, you agree:

1. The statements in the Declarations are accurate and complete;

2. Those statements are based upon representations you made to us; and

3. We have issued this policy in reliance upon your representations.

## H. SEPARATION OF INSUREDS

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

2. Separately to each insured against whom **CLAIM** is made or **SUIT** is brought.

## I. SEVERABILITY CLAUSE

The application, a copy of which is attached to this policy, and the Declarations are the basis of this policy and are to be considered as incorporated in and constituting part of the policy. The particulars and statements contained in the application and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of you. Nothing in this provision will be construed to increase our limits of insurance shown on the Declarations.

## J. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring **SUIT** or transfer those rights to us and help us enforce them.

## K. YOUR RIGHT TO CLAIM AND WRONGFUL ACT INFORMATION

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding professional liability claims-made Coverage Part we have issued to you during the previous three years:

1. A list or other record of each **WRONGFUL ACT**, not previously reported to any other insurer, of which we were notified in accordance with paragraph B.1. of this Section. We will include the date and brief description of the **WRONGFUL ACT** if that information was in the notice we received.

2. A summary by **POLICY YEAR**, of payments made and amounts reserved.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than thirty (30) days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within sixty (60) days after the end of the **POLICY YEAR**. In this case, we will provide this information within forty-five (45) days of receipt of the request. We compile

CLS-PRO-1 (10-94)

CLAIM and WRONGFUL ACT information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

## SECTION VII—DEFINITIONS

A. **AUTO** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.

B. **CLAIM** means the receipt of a demand for money or services naming any insured and alleging a **WRONGFUL ACT**.

C. **DAMAGES** means a monetary judgment, award or settlement, but does not include restitution, fines or statutory penalties whether imposed by law or otherwise. **DAMAGES** covered under this policy will not include monies paid to you as fees or expenses for professional services rendered which are to be reimbursed or disclaimed as a part of the judgment or settlement.

D. **LOADING OR UNLOADING** means the handling of persons or property:

1. After being moved from the place where accepted for movement into or onto an aircraft, watercraft or **AUTO**;

2. While in or on an aircraft, watercraft or **AUTO**; or

3. While being moved from aircraft, watercraft or **AUTO** to the place of final delivery.

E. **POLICY YEAR** means the period shown in Item 2 of the Declarations. If the time shown in Item 2 of the Declarations is less than a year, then for the lesser period shown.

F. **SUIT** means a civil proceeding in which **DAMAGES** for injury to which this insurance applies are alleged. **SUIT** includes an arbitration proceeding alleging such **DAMAGES** to which you must submit or submit with our consent.

G. **WRONGFUL ACT** means any act, error or omission in the furnishing of professional health care services. It includes the furnishing of food, beverages, medications or appliances in connection with those services.

Any **WRONGFUL ACT** committed in the furnishing of professional health care services to any one person shall be considered one **WRONGFUL ACT**.

## SECTION VIII—EXTENDED REPORTING PERIODS

A. We will provide one or more Extended Reporting Periods, as described below, if:

1. This Coverage Part is cancelled or not renewed for reasons other than nonpayment of premium; or

2. We renew or replace this Coverage Part with insurance that:

   a. Has a Retroactive Date later than the date shown in the Declarations of the Coverage Part; or

   b. Does not apply to injury because of **WRONGFUL ACTS** on a claims-made basis.

B. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the **POLICY YEAR** and lasts for sixty (60) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent insurance you purchase.

Alternatively, up to three (3) Supplemental Extended Reporting Periods of twelve (12) months each are available, but only if added by endorsement and for an additional premium charge. This supplemental period starts sixty (60) days after the end of the **POLICY YEAR**.

You have the right to select the number of Supplemental Extended Reporting Periods you desire. Up to three (3) Supplemental Extended Reporting Periods of twelve (12) months each may be chosen. An additional premium charge of seventy-five (75) percent of the expiring annual premium of this Coverage Part is immediately due for each Supplemental Extended Reporting Period chosen.

You must give us a written request for the endorsement within thirty (30) days of the cancellation or nonrenewal. Your request should specify the length of the Supplemental Extended Reporting Period desired. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and unless you make written request within thirty (30) days of policy cancellation or nonrenewal.

CLS-PRO-1 (10-94)

C. The Extended Reporting Periods do not extend the **POLICY YEAR** or change the scope of coverage provided. Subject otherwise to the policy's terms, limits of insurance, exclusions and conditions, the policy is extended to apply to **CLAIMS** first made against the insured during the Basic Extended Reporting Period, or if purchased, the Supplemental Extended Reporting Period, but only to **CLAIMS** because of **WRONGFUL ACTS** committed before the end of the **POLICY YEAR** (but not before the Retroactive Date shown in the Declarations).

Extended Reporting Periods do not reinstate or increase the limits of insurance of the policy. **CLAIMS** for injury which are first received and recorded during the Basic Extended Reporting Period or during the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the **POLICY YEAR**.

CLS-PRO-1 (10-94)



# Scottsdale Insurance Company®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 A.M. | NOON | | |
| CLS322578 | 07 | 01 | 96 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## CANCELLATION AND NONRENEWAL---FLORIDA

**COMMON POLICY CONDITIONS A. CANCELLATION** is deleted in its entirety and is replaced by the following:

**A. CANCELLATION.**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation of policies in effect for ninety (90) days or less.**
   If this policy has been in effect for ninety (90) days or less and is not a renewal, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:
   a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or
   b. Thirty (30) days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:
      (1) A material misstatement or misrepresentation; or
      (2) A failure to comply with underwriting requirements established by the Insurer.

3. Cancellation of policies in effect for more than ninety (90) days.
   If this policy has been in effect for more than ninety (90) days or this is a renewal or continuation of a policy issued by us, we may cancel this policy only for one or more of the following reasons:
   a. Nonpayment of premium;
   b. The policy was obtained by material misrepresentation;

c. There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the effective date of coverage;
d. There has been a substantial change in the risk covered by the policy; or
e. The cancellation is for all insureds under such policies for a given class of insureds.

   If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:
   (1) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or
   (2) Forty-five (45) days before the effective date of cancellation if we cancel for any of the reasons stated in 3.b., c., d. or e. above.

4. We will give notice to the first Named Insured at the last mailing address known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

CLS-62sFL (6-93)  Page 1 of 2

Condition 9. **When We Do Not Renew** is deleted in its entirety and is replaced by the following:

9. **When We Do Not Renew.**

   a. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason or reasons for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

   b. Any notice of nonrenewal will be mailed or delivered to the last mailing address of the first Named Insured known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____/_____
AUTHORIZED REPRESENTATIVE              DATE

CLS-62s-FL (6-93)                       page 2 of 2

## Scottsdale Insurance Company

### PROFESSIONAL LIABILITY COVERAGE PART
### SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number  CLS322578

---

**LIMITS OF INSURANCE**

| | |
|---|---|
| Aggregate Limit | $ 2,000,000 |
| Each Claim  Limit | $ 1,000,000 |

---

**BUSINESS DESCRIPTION**

Form of business:

☐ Individual    ☐ Joint Venture    ☐ Partnership    ☒ Organization (Other than Partnership or Joint Venture)

Business description:

  Mental Health Center

---

**PREMIUM**

| Classification | Code No. | *Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| Mental Health Center | | | | |
| | | o) Beds/OPV/Clients | | $ 33,254 |

---

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)**

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

---

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

This Supplemental Declarations and the Commercial Liability Declarations, together with the common policy conditions, coverage form(s) and endorsements complete the above numbered policy.

CLS-SD-2 (2-92)

 **Scottsdale Insurance Company** ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS322578 | 07 | 01 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER:

### PROFESSIONAL LIABILITY COVERAGE PART

### SEXUAL MISCONDUCT LIMITATION ENDORSEMENT

In consideration of the premium charged, this endorsement will provide limited coverage under SECTION I COVERAGE for any "wrongful act", arising out of "sexual misconduct".

### SUBLIMIT OF LIABILITY

| | |
|---|---|
| Each claim limit | $100,000 |
| Aggregate limit | $300,000 |

Subject to the each claim limit and aggregate limit shown on the professional liability Supplemental Declarations. SECTION IV - LIMITS OF INSURANCE is amended to include the following:

(d) The sublimit of liability shown in this endorsement is the most we will pay for all damages because of injury arising out of any one claim for "sexual misconduct". The aggregate limit stated in this endorsement is the most we will pay for all claims arising out of "sexual misconduct" in any "policy year".

SECTION VII - DEFINITIONS is amended to include the following:

6. "Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured, whether committed by, caused by or contributed to by failure of any insured to:

1. Properly train, hire or supervise any employee, or;

2. Properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured.

CLS-18 (4/91)

**AUTHORIZED REPRESENTATIVE**

 **Scottsdale Insurance Company** °

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12.01 | NOON | | |
| CLS322578 | 07 | 01 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEVERABILITY CLAUSE AMENDATORY ENDORSEMENT

This endorsment modifies insurance provided under the following:

**Professional Liability Coverage Part**

Condition I. SEVERABILITY CLAUSE, SECTION VI--PROFESSIONAL LIABILITY CONDITIONS, is deleted in its entirety and is replaced by the following:

I. **SEVERABILITY CLAUSE**

The application will be retained on file by us and will be deemed as attached to the policy. The particulars and statements contained in the application and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of you. Nothing in this provision will be construed to increase our limits of insurance shown on the Declarations.

_____ / _____

AUTHORIZED REPRESENTATIVE                    DATE

CLS-77s (3/95)

 **Scottsdale Insurance Company** ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 | NOON | | |
| CLS322578 | 07 | 01 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ADDITIONAL INSURED---DESIGNATED PERSON OR ORGANIZATION

This endorsement modifies insurance provided under the following:

PROFESSIONAL LIABILITY COVERAGE PART

**SCHEDULE**

**Name of Person or Organization:**

Community Health Facilities Fund
1000 16th St., NW, Suite 500
Washington, DC

In consideration of the premium charged the coverage afforded under this Coverage Part is extended to the Person or Organization designated above as an Additional Insured but only as respects those professional services or operations performed by the Named Insured.

_____/_____
AUTHORIZED REPRESENTATIVE                        DATE

CLS-59s(6/93)

## Scottsdale Insurance Company®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 | NOON | | |
| | | | | A.M. | | | |
| CLS322578 | 07 | 01 | 96 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### PENDING AND PRIOR LITIGATION EXCLUSION

We shall not be obligated to make any payment or defend any lawsuit in connection with any CLAIM made against you arising from any litigation pending or filed prior to the inception date of this policy or any future CLAIMS or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

_____ / _____
AUTHORIZED REPRESENTATIVE            DATE

CLS-75s (11/94)



# Scottsdale Insurance Company®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS322578 | 07 | 01 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company/or Underwriters to pay any amount claimed to be due under this policy, the Company/or Underwriters at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court.

It is further agreed that service of process in such suit may be made upon

Insurance Commissioner of Florida
200 East Gaines
Tallahassee, Florida 32301

and that in any suit instituted against any one of them under this contract, the Company/or Underwriters agree to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company/or Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that it or they will enter a general appearance upon the Company's/or Underwriter's behalf in the event a suit is instituted.

Pursuant to any statute of any state, territory or district of the United States of America, which makes a provision, the Company/or Underwriters will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance). The above named is designated as the person to whom the officer is authorized to mail the process or a true copy.

_____   07/30/96
AUTHORIZED REPRESENTATIVE   DATE

UTS-9g (5-92)

# COMMON POLICY CONDITIONS

All Coverage Parts Included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium;
   or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreement between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85                    Copyright, Insurance Services Office, Inc., 1982, 1983



# Scottsdale Insurance Company ®

**Endorsement No.  1**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| CLS322578 | 07 | 01 | 96 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295011 |

In consideration of charged premium the following is added to form CLS-59s(06/93):

Osceola Co Industrial Dev. Authority
C/O Economic Dev Comm Mid-FL  200 E. Robinson St., Suite 600
Orlando, FL

First Union National Bank of Florida
Corporate Trust Dept. FL0122  P.O. Box 44204
Jacksonville, FL

| | 07/30/96 |
|---|---|
| AUTHORIZED REPRESENTATIVE | DATE |



SCOTTSDALE INSURANCE COMPANY

ENDORSEMENT NO. 2

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| CLS322578 | 07 | 01 | 96 | X A.M. | | Lock Towns Community Mental Health Center, Inc. | J.J. Negley Assoc. 295011 |

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED DESIGNATED PERSON OR ORGANIZATION**

This Endorsement Modifies Insurance Under the Following Coverage Part:

**PROFESSIONAL LIABILITY COVERAGE PART**

**SCHEDULE**

Name of Person or Organization

Metropolitan Dade County

RECEIVED

' 2 9 1996

PROFESSIONAL LINES

In consideration of the premium charged the coverage afforded under this Coverage Part is extended to the Person or Organization designated above as an Additional Insured. They are an Additional Insured but only as respects those professional services or operations performed by the Named Insured.



RECEIVED

SEP 1 1 1996

PROFESSIONAL LINES

CLS-59s(6-93)

_____
AUTHORIZED REPRESENTATIVE

8/20/96 mk
DATE

# Exhibit H



# SCOTTSDALE INSURANCE COMPANY®

8877 North Gainey Center Drive • Scottsdale, Arizona 85258
A STOCK COMPANY



# Directors and Officers Liability Including Entity Reimbursement and Entity Liability Policy

## THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.

DES-J-1 (9-95)



# DIRECTORS AND OFFICERS LIABILITY INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY POLICY



## SCOTTSDALE INSURANCE COMPANY®

Scottsdale, Arizona

(A Stock Insurance Company, herein called Company)

**THIS IS A CLAIMS MADE POLICY. READ YOUR POLICY CAREFULLY.**

In consideration of the payment of the premium and subject to all of the terms, conditions and exclusions of this Policy, the Company agrees with the **INDIVIDUAL INSURED(S)** and the **ENTITY** as follows:

## I. INSURING AGREEMENTS

### COVERAGE

The Company will pay on behalf of the **INDIVIDUAL INSURED(S)** and/or the **ENTITY**, in accordance with the terms, conditions and exclusions of the Policy, **LOSS** which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** shall become legally obligated to pay by reason of any claim or claims made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** as the result of a **WRONGFUL ACT**, provided always that the claim is first made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** during the **POLICY YEAR.**

### DEFENSE

(A) In addition to the Limit of Liability, the Company shall pay all applicable **LOSS ADJUSTMENT EXPENSE.**

(B) The Company shall have the right and duty to defend, any claim or suit against any **INSURED** seeking damages which are payable under the terms of this policy, even if any of the allegations of the claim or suit are groundless, false or fraudulent. The Company shall have the right to make investigation, negotiation and settlement of any such claim.

(C) No **LOSS ADJUSTMENT EXPENSE** shall be incurred nor settlements made without the Company's consent. The Company shall not be liable hereunder with respect to any settlements or **LOSS ADJUSTMENT EXPENSE** to which it has not consented.

(D) The Company shall not be obligated to pay any **LOSS** or judgment or **LOSS ADJUSTMENT EXPENSE** or to defend or to continue to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of **LOSS.**

## II. EXTENSIONS

(A) This Policy, subject otherwise to the terms hereof, shall cover all **LOSS** and **LOSS ADJUSTMENT EXPENSE** arising from claims made against the estates, heirs, legal representatives or assigns of deceased persons who were **INDIVIDUAL INSURED(S)** at the time of the **WRONGFUL ACT** upon which such claims are based.

(B) This Policy shall automatically cover any **SUBSIDIARY** and the **INDIVIDUAL INSURED(S)** of those **SUBSIDIARIES** acquired or created after the inception of this Policy subject to written notice being given to the Company within 30 days of the acquisition or creation of any **SUBSIDIARY.**

## III. DEFINITIONS

Whenever used in this Policy, these words shall have the following meanings:

(A) **DIRECTOR** means any individual who was, now is, or becomes a member of the Board of Directors of the **ENTITY** in accordance with the provisions of the Articles of Incorporation or Bylaws of the **ENTITY**.

(B) **ENTITY** means the organization named in Item 1. of the Declarations and any covered **SUBSIDIARY** shown on the application.

(C) **INDIVIDUAL INSURED** means any individual who was, now is, or becomes a **DIRECTOR, OFFICER,** trustee, employee, volunteer or committee member of the **ENTITY** or of a covered **SUBSIDIARY**, whether salaried or not, unless specifically excluded.

(D) **INSURED** means the **ENTITY** and any **INDIVIDUAL INSURED(S)**.

(E) **LOSS** means any amount which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** are legally obligated to pay for any claim or claims made against them for **WRONGFUL ACTS,** and shall include but not be limited to judgments and settlements, provided always, however, such subject of **LOSS** shall not include fines or penalties imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. **LOSS** does not include **LOSS ADJUSTMENT EXPENSE.**

(F) **LOSS ADJUSTMENT EXPENSE** means expenditures including, but not limited to, investigations, experts, adjustment services, legal services, court costs, and such other costs to the Company. **LOSS ADJUST-MENT EXPENSE** also means premium on appeal bonds required in any suit defended by the Company and the cost of attachment or similar bonds. **LOSS ADJUSTMENT EXPENSE** shall not include salaries, wages, overhead or benefit expenses associated with **DIRECTORS, OFFICERS,** trustees, employees, volunteers or committee members of the **ENTITY.**

(G) **OFFICER** means any individual who has, now does, or hereafter occupies a position specifically defined or described in the Bylaws as an **OFFICER** of the **ENTITY,** and has been, or hereafter is elected to such position by the Board of Directors of the **ENTITY** in accordance with provisions of the Bylaws.

(H) **POLICY YEAR** means the period of one year following the effective date and hour of this Policy, or if the time between the effective date and the termination of the Policy is less than one year, such lesser period.

(I) **SUBSIDIARY** means:

   (1)  any company in which more than 50% of the ownership is controlled by the **ENTITY**; or

   (2)  any organization whose board is controlled by the **ENTITY.**

(J) **WRONGFUL ACT** means any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by one or more of the **INSURED(S)** while acting within the scope of their individual or collective capacities, subject to the terms, conditions and limitations of this Policy.

## IV. EXCLUSIONS

The Company shall not be obligated to make any payment or defend any lawsuit in connection with any claim made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY**:

(A) for:

   (1)  false arrest, detention or imprisonment, or malicious prosecution;

   (2)  the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy;

   (3)  wrongful entry or eviction, or other invasion of the right of private occupancy:

DES-J-1 (9-95)

(B) based upon or attributable to the **INSURED(S)** gaining any personal profit or advantage to which they were not legally entitled;

(C) for claims for the return of remuneration illegally paid to the **INSURED(S)**;

(D) for an accounting of profits made from the purchase or sale by the **INSURED(S)** of securities of the **ENTITY** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law or common law;

(E) based upon or attributable to the **INSURED(S)** having acted dishonestly, fraudulently, or in bad faith with knowledge or with reasonable cause to believe that such action was in violation of the law;

(F) which is insured by another valid policy or policies;

(G) based upon or attributable to bodily injury, mental anguish, emotional distress, sickness, disease, or death of any person, or to damages to or destruction of any tangible property including losses of use thereof; however, this exclusion as to mental anguish and emotional distress only does not apply to any claim brought against an **INDIVIDUAL INSURED** or the **ENTITY** by a current, former or prospective employee, **OFFICER, DIRECTOR** or volunteer for wrongful termination, discrimination or sexual harassment.

(H) based upon the rendering of or failure to render any professional services;

(I) for claims, demands, or actions seeking relief or redress in any form other than compensatory damages, or for any fees, costs or expenses which the **INSURED(S)** may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief; however, the Company will afford defense to the **INSURED(S)** for such actions, claims, suits or demands in which compensatory damages are requested if not otherwise excluded;

(J) for any loss, cost or expense arising out of any governmental direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants. Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, asbestos, alkalis, chemicals and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed;

(K) based upon the Employee Retirement Income Security Act of 1974, public law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto, or similar provisions of any federal, state or local statutory law or common law;

(L) based upon or attributable to any anti-trust actions or suits;

(M) based upon or attributable to any failure or omission on the part of any **INSURED** to effect and maintain insurance of any kind;

(N) for any claim brought by any **INDIVIDUAL INSURED(S)** or the **ENTITY** against any other **INDIVIDUAL INSURED(S)** or the **ENTITY**; however, this exclusion does not apply to any claim brought by an **INDIVIDUAL INSURED** for wrongful termination, discrimination or sexual harassment; or

(O) arising from any litigation pending or filed prior to the inception date of this Policy or any future claims or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

---

## V. LIMIT OF LIABILITY AND RETENTION

---

(A) The Company shall be liable to pay **LOSS** in excess of the Retention amount, if any, stated in Item 3. of the Declarations, up to the amount stated in Item 4. of the Declarations. This amount shall be the Company's maximum Limit of Liability for **LOSS** for each **POLICY YEAR.**

(B) Losses based on or arising out of the same act or interrelated acts of one or more **INSURED(S)** shall be considered a single claim and only one Retention shall apply. All such claims shall be considered first made on the date on which the earliest claim arising out of

such act or interrelated acts was first made against the **INSURED(S)**.

(C) The Retention, if any, shall remain uninsured. It shall be applied first against **LOSS ADJUSTMENT EXPENSE** and, if not exhausted, against **LOSS** payments.

(D) The Company may pay all or any part of the Retention amount to effect settlement of any claim. Upon demand, the **INSURED(S)** shall promptly reimburse the Company for such amount of the Retention that the Company has paid.

(E) The Company's obligation to pay **LOSS ADJUSTMENT EXPENSE** shall not reduce the Loss Limit of Liability.

(F) **IN NO EVENT SHALL THE COMPANY'S MAXIMUM LIMIT OF LIABILITY BE INCREASED BY AN EXTENDED REPORTING PERIOD.**

## VI.  NOTICE OF CLAIM AND LOSS PROVISIONS

(A) If, during the policy year or the Extended Reporting Periods, the **INSURED(S)** shall receive written or oral notice from any party that it is the intention of such party to hold the **INSURED(S)** responsible for any **WRONGFUL ACT(S)**, the **INSURED(S)** shall give written notice to the Company of the receipt of such written or oral notice as soon as practicable. At that time, any claims made against the **INSURED(S)** arising out of such **WRONGFUL ACT(S)** shall, for the purpose of this policy, be treated as claims made during the **POLICY YEAR** in which such notice was given, or, if given during the Extended Reporting Periods, as a claim made during the last **POLICY YEAR**.

(B) The **INSURED(S)** shall give written notice to the Company as soon as practicable of any claim made against the **INSURED(S)** or of any specific circumstances involved which may result in a claim. The notice shall identify the **INDIVIDUAL INSURED(S)** and the **ENTITY** and contain reasonably obtainable information with respect to the time, place and circumstances of the claim including the names and addresses of those in-

volved and of available witnesses and the extent of the type of claim anticipated. If a claim is made or suit is brought against the **INDIVIDUAL INSURED(S)** or the **ENTITY**, every demand, notice, summons or other process received by the **INDIVIDUAL INSURED(S)** or the **ENTITY** or the **INDIVIDUAL INSURED(S)'** or **ENTITY'S** representatives shall immediately be forwarded to the Company.

(C) The **INSURED(S)** shall cooperate with the Company and, upon the Company's request, assist in making settlements in the conduct of suit and in the enforcement of any right of contribution or indemnity against any person or organization who may be liable.

## VII.  GENERAL CONDITIONS

(A) **APPLICATION:** In issuing this Policy, the Company has relied on the declarations and statements which are contained in the application form and which are deemed to be incorporated in this Policy; provided, however, that, except for material facts or circumstances known to the person who subscribed the proposal form, any misstatement or omission in such proposal form in respect of a specified **WRONGFUL ACT** by a particular **INDIVIDUAL INSURED(S)**, his cognizance of any matter which he has reason to suppose might afford grounds for a future claim against him, shall not be imputed to any other **INDIVIDUAL INSURED(S)** for purposes of determining the availability of coverage under this Policy.

(B) **EXTENDED REPORTING PERIODS:**

(1) One or more Extended Reporting Periods, as described below, will be provided:

(a) if this Policy is canceled or nonrenewed for other than nonpayment of premium; or

(b) if the Company renews or replaces coverage with insurance that is other than a claims made form.

(2) A "Basic Extended Reporting Period" is automatically provided without additional charge. This pe-

riod starts with the end of the **POLICY YEAR** and lasts for sixty (60) days. The "Basic Extended Reporting Period" does not apply to claims covered under any subsequent Director(s) and Officer(s) or Trustee(s) Liability Policy.

(3) In addition, up to three (3) "Supplemental Extended Reporting Periods" of twelve (12) months each are available, but only if added by endorsement and for an additional premium charge. The first period starts sixty (60) days after the end of the **POLICY YEAR**.

(4) The **ENTITY**, subject to the terms and conditions set forth herein, shall have a right to select that period to which the "Supplemental Extended Reporting Period" shall apply, which in no event shall exceed thirty-six (36) months immediately upon such cancellation or refusal to renew. An additional premium is immediately due in an amount equal to fifty percent (50%) of the premium previously charged by the Company for each year for which the **INSURED(S)** elects to have the "Supplemental Extended Reporting Period" rendered applicable. Once in effect, Supplemental Extended Reporting Periods may not be canceled.

(5) The right of extension shall terminate unless written notice is given to the Company not later than thirty (30) days after the effective date of cancellation or nonrenewal.

(6) The Extended Reporting Periods do not extend the **POLICY YEAR** or change the scope of coverage provided. Subject otherwise to the Policy's terms, Limit of Liability, Exclusions and Conditions, the Policy is extended to apply to claims first made during the "Basic Extended Reporting Period" or, if purchased, the "Supplemental Extended Reporting Period," but only by reason of any **WRONGFUL ACT** committed prior to the end of the **POLICY YEAR**.

(7) **EXTENDED REPORTING PERIODS DO NOT REINSTATE OR INCREASE THE LIMITS OF LIABILITY OF THE POLICY.** Claims for **WRONGFUL ACTS** which are first received during an Extended Reporting Period shall be deemed to have been made on the last day of the **POLICY YEAR**.

(C) **CANCELLATION:** This policy may be canceled by the **ENTITY** by surrendering the policy to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be canceled by the Company by mailing to the **ENTITY** at the address shown in this Policy, written notice stating when, not less than ten (10) days for nonpayment of premium, or sixty (60) days for any other valid reason, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **POLICY YEAR**. Delivery of such written notice either by the **ENTITY** or by the Company shall be equivalent to mailing.

If this Policy is canceled by the **ENTITY**, the Company shall retain the customary short rate proportion of the premium hereon. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended to be equal to the minimum period or limitation of such law.

(D) **ACTION AGAINST COMPANY:** No action shall lie against the Company unless, as a condition precedent thereto, the **INSURED(S)** shall have fully complied with all the terms and conditions of this policy. In the event of the bankruptcy or insolvency of the **ENTITY**, the Company shall not be relieved of the payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency.

(E) **SUBROGATION CLAUSE:** In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all rights of recovery therefore, and the **INSURED(S)** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **INSURED(S)**.

DES-J-1 (9-95)

(F) **CHANGES:** Notice to any agent or knowledge possessed by any agent or by an other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

(G) **AUTHORIZATION CLAUSE AND NOTICES:** By acceptance of this Policy, all **INSURED(S)** agree that the **ENTITY** shall act on behalf of all **INSURED(S)** with respect to the giving and receiving of notice of claim or cancellation, the payment of premiums, the reimbursement of the Retention, and the receiving of any return premiums that may become due under this Policy.

---

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT — BROAD FORM

---

It is agreed that:

I.   This Policy does not apply:

A.   To **LOSS**

    (1)   with respect to which an **INSURED** or **ENTITY** under this Policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or would be an insured under any such policy but for its termination upon its exhaustion of its limit of liability; or

    (2)   resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the **INSURED** or **ENTITY** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.   To expenses incurred with respect to **LOSS** resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and arising out of the operation of a **NUCLEAR FACILITY** by any person or organization.

C.   To **LOSS** resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL**, if

    (1)   the **NUCLEAR MATERIAL** (a) is at any **NUCLEAR FACILITY** owned by, or operated by or on behalf of, an **INSURED** or **ENTITY** or (b) has been discharged or dispersed therefrom;

    (2)   the **NUCLEAR MATERIAL** is contained in **SPENT FUEL** or **WASTE** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **INSURED** or **ENTITY**; or

    (3)   the **LOSS** arises out of the furnishing by an **INSURED** or **ENTITY** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **NUCLEAR FACILITY**.

II.   As used in this endorsement:

**HAZARDOUS PROPERTIES** include radioactive, toxic or explosive properties;

**NUCLEAR MATERIAL** means **SOURCE MATERIAL, SPECIAL NUCLEAR MATERIAL** or **BY-PRODUCT MATERIAL**;

**SOURCE MATERIAL, SPECIAL NUCLEAR MATERIAL** and **BY-PRODUCT MATERIAL** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**SPENT FUEL** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **NUCLEAR REACTOR**;

**WASTE** means any waste material (a) containing **BY-PRODUCT MATERIAL** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **SOURCE MATERIAL** content, and (b) resulting from the operation by any person or organization of any **NUCLEAR FACILITY** included under the first two paragraphs of the definition of **NUCLEAR FACILITY**;

**NUCLEAR FACILITY** means:

(a)  any **NUCLEAR REACTOR**,

(b)  any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing **SPENT FUEL**, or (3) handling, processing or packaging **WASTE**.

(c)  any equipment or device used for the processing, fabricating or alloying of **SPECIAL NUCLEAR MATERIAL** if at any time the total amount of such material in the custody of the **INSURED** or **ENTITY** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d)  any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **WASTE**, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**NUCLEAR REACTOR** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**IN WITNESS WHEREOF**, the Company has caused this Policy to be executed and attested.

Secretary

President

DES-J-1 (9-95)

# ADDENDUM

Some internal notes, or stamps, or typing on the declaration sheet may appear.  The Intended use for these is internal only and may not have been a part of the policy received by the insured.

Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.

**DIRECTORS AND OFFICERS LIABILITY
INCLUDING ENTITY REIMBURSEMENT
AND ENTITY LIABILITY POLICY**

NEW
_RENEWAL OF NUMBER_

## Scottsdale Insurance Company ®
8877 N. Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 (outside Arizona)
A STOCK COMPANY

**Policy Number**
**DES004753**

### DECLARATIONS

**ITEM 1. NAMED INSURED AND MAILING ADDRESS**

Lock Towns Community Mental Health
Center, Inc.

20201 N.W. 37TH Avenue

Miami, Florida 33055

**AGENT NAME AND ADDRESS**

J. J. Negley Associates, Inc.
P.O. Box 206
Cedar Grove, New Jersey 07009

Agent No. 295011

**ITEM 2. POLICY PERIOD**    From: 11/17/95    To: 11/17/96
at 12:01 A.M. Standard Time at the mailing address shown above.

ITEM 3. Retention: $ 1,000 Each LOSS and

ITEM 4. Limit of Liability each POLICY YEAR:    $ 2,000,000

ITEM 5. Premium:    $ 5,220

| | |
|---|---|
| SURPLUS LINES TAX | 262.25 |
| POLICY FEE | 25.00 |

ITEM 6. Notice of Claim shall be given to:

Scottsdale Insurance Company
P.O. Box 4120
Scottsdale, AZ, 85261-4120

ITEM 7. Policy Forms and Endorsements attached at inception:

| | | | | |
|---|---|---|---|---|
| DES-J-1(09/95) | DES-D-1(09/95) | DES-21-FL(06/93) | DES-2(10/92) | DES-3(09/95) |
| DES-34(12/93) | UTS-9g(05/92) | | | |

**THIS IS A CLAIMS MADE POLICY.  PLEASE READ IT CAREFULLY.**

COUNTERSIGNED    11/20/95    MK    BY
DATE    AUTHORIZED REPRESENTATIVE

HOME OFFICE COPY **THIS IS A TRUE AND CERTIFIED COPY**

DES-D-1 (9-95)

 **Scottsdale Insurance Company**®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| DES004753 | 11 | 17 | 95 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CANCELLATION AND NONRENEWAL - FLORIDA

It is agreed that section VII.GENERAL CONDITIONS (C) CANCELLATION is deleted in its entirety and is replaced by the following:

(C) CANCELLATION:

(1) This Policy may be cancelled by the ENTITY named in Item 1. of the Declarations by surrendering the Policy to the Company or any of its authorized agents, or by mailing to the Company advance written notice stating when thereafter the cancellation shall become effective.

(2) Cancellation of Policies in effect for ninety (90) days or less.

If this Policy has been in effect for ninety (90) days or less and is not a renewal, the Company may cancel this Policy by mailing or delivering to the ENTITY named in Item 1. of the Declarations written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

(b) Sixty (60) days before the effective date of cancellation if the Company cancels for any other reason, except the Company may cancel immediately if there has been:

(i) A material misstatement or misrepresentation; or

(ii) A failure to comply with underwriting requirements established by the Insurer.

(3) Cancellation of Policies in effect for more than ninety (90) days.

If this Policy has been in effect for more than ninety (90) days or this is a renewal or continuation of a Policy issued by the Company, the Company may cancel this Policy only for one or more of the following reasons:

(a) Nonpayment of premium;

(b) The Policy was obtained by a material misstatement;

(c) There has been a failure to comply with underwriting requirements established by the Company within ninety (90) days of the effective date of coverage;

(d) There has been a substantial change in the risk covered by the Policy; or

(e) The cancellation is for all Insureds under such Policies for a given class of Insureds.

If the company cancels this Policy for any of these reasons, the Company will mail or deliver to the ENTITY named in Item 1. of the Declarations written notice of cancellation, accompanied by the reasons for cancellation at least:

(i) Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

(ii) Sixty (60) days before the effective date of cancellation if the Company cancels for any of the reasons stated in (3) (b), (c), (d) or (e) above.

(4) The Company will give notice to the **ENTITY** named in Item 1. of the Declarations at the last mailing address known to the Company.

(5) Notice of cancellation will state the effective date of cancellation. The **POLICY YEAR** will end on that date.

(6) If this Policy is cancelled, the Company will send the **ENTITY** named in Item 1. of the Declarations any premium refund due. If the Company cancels, the refund will be pro rata. If the **ENTITY** named in Item 1. of the Declarations cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund.

(7) If notice is mailed, proof of mailing will be sufficient proof of notice.

The following **CONDITION** is added to the Policy and supersedes any other provision to the contrary:

(H) **NONRENEWAL:**

(1) If the Company decides not to renew this Policy, the Company will mail or deliver to the **ENTITY** named in Item 1. of the Declarations written notice of nonrenewal, accompanied by the reason or reasons for nonrenewal, at least forty-five (45) days prior to the expiration of this Policy.

(2) Any notice of nonrenewal will be mailed or delivered to the last mailing address of the **ENTITY** named in Item 1. of the Declarations known to the Company. If notice is mailed, proof of mailing will be sufficient proof of notice.

11/20/95

——————————————————————————————
AUTHORIZED REPRESENTATIVE            DATE

 **Scottsdale Insurance Company** ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12.01 | NOON | | |
| DES004753 | 11 | 17 | 95 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DIRECTORS AND OFFICERS LIABILITY
## INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY POLICY

## AMENDMENT OF DEFINITION OF INSURED ENDORSEMENT

It is hereby understood and agreed that III. DEFINITIONS, (C) INDIVIDUAL INSURED is amended to read as follows:

(C)    INDIVIDUAL INSURED means any individual who was, now is, or becomes a DIRECTOR or OFFICER of the ENTITY or of a covered SUBSIDIARY, whether salaried or not, unless specifically excluded.

INDIVIDUAL INSURED also means any individual who is not a DIRECTOR or OFFICER, but who serves the ENTITY in a capacity which is specifically designated hereunder. Any individual in a capacity so designated is afforded the same coverage under the policy as a DIRECTOR or OFFICER.

| | Individual | Title | Premium |
|---|---|---|---|
| 1. | - - - | Employees & Volunteers | Included |
| 2. | - - - | Executive Director | Included |
| 3. | | | |
| 4. | | | |
| 5. | | | |
| 6. | | | |
| 7. | | | |
| 8. | | | |
| 9. | | | |
| 10. | | | |

_____                 11/20/95
                    AUTHORIZED REPRESENTATIVE                         DATE

DES-2 (10-92)

 

# Scottsdale Insurance Company ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| DES004753 | 11 | 17 | 95 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREULLY.

## DIRECTORS AND OFFICERS LIABILITY
## INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY POLICY
## LIMITED RETROACTIVE ENDORSEMENT

In consideration of the premium shown on the Declarations, it is hereby agreed that section I. INSURING AGREEMENTS, coverage is deleted and replaced by the following:

I. INSURING AGREEMENTS

COVERAGE

A. The Company will pay on behalf of the **INDIVIDUAL INSURED(S)** and/or the **ENTITY**, in accordance with the terms, conditions and exclusions of the Policy, **LOSS** which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** shall become legally obligated to pay by reason of any claim or claims made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** as the result of a **WRONGFUL ACT**, provided always:

1. that the **WRONGFUL ACT** was committed by the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** on or after the Retroactive Date listed in (B) below and prior to the end of the **POLICY YEAR**; and

2. that the claim is first made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** during the **POLICY YEAR**.

(B) Retroactive Date:   11/17/95

11/20/95

_____
AUTHORIZED REPRESENTATIVE                    DATE

DES-3 (9-95)

 **Scottsdale Insurance Company**®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| DES004753 | 11 | 17 | 95 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## DIRECTORS AND OFFICERS LIABILITY
## INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY POLICY

### WRONGFUL TERMINATION, DISCRIMINATION AND SEXUAL HARASSMENT COVERAGE ENDORSEMENT

It is hereby understood and agreed that Section IV. EXCLUSIONS, (G) and (N) are deleted in their entirety and replaced with the following:

### IV.   EXCLUSIONS

The Company shall not be obligated to make any payment or defend any lawsuit in connection with any claim made against the INDIVIDUAL INSURED(S) and/or ENTITY:

(G)   based upon or attributable to bodily injury, mental anguish, emotional distress, sickness, disease, or death of any person, or to damages to or destruction of any tangible property including the loss of use thereof; however, this exclusion as to mental anguish and emotional distress only, does not apply to any claim brought against an INDIVIDUAL INSURED or the ENTITY by a current , former or pro-spective employee, officer, director or volunteer for wrongful termination, discrim-ination or sexual harassment.

(N)   for any claim brought by any INDIVIDUAL INSURED(S) or the ENTITY against any other INDIVIDUAL INSURED(S) or the ENTITY; however, this exclusion does not apply to any claim brought by an INDIVIDUAL INSURED for wrongful termination, discrimination or sexual harassment; or

DES-34 (12-93)

_____
AUTHORIZED REPRESENTATIVE

 

# Scottsdale Insurance Company®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12.01 | NOON | | |
| | | | | A.M. | | | J. J. Negley |
| DES004753 | 11 | 17 | 95 | X | | Lock Towns Community Mental Health Center, Inc. | Assoc., Inc. 295011 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company/or Underwriters to pay any amount claimed to be due under this policy, the Company/or Underwriters at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court.

It is further agreed that service of process in such suit may be made upon

Insurance Commissioner of Florida
200 East Gaines
Tallahassee, Florida 32301

and that in any suit instituted against any one of them under this contract, the Company/or Underwriters agree to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company/or Underwriters in any such suit and/or upon the request of the Insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that it or they will enter a general appearance upon the Company's/or Underwriter's behalf in the event a suit is instituted.

Pursuant to any statute of any state, territory or district of the United States of America, which makes a provision, the Company/or Underwriters will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance). The above named is designated as the person to whom the officer is authorized to mail the process or a true copy.

_____    11/20/95
AUTHORIZED REPRESENTATIVE            DATE

UTS-9g (5-92)

# Exhibit I



**SCOTTSDALE INSURANCE COMPANY®**

Home Office:
One Nationwide Plaza • Columbus, Ohio 43215

Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258

A STOCK COMPANY

# Directors and Officers Liability Including Entity Reimbursement and Entity Liability Policy

## THIS IS A CLAIMS MADE POLICY.
## PLEASE READ IT CAREFULLY.

DES-J-1 (1-96)

DES-J-1 (1-96)

# DIRECTORS AND OFFICERS LIABILITY INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY POLICY

 SCOTTSDALE INSURANCE COMPANY®

Scottsdale, Arizona

(A Stock Insurance Company, herein called the Company)

**THIS IS A CLAIMS MADE POLICY. READ THIS POLICY CAREFULLY.**

In consideration of the payment of the premium and subject to all of the terms, conditions and exclusions of this Policy, the Company agrees with the **INDIVIDUAL INSURED(S)** and the **ENTITY** as follows:

## I. INSURING AGREEMENTS

### COVERAGE

The Company will pay on behalf of the **INDIVIDUAL INSURED(S)** and/or the **ENTITY**, in accordance with the terms, conditions and exclusions of the Policy, **LOSS** which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** shall become legally obligated to pay by reason of any claim or claims made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** as the result of a **WRONGFUL ACT**, provided that always that the claim is first made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** during the **POLICY YEAR.**

### DEFENSE

(A) In addition to the Limit of Liability, the Company shall pay all applicable **LOSS ADJUSTMENT EXPENSE.**

(B) The Company shall have the right and duty to defend, any claim or suit against any **INSURED** seeking damages which are payable under the terms of this policy, even if any of the allegations of the claim or suit are groundless, false or fraudulent. The Company shall have the right to make investigation, negotiation and settlement of any such claim.

(C) No **LOSS ADJUSTMENT EXPENSE** shall be incurred nor settlements made without the Company's consent. The Company shall not be liable hereunder with respect to any settlements or **LOSS ADJUSTMENT EXPENSE** to which it has not consented.

(D) The Company shall not be obligated to pay any **LOSS** or judgment or **LOSS ADJUSTMENT EXPENSE** or to defend or to continue to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of **LOSS.**

## II. EXTENSIONS

(A) This Policy, subject otherwise to the terms hereof, shall cover all **LOSS** and **LOSS ADJUSTMENT EXPENSE** arising from claims made against the estates, heirs, legal representatives or assigns of deceased persons who were **INDIVIDUAL INSURED(S)** at the time of the **WRONGFUL ACT** upon which such claims are based.

(B) This Policy shall automatically cover any **SUBSIDIARY** and the **INDIVIDUAL INSURED(S)** of those **SUBSIDIARIES** acquired or created after the inception of this Policy subject to written notice being given to the Company within thirty (30) days of the acquisition or creation of any **SUBSIDIARY.**

DES-J-1 (1-96)

## III. DEFINITIONS

Whenever used in this Policy, these words shall have the following meanings:

(A) **DIRECTOR** means any individual who was, now is, or becomes a member of the Board of Directors of the **ENTITY** in accordance with the provisions of the Articles of Incorporation or Bylaws of the **ENTITY**.

(B) **ENTITY** means the organization named in Item 1. of the Declarations and any covered **SUBSIDIARY** shown on the application.

(C) **INDIVIDUAL INSURED** means any individual who was, now is, or becomes a **DIRECTOR, OFFICER,** trustee, employee, volunteer or committee member of the **ENTITY** or of a covered **SUBSIDIARY,** whether salaried or not, unless specifically excluded.

(D) **INSURED** means the **ENTITY** and any **INDIVIDUAL INSURED(S)**.

(E) **LOSS** means any amount which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** are legally obligated to pay for any claim or claims made against them for **WRONGFUL ACTS,** and shall include but not be limited to judgments and settlements, provided always, however, such subject of **LOSS** shall not include fines or penalties imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. **LOSS** does not include **LOSS ADJUSTMENT EXPENSE.**

(F) **LOSS ADJUSTMENT EXPENSE** means expenditures including, but not limited to, investigations, experts, adjustment services, legal services, court costs, and such other costs to the Company. **LOSS ADJUSTMENT EXPENSE** also means premium on appeal bonds required in any suit defended by the Company and the cost of attachment or similar bonds. **LOSS ADJUSTMENT EXPENSE** shall not include salaries, wages, overhead or benefit expenses associated with **DIRECTORS, OFFICERS,** trustees, employees, volunteers or committee members of the **ENTITY.**

(G) **OFFICER** means any individual who has, now does, or hereafter occupies a position specifically defined or described in the Bylaws as an **OFFICER** of the **ENTITY,** and has been, or hereafter is elected to such position by the Board of Directors of the **ENTITY** in accordance with provisions of the Bylaws.

(H) **POLICY YEAR** means the period of one year following the effective date and hour of this Policy, or if the time between the effective date and the termination of the Policy is less than one year, such lesser period.

(I) **SUBSIDIARY** means:

(1) any company in which more than 50% of the ownership is controlled by the **ENTITY;** or

(2) any organization whose board is controlled by the **ENTITY.**

(J) **WRONGFUL ACT** means any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by one or more of the **INSURED(S)** while acting within the scope of their individual or collective capacities, subject to the terms, conditions and limitations of this Policy.

## IV. EXCLUSIONS

The Company shall not be obligated to make any payment or defend any lawsuit in connection with any **CLAIM** made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY:**

(A) for:

(1) false arrest, detention or imprisonment, or malicious prosecution;

(2) the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy;

(3) wrongful entry or eviction, or other invasion of the right of private occupancy;

DES-J-1 (1-96)

(B) based upon or attributable to the **INSURED(S)** gaining any personal profit or advantage to which they were not legally entitled;

(C) for claims for the return of remuneration illegally paid to the **INSURED(S)**;

(D) for an accounting of profits made from the purchase or sale by the **INSURED(S)** of securities of the **ENTITY** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law or common law;

(E) based upon or attributable to the **INSURED(S)** having acted dishonestly, fraudulently, or in bad faith with knowledge or with reasonable cause to believe that such action was in violation of the law;

(F) which is insured by another valid policy or policies;

(G) based upon or attributable to bodily injury, mental anguish, emotional distress, sickness, disease, or death of any person, or to damages to or destruction of any tangible property including losses of use thereof; however, this exclusion as to mental anguish and emotional distress only does not apply to any claim brought against an **INDIVIDUAL INSURED** or the **ENTITY** by a current, former or prospective employee, **OFFICER, DIRECTOR** or volunteer for wrongful termination, discrimination or sexual harassment.

(H) based upon the rendering of or failure to render any professional services;

(I) for claims, demands, or actions seeking relief or redress in any form other than compensatory damages, or for any fees, costs or expenses which the **INSURED(S)** may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief; however, the Company will afford defense to the **INSURED(S)** for such actions, claims, suits or demands in which compensatory damages are requested if not otherwise excluded;

(J) for any **LOSS**, cost or expense arising out of any governmental direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants. Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, asbestos, alkalis, chemicals and waste. Waste includes,

but is not limited to, materials to be recycled, reconditioned or reclaimed;

(K) based upon the Employee Retirement Income Security Act of 1974, public law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto, or similar provisions of any federal, state or local statutory law or common law;

(L) based upon or attributable to any anti-trust actions or suits;

(M) based upon or attributable to any failure or omission on the part of any **INSURED** to effect and maintain insurance of any kind;

(N) for any **CLAIM** brought by any **INDIVIDUAL INSURED(S)** or the **ENTITY** against any other **INDIVIDUAL INSURED(S)** or the **ENTITY**; however, this exclusion does not apply to any claim brought by an **INDIVIDUAL INSURED** for wrongful termination, discrimination, sexual harassment, or

(O) arising from any litigation pending or filed prior to the inception date of this Policy or any future claims or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

## V. LIMIT OF LIABILITY AND RETENTION

(A) The Company shall be liable to pay **LOSS** in excess of the Retention amount, if any, stated in Item 3. of the Declarations, up to the amount stated in Item 4. of the Declarations. This amount shall be the Company's maximum Limit of Liability for **LOSS** for each **POLICY YEAR**.

(B) Losses based on or arising out of the same act or interrelated acts of one or more **INSURED(S)** shall be considered a single claim and only one Retention shall apply. All such claims shall be considered first made on the date on which the earliest claim arising out of such act or interrelated acts was first made against the **INSURED(S)**.

DES-J-1 (1-96)

(C) The Retention, if any, shall remain uninsured. It shall be applied first against **LOSS ADJUSTMENT EXPENSE** and, if not exhausted, against **LOSS** payments.

(D) The Company may pay all or any part of the Retention amount to effect settlement of any claim. Upon demand, the **INSURED(S)** shall promptly reimburse the Company for such amount of the Retention that the Company has paid.

(E) The Company's obligation to pay **LOSS ADJUSTMENT EXPENSE** shall not reduce the Loss Limit of Liability.

(F) **IN NO EVENT SHALL THE COMPANY'S MAXIMUM LIMIT OF LIABILITY BE INCREASED BY AN EXTENDED REPORTING PERIOD.**

## VI. NOTICE OF CLAIM AND LOSS PROVISIONS

(A) If, during the **POLICY YEAR** or the Extended Reporting Periods, the **INSURED(S)** shall receive written or oral notice from any party that it is the intention of such party to hold the **INSURED(S)** responsible for any **WRONGFUL ACT(S)**, the **INSURED(S)** shall give written notice to the Company of the receipt of such written or oral notice as soon as practicable. At that time, any claims made against the **INSURED(S)** arising out of such **WRONGFUL ACT(S)** shall, for the purpose of this policy, be treated as claims made during the **POLICY YEAR** in which such notice was given, or, if given during the Extended Reporting Periods, as a claim made during the last **POLICY YEAR**.

(B) The **INSURED(S)** shall give written notice to the Company as soon as practicable of any claim made against the **INSURED(S)** or of any specific circumstances involved which may result in a claim. The notice shall identify the **INDIVIDUAL INSURED(S)** and the **ENTITY** and contain reasonably obtainable information with respect to the time, place and circumstances of the claim including the names and addresses of those involved and of available witnesses and the extent of the type of claim anticipated. If a claim is made or suit is brought against the **INDIVIDUAL INSURED(S)** or the **ENTITY**, every demand, notice, summons or other process received by the **INDIVIDUAL INSURED(S)** or the **ENTITY** or the **INDIVIDUAL INSURED(S)'** or **ENTITY'S** representatives shall immediately be forwarded to the Company.

(C) The **INSURED(S)** shall cooperate with the Company and, upon the Company's request, assist in making settlements in the conduct of suit and in the enforcement of any right of contribution or indemnity against any person or organization who may be liable.

## VII. GENERAL CONDITIONS

(A) **APPLICATION:** In issuing this Policy, the Company has relied on the declarations and statements which are contained in the application form and which are deemed to be incorporated in this Policy; provided, however, that, except for material facts or circumstances known to the person who subscribed the proposal form, any misstatement or omission in such proposal form in respect of a specified **WRONGFUL ACT** by a particular **INDIVIDUAL INSURED(S)**, his cognizance of any matter which that person has reason to suppose might afford grounds for a future claim against him, shall not be imputed to any other **INDIVIDUAL INSURED(S)** for purposes of determining the availability of coverage under this Policy.

(B) **EXTENDED REPORTING PERIOD(S):**

   (1) One or more Extended Reporting Periods, as described below, will be provided:

   (a) if this Policy is canceled or nonrenewed for other than nonpayment of premium; or

   (b) if the Company renews or replaces coverage with insurance that is other than a claims made form.

   (2) The "Basic Extended Reporting Period" is automatically provided without additional charge. This period starts with the end of the **POLICY YEAR** and lasts for sixty (60) days. The "Basic Extended Reporting Period" does not apply to claims covered under any Director(s) and Officer(s) or Trustee(s) Liability Policy.

DES-J-1 (1-96)

(3) In addition, up to three (3) "Supplemental Extended Reporting Periods" of twelve (12) months each are available, but only if added by endorsement and for an additional premium charge. The first period starts sixty (60) days after the end of the **POLICY YEAR**.

(4) The **ENTITY**, subject to the terms and conditions set forth herein, shall have the right to select that period to which the "Supplemental Extended Reporting Period" shall apply, which in no event shall exceed thirty-six (36) months immediately upon such cancellation or refusal to renew. An additional premium is immediately due in an amount equal to fifty percent (50%) of the premium previously charged by the Company for each year for which the **INSURED(S)** elects to have the "Supplemental Extended Reporting Period" rendered applicable. Once in effect, Supplemental Extended Reporting Periods may not be canceled.

(5) The right of extension shall terminate unless written notice is given to the Company not later than thirty (30) days after the effective date of cancellation or nonrenewal.

(6) The Extended Reporting Periods do extend the **POLICY YEAR** or change the scope of coverage provided. Subject otherwise to the Policy's terms, Limit of Liability, Exclusions and Conditions, the Policy is extended to apply to claims first made during the "Basic Extended Reporting Period" or, if purchased, the "Supplemental Extended Reporting Period," but only by reason of any **WRONGFUL ACT** committed prior to the end of the **POLICY YEAR**.

(7) **EXTENDED REPORTING PERIODS DO NOT REINSTATE OR INCREASE THE LIMITS OF LIABILITY OF THE POLICY.** Claims for **WRONGFUL ACTS** which are first received during an Extended Reporting Period shall be deemed to have been made on the last day of the **POLICY YEAR**.

(C) **CANCELLATION:** This policy may be canceled by the **ENTITY** by surrendering the policy to the Company or any of its authorized agents, or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be canceled by the Company by mailing to the **ENTITY** at the address shown in this Policy, written notice stating when, not less than ten (10) days for nonpayment of premium, or sixty (60) days for any other valid reason, such cancellation shall be effective. The mailing of notice shall be sufficient proof of notice. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **POLICY YEAR**. Delivery of such written notice either by the **ENTITY** or by the Company shall be equivalent to mailing.

If this Policy is canceled by the **ENTITY**, the Company shall retain the customary short rate proportion of the premium hereon. Payment or tender of any unearned premium by the Company shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable. If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended to be equal to the minimum period or limitation of such law.

(D) **ACTION AGAINST COMPANY:** No action shall lie against the Company unless, as a condition precedent thereto, the **INSURED(S)** shall have fully complied with all the terms and conditions of this policy. In the event of the bankruptcy or insolvency of the **ENTITY**, the Company shall not be relieved of the payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency.

(E) **SUBROGATION CLAUSE:** In the event of any payment under this Policy, the Company shall be subrogated to the extent of such payment to all rights of recovery therefore, and the **INSURED(S)** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **INSURED(S)**.

DES-J-1 (1-96)

(F) **CHANGES:** Notice to any agent or knowledge possessed by any agent or by another person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any right under the terms of this Policy, nor shall the terms of this Policy be waived or changed, except by endorsement issued to form a part of this Policy.

(G) **AUTHORIZATION CLAUSE AND NOTICES:** By acceptance of this Policy, all **INSURED(S)** agree that the **ENTITY** shall act on behalf of all **INSURED(S)** with respect to the giving and receiving of notice of claim or cancellation, the payment of premiums, the reimbursement of the Retention, and the receiving of any return premiums that may become due under this Policy.

## NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT—BROAD FORM

It is agreed that:

I.   This Policy does not apply:

A.   To **LOSS**

(1) with respect to which an **INSURED** or **ENTITY** under this Policy is also an insured under a nuclear energy liability policy issued by the Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or would be an insured under any such policy but for its termination upon its exhaustion of its limit of liability; or

(2) resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and with respect to which: (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or (b) the **INSURED** or **ENTITY** is, or had this Policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B.   To expenses incurred with respect to **LOSS** resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL** and arising out of the operation of a **NUCLEAR FACILITY** by any person or organization.

C.   To **LOSS** resulting from the **HAZARDOUS PROPERTIES** of **NUCLEAR MATERIAL**, if:

(1) the **NUCLEAR MATERIAL**: (a) is at any **NUCLEAR FACILITY** owned by, or operated by or on behalf of, an **INSURED** or **ENTITY**; or (b) has been discharged or dispersed therefrom;

(2) the **NUCLEAR MATERIAL** is contained in **SPENT FUEL** or **WASTE** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **INSURED** or **ENTITY**; or

(3) the **LOSS** arises out of the furnishing by an **INSURED** or **ENTITY** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **NUCLEAR FACILITY**.

II.   As used in this endorsement:

**HAZARDOUS PROPERTIES** include radioactive, toxic or explosive properties;

**NUCLEAR MATERIAL** means **SOURCE MATERIAL**, **SPECIAL NUCLEAR MATERIAL** or **BY-PRODUCT MATERIAL**;

**SOURCE MATERIAL, SPECIAL NUCLEAR MATERIAL** and **BY-PRODUCT MATERIAL** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

**SPENT FUEL** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a **NUCLEAR REACTOR**;

DES-J-1 (1-96)

**WASTE** means any waste material: (a) containing **BY-PRODUCT MATERIAL** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **SOURCE MATERIAL** content; and (b) resulting from the operation by any person or organization of any **NUCLEAR FACILITY** included under the first two paragraphs of the definition of **NUCLEAR FACILITY**;

**NUCLEAR FACILITY** means:

(a) any **NUCLEAR REACTOR**,

(b) any equipment or device designed or used for: (1) separating the isotopes of uranium or plutonium; (2) processing or utilizing **SPENT FUEL**; or (3) handling, processing or packaging **WASTE**.

(c) any equipment or device used for the processing, fabricating or alloying of **SPECIAL NUCLEAR MATERIAL** if at any time the total amount of such

material in the custody of the **INSURED** or **ENTITY** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

(d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **WASTE**, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**NUCLEAR REACTOR** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

**IN WITNESS WHEREOF**, the Company has caused this Policy to be executed and attested.

Secretary

President

DES-J-1 (1-96)

## ADDENDUM

Some internal notes, or stamps, or typing on the declaration sheet may appear. The Intended use for these is internal only and may not have been a part of the policy received by the insured.

Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.

DES004753
RENEWAL OF NUMBER

**DIRECTORS AND OFFICERS LIABILITY INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY POLICY**

**Scottsdale Insurance Company**
8877 N. Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 (outside Arizona)
A STOCK COMPANY

Policy Number
**DES005818**

## DECLARATIONS

| ITEM 1. NAMED INSURED AND MAILING ADDRESS | AGENT NAME AND ADDRESS |
|---|---|
| Lock Towns Community Mental Health Center, Inc.<br>20201 N.W. 37TH Avenue<br>Miami, Florida 33055   R/B CPS000607 | J. J. Negley Associates, Inc.<br>P.O. Box 206<br>Cedar Grove, New Jersey 07009<br>Agent No. 295011 |

| ITEM 2. POLICY PERIOD | From: 11/17/96 | To: 11/17/97 |
|---|---|---|

at 12:01 A.M. Standard Time at the mailing address shown above.

ITEM 3. Retention: $ 1,000   Each LOSS and LOSS ADJUSTMENT EXPENSE.

ITEM 4. Limit of Liability each POLICY YEAR:                     $ 2,000,000

ITEM 5. Premium:                     $ 5,429

SURPLUS LINES TAX     272.70

POLICY FEE     25.00

ITEM 6. Notice of Claim shall be given to:

Scottsdale Insurance Company
P.O. Box 4120
Scottsdale, AZ, 85261-4120

ITEM 7. Policy Forms and Endorsements attached at inception:
DES-J-1(01/96)     DES-D-1(09/95)     DES-21-FL(06/93)     DES-3(09/95)     UTS-9g(05/92)
DES-43(08/96)

**THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.**

COUNTERSIGNED     12/10/96     TLR     BY _____
DATE                            AUTHORIZED REPRESENTATIVE
OES-D-1 (9-95)                  HOME OFFICE COPY

 **Scottsdale Insurance Company**®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| DES005818 | 11 | 17 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CANCELLATION AND NONRENEWAL - FLORIDA

It is agreed that section **VII.GENERAL CONDITIONS (C) CANCELLATION** is deleted in its entirety and is replaced by the following:

**(C) CANCELLATION:**

(1) This Policy may be cancelled by the **ENTITY** named in Item 1. of the Declarations by surrendering the Policy to the Company or any of its authorized agents, or by mailing to the Company advance written notice stating when thereafter the cancellation shall become effective.

(2) **Cancellation of Policies in effect for ninety (90) days or less.**

If this Policy has been in effect for ninety (90) days or less and is not a renewal, the Company may cancel this Policy by mailing or delivering to the **ENTITY** named in Item 1. of the Declarations written notice of cancellation, accompanied by the reasons for cancellation, at least:

(a) Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

(b) Sixty (60) days before the effective date of cancellation if the Company cancels for any other reason, except the Company may cancel immediately if there has been:

(i) A material misstatement or misrepresentation; or

(ii) A failure to comply with underwriting requirements established by the insurer.

(3) **Cancellation of Policies in effect for more than ninety (90) days.**

If this Policy has been in effect for more than ninety (90) days or this is a renewal or continuation of a Policy issued by the Company, the Company may cancel this Policy only for one or more of the following reasons:

(a) Nonpayment of premium;

(b) The Policy was obtained by a material misstatement;

(c) There has been a failure to comply with underwriting requirements established by the Company within ninety (90) days of the effective date of coverage;

(d) There has been a substantial change in the risk covered by the Policy; or

(e) The cancellation is for all insureds under such Policies for a given class of insureds.

If the company cancels this Policy for any of these reasons, the Company will mail or deliver to the **ENTITY** named in Item 1. of the Declarations written notice of cancellation, accompanied by the reasons for cancellation at least:

(i) Ten (10) days before the effective date of cancellation if the Company cancels for nonpayment of premium; or

(ii) Sixty (60) days before the effective date of cancellation if the Company cancels for any of the reasons stated in (3) (b), (c), (d) or (e) above.

DES-21-FL (6-93)                Page 1 of 2

(4) The Company will give notice to the **ENTITY** named in Item 1. of the Declarations at the last mailing address known to the Company.

(5) Notice of cancellation will state the effective date of cancellation. The **POLICY YEAR** will end on that date.

(6) If this Policy is cancelled, the Company will send the **ENTITY** named in Item 1. of the Declarations any premium refund due. If the Company cancels, the refund will be pro rata. If the **ENTITY** named in Item 1. of the Declarations cancels, the refund may be less than pro rata. The cancellation will be effective even if the Company has not made or offered a refund.

(7) If notice is mailed, proof of mailing will be sufficient proof of notice.

The following **CONDITION** is added to the Policy and supersedes any other provision to the contrary:

(H) **NONRENEWAL:**

(1) If the Company decides not to renew this Policy, the Company will mail or deliver to the **ENTITY** named in Item 1. of the Declarations written notice of nonrenewal, accompanied by the reason or reasons for nonrenewal, at least forty-five (45) days prior to the expiration of this Policy.

(2) Any notice of nonrenewal will be mailed or delivered to the last mailing address of the **ENTITY** named in Item 1. of the Declarations known to the Company. If notice is mailed, proof of mailing will be sufficient proof of notice.

12/10/96

AUTHORIZED REPRESENTATIVE     DATE

 **Scottsdale Insurance Company**®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| DES005818 | 11 | 17 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREULLY.

## DIRECTORS AND OFFICERS LIABILITY
## INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY POLICY
## LIMITED RETROACTIVE ENDORSEMENT

In consideration of the premium shown on the Declarations, it is hereby agreed that section I. INSURING AGREEMENTS, coverage is deleted and replaced by the following:

I.  INSURING AGREEMENTS

COVERAGE

A. The Company will pay on behalf of the **INDIVIDUAL INSURED(S)** and/or the **ENTITY**, in accordance with the terms, conditions and exclusions of the Policy, **LOSS** which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** shall become legally obligated to pay by reason of any claim or claims made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** as the result of a **WRONGFUL ACT**, provided always:

1.  that the **WRONGFUL ACT** was committed by the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** on or after the Retroactive Date listed in (B) below and prior to the end of the **POLICY YEAR**; and

2.  that the claim is first made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** during the **POLICY YEAR**.

(B) Retroactive Date:    11/17/95

_____     12/10/96
AUTHORIZED REPRESENTATIVE                              DATE

DES-3 (9-95)

 **Scottsdale Insurance Company®**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| DES005818 | 11 | 17 | 96 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company/or Underwriters to pay any amount claimed to be due under this policy, the Company/or Underwriters at the request of the insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court.

It is further agreed that service of process in such suit may be made upon

Insurance Commissioner of Florida
200 East Gaines
Tallahassee, Florida 32301

and that in any suit instituted against any one of them under this contract, the Company/or Underwriters agree to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company/or Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that it or they will enter a general appearance upon the Company's/or Underwriter's behalf in the event a suit is instituted.

Pursuant to any statute of any state, territory or district of the United States of America, which makes a provision, the Company/or Underwriters will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance). The above named is designated as the person to whom the officer is authorized to mail the process or a true copy.

|  | 12/10/96 |
|---|---|
| AUTHORIZED REPRESENTATIVE | DATE |

UTS-9g (5-92)

 **Scottsdale Iurance Company** °

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| DES005818 | 11 | 17 | 96 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295011 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF DEFINITION OF INDIVIDUAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS LIABILITY INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY

Section III. DEFINITIONS, (C) INDIVIDUAL INSURED is deleted in its entirety and is replaced by the following:

(C) INDIVIDUAL INSURED means any individual who was, now is, or becomes a DIRECTOR, OFFICER, trustee, employee, volunteer or committee member of the ENTITY or of a covered SUBSIDIARY, whether salaried or not, unless specifically excluded.

INDIVIDUAL INSURED also means the lawful spouse of a DIRECTOR or OFFICER of the ENTITY. Such spouse shall be an INDIVIDUAL INSURED only for actual or alleged WRONGFUL ACTS of the DIRECTOR or OFFICER for which they may be deemed liable as their spouse.

DES-43 (8-96)

_____
AUTHORIZED REPRESENTATIVE

**Exhibit J**



SCOTTSDALE INSURANCE COMPANY®

Home Office:
One Nationwide Plaza • Columbus, Ohio 43215

Administrative Office:
8877 North Gainey Center Drive • Scottsdale, Arizona 85258

A STOCK COMPANY

# Commercial Lines Policy

THIS POLICY CONSISTS OF: DECLARATION, COMMON POLICY CONDITIONS, ONE OR MORE COVERAGE PARTS. A COVERAGE PART CONSISTS OF: ONE OR MORE COVERAGE FORMS, APPLICABLE FORMS AND ENDORSEMENTS.

CLS-J-2 (11-95)

In Witness Whereof, the Company has caused this policy to be executed and attested.

Secretary                                    President

CLS-J-2 (11-95)

# ADDENDUM

Some internal notes, or stamps, or typing on the declaration sheet may appear.  The Intended use for these is internal only and may not have been a part of the policy received by the insured.

Policy fees, or Inspections Fees, or Taxes, or addition Instructional stamps may have appeared on the policy received by the insured, but may not appear on this copy.

RENEWAL OF NUMBER
*CLS207074*
*DES005818*
NEW
*CLS322578*
*CFS095115*

POLICY NUMBER

**Scottsdale Insurance Company**®

8877 North Gainey Center Drive, Scottsdale, Arizona 85258
1-800-423-7675 or in AZ 1-800-225-9458
A STOCK COMPANY

OPS000607

CLAIM

## COMMON POLICY DECLARATIONS

**Item 1. Named Insured and Mailing Address:**

Lock Towns Community Mental Health Center, Inc.
20201 N.W. 37TH Avenue
Miami, Florida 33056

**Agent Name and Address:**

J. J. Negley Associates, Inc.
P.O. Box 206
Cedar Grove, New Jersey 07009

Agent No: _____ 295018

| Item 2. Policy Period | From: 07/01/97 | To: 07/01/98 | Term: Annual |
|---|---|---|---|

12:01 A.M. Standard Time at your mailing address.

Business Description: Mental Health Center

SJMHA

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy. This policy consists of the following coverage parts for which a premium is indicated. Where no premium is shown, there is no coverage. This premium may be subject to adjustment.

| Coverage Part(s) | | Premium |
|---|---|---|
| Commercial General Liability Coverage Part | $ | Included |
| Commercial Property Coverage Part | $ | Included |
| Commercial Crime Coverage Part | $ | Not Covered |
| Commercial Inland Marine Coverage Part | $ | Not Covered |
| Commercial Auto (Business Auto or Truckers) Coverage Part | $ | Not Covered |
| Commercial Garage Coverage Part | $ | Not Covered |
| Professional Liability Coverage Part | $ | Included |
| | $ | Not Covered |
| | $ | Not Covered |
| Total Policy Premium | $ | 69,904.00 |

This policy has one or more coverage parts that are issued on a Claims Made basis. Please read it carefully.

SURPLUS LINES TAX 3,496.45
POLICY FEE 25.00

Forms(s) and Endorsement(s) made a part of this policy at time of issue:

**See Schedule of Forms and Endorsements**

Countersigned: _____07/21/97_____ MK       By: _____

Date                                    Authorized Representative

THIS IS A TRUE AND CERTIFIED COPY

HOME OFFICE COPY

OPS-D-1 (8-96)

THIS COMMON POLICY DECLARATIONS AND THE SUPPLEMENTAL DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE PART(S), COVERAGE FORM(S) AND ENDORSEMENTS, IF ANY, COMPLETE THE ABOVE NUMBERED POLICY.

 **Scottsdale Insurance Company** ®

**SCHEDULE OF FORMS AND ENDORSEMENTS**

Policy No. BPS000607 _____    Effective Date: 07  01  97 _____

Named Insured: Lock Towns Community Mental _____    Agent No. 295018 _____

Health Center, Inc. _____

| | | | | |
|---|---|---|---|---|
| CLS-J-2(11/95) | OPS-D-1(08/96) | CLS-SD-8(07/96) | CG0001(01/96) | CLS-SD-1(02/92) |
| CG2021(10/93) | CG2116(11/85) | CG2147(10/93) | CG2149(10/93) | CLS-PRO-1(10/94) |
| CG2018(11/85) | CG2028(11/85) | GLS-127s(06/94) | CLS-62s-FL(06/93) | CLS-18(04/91) |
| CLS-77s(03/95) | CLS-75s(11/94) | UTS-9g(05/92) | IL0021(11/94) | IL0017(11/85) |
| CFSNEG-P-1(10/96) | CFSNEG-P-2(10/96) | CFSNEGSD-1(10/96) | UTS-SP-2(12/95) | Endt #1 thru 4, 5, 6, |

CP1054069S

UTS-SP-2 (12-95)

**Scottsdale Insurance Company**
## PROFESSIONAL LIABILITY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS
### THIS IS A CLAIMS MADE COVERAGE PART.  PLEASE READ IT CAREFULLY.

These Supplemental Declarations form a part of policy number  OPS000607

| RETROACTIVE DATE | 04/16/85 |
|---|---|
| | Enter date or "None" if no Retroactive Date applies. |

**LIMITS OF INSURANCE**

| | |
|---|---|
| Aggregate Limit | $  2,000,000 |
| Each Claim  Limit | $  1,000,000 |

**BUSINESS DESCRIPTION**

Form of business:

☐ Individual   ☐ Joint Venture    ☐ Partnership    ☒ Organization (Other than Partnership or Joint Venture)

Business description:
Mental Health Center

**PREMIUM**

| Classification | Code No. | *Premium Basis | Rate | Advance Premium |
|---|---|---|---|---|
| Mental Health Center | | | | Included |

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)**

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

This Supplemental Declarations and the Commercial Liability Declarations, together with the common policy conditions, coverage form(s) and endorsements complete the above numbered policy.

CLS-SD-8 (7-96)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under WHO IS AN INSURED (SECTION II).

Other words and phrases that appear in quotation marks have special meaning. Refer to DEFINITIONS (SECTION V).

## SECTION I – COVERAGES

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

     **(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

     **(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

   **b.** This insurance applies to "bodily injury" and "property damage" only if:

     **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

     **(2)** The "bodily injury" or "property damage" occurs during the policy period.

   **c.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

**2. Exclusions**

This insurance does not apply to:

   **a. Expected or Intended Injury**

   "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

   **b. Contractual Liability**

   "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

     **(1)** That the insured would have in the absence of the contract or agreement; or

     **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

       **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

    Copyright, Insurance Services Office, Inc., 1994      ☐

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers Compensation and Similar Laws**

Any obligation of the insured under a workers compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

   **(a)** Employment by the insured; or

   **(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:

   **(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

   **(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   **(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

   **(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

      **(i)** If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

      **(ii)** If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

   Subparagraph **(d)(i)** does not apply to "bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the fuels, lubricants or other operating fluids are intentionally discharged, dispersed or released, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent to be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor.

---

 Copyright, Insurance Services Office, Inc., 1994 **CG 00 01 01 96**   ☐

Subparagraphs (a) and (d)(i) do not apply to "bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

(a) Less than 26 feet long; and

(b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in paragraph f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. **War**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution. This exclusion applies only to liability assumed under a contract or agreement.

j. **Damage to Property**

"Property damage" to:

(1) Property you own, rent, or occupy;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

 Copyright, Insurance Services Office, Inc., 1994

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall of Products, Work or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in LIMITS OF INSURANCE (Section **III**).

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

**(1)** The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION **III**); and

**(2)** Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS – COVERAGES A AND B.

**b.** This insurance applies to:

**(1)** "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

**(2)** "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;

but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a.** "Personal injury" or "advertising injury":

**(1)** Arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity;

---

       Copyright, Insurance Services Office, Inc., 1994         □

(2) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured;

(4) For which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement; or

(5) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

b. "Advertising injury" arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An offense committed by an insured whose business is advertising, broadcasting, publishing or telecasting.

c. Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## COVERAGE C. MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. To any insured.

b. To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. To a person injured on that part of premises you own or rent that the person normally occupies.

d. To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers compensation or disability benefits law or a similar law.

e. To a person injured while taking part in athletics.

f. Included within the "products-completed operations hazard".

g. Excluded under Coverage A.

h. Due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion or revolution.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

1. All expenses we incur.

2. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

3. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

5. All costs taxed against the insured in the "suit".

6. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

7. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

   (1) Agrees in writing to:

      (a) Cooperate with us in the investigation, settlement or defense of the "suit";

      (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

      (c) Notify any other insurer whose coverage is available to the indemnitee; and

      (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

   (2) Provides us with written authorization to:

      (a) Obtain records and other information related to the "suit"; and

      (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of paragraph 2.b.(2) of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section I – Coverages), such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

                    Copyright, Insurance Services Office, Inc., 1994                    CG 00 01 01 96   □

## SECTION II – WHO IS AN INSURED

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

2. Each of the following is also an insured:

   a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

      (1) "Bodily injury" or "personal injury":

         (a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

         (b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of paragraph (1)(a) above;

         (c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs (1)(a) or (b) above; or

         (d) Arising out of his or her providing or failing to provide professional health care services.

      (2) "Property damage" to property:

         (a) Owned, occupied or used by,

         (b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

         you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

   b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

   c. Any person or organization having proper temporary custody of your property if you die, but only:

      (1) With respect to liability arising out of the maintenance or use of that property; and

      (2) Until your legal representative has been appointed.

   d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

   a. "Bodily injury" to a co-"employee" of the person driving the equipment; or

   b. "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

4. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

   a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

---

CG 00 01 01 96                Copyright, Insurance Services Office, Inc., 1994                Page 7 of 13

**b.** Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

**c.** Coverage B does not apply to "personal injury" or "advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   **a.** Insureds;

   **b.** Claims made or "suits" brought; or

   **c.** Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

   **a.** Medical expenses under Coverage C;

   **b.** Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   **c.** Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal injury" and all "advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage A; and

   **b.** Medical expenses under Coverage C

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to 5. above, the Fire Damage Limit is the most we will pay under Coverage A for damages because of "property damage" to premises, while rented to you or temporarily occupied by you with permission of the owner, arising out of any one fire.

7. Subject to 5. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)** How, when and where the "occurrence" or offense took place;

      **(2)** The names and addresses of any injured persons and witnesses; and

      **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

   **b.** If a claim is made or "suit" is brought against any insured, you must:

      **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

      **(2)** Notify us as soon as practicable.

      You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

Copyright, Insurance Services Office, Inc., 1994

CG 00 01 01 96   ☐

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. **Excess Insurance**

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Coverage A (Section I).

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

Copyright, Insurance Services Office, Inc., 1994

**5. Premium Audit**

    **a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

    **b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

    **c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

    **a.** The statements in the Declarations are accurate and complete;

    **b.** Those statements are based upon representations you made to us; and

    **c.** We have issued this policy in reliance upon your representations.

**7. Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

    **a.** As if each Named Insured were the only Named Insured; and

    **b.** Separately to each insured against whom claim is made or "suit" is brought.

**8. Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

**SECTION V – DEFINITIONS**

**1.** "Advertising injury" means injury arising out of one or more of the following offenses:

    **a.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **b.** Oral or written publication of material that violates a person's right of privacy;

    **c.** Misappropriation of advertising ideas or style of doing business; or

    **d.** Infringement of copyright, title or slogan.

**2.** "Auto" means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

    **a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

    **b.** International waters or airspace, provided the injury or damage does not occur in the course of travel or transportation to or from any place not included in a. above; or

    **c.** All parts of the world if:

        (1) The injury or damage arises out of:

            (a) Goods or products made or sold by you in the territory described in a. above; or

**(b)** The activities of a person whose home is in the territory described in **a.** above, but is away for a short time on your business; and

**(2)** The insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in **a.** above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   **b.** You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or

   **b.** Your fulfilling the terms of the contract or agreement.

8. "Insured contract" means:

   **a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   **b.** A sidetrack agreement;

   **c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   **d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   **e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

9. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

10. "Loading or unloading" means the handling of property:

   **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

---

b. While it is in or on an aircraft, watercraft or "auto"; or

c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

11. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises you own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c. or d. above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

13. "Personal injury" means injury, other than "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

e. Oral or written publication of material that violates a person's right of privacy.

14. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

15. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

16. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

17. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

18. "Your product" means:

a. Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(1) You;

(2) Others trading under your name; or

(3) A person or organization whose business or assets you have acquired; and

b. Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

"Your product" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

b. The providing of or failure to provide warnings or instructions.

"Your product" does not include vending machines or other property rented to or located for the use of others but not sold.

19. "Your work" means:

a. Work or operations performed by you or on your behalf; and

b. Materials, parts or equipment furnished in connection with such work or operations.

"Your work" includes:

a. Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

b. The providing of or failure to provide warnings or instructions.

 Copyright, Insurance Services Office, Inc., 1994

Scottsdale Insurance Company
COMMERCIAL GENERAL LIABILITY COVERAGE PART
SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number __OPS000607__

## LIMITS OF INSURANCE

| | |
|---|---|
| General Aggregate Limit (Other Than Products / Completed Operations) | $ 1,000,000 |
| Products / Completed Operations Aggregate Limit | $ 1,000,000 |
| Personal and Advertising Injury Limit | $ 1,000,000 |
| Each Occurrence Limit | $ 1,000,000 |
| Fire Damage Limit | $ 100,000 any one fire |
| Medical Expense Limit | $ 1,000 any one person |

## BUSINESS DESCRIPTION AND LOCATION OF PREMISES

Form of Business:

☐ Individual   ☐ Joint Venture   ☐ Partnership   ☒ Organization (Other than Partnership or Joint Venture)

Business description:

Mental Health Center

Location of all premises you own, rent or occupy:

SEE BELOW

## PREMIUM

| Classification | Code No. | *Premium Basis | Rate PR/Co | Rate All Other | Advance Premium Pr/Co | Advance Premium All Other |
|---|---|---|---|---|---|---|
| Mental Health Center | | | | | | Included |

LOCATION SCHEDULE:
001    20201 N.W. 37th Avenue   Miami FL
002    15055 N.W. 27th Avenue   Opalocka FL
003    1000 SW 84th Avenue   Hollywood FL
004    16555 N.W. 25th Avenue   Opalocka FL
005    2351 NW 135th Street   W. Miami FL
006    14950-52 NE 11th Avenue   Miami FL
007    1075 NW 149th Street   Miami FL
008    1095 NW 149th Street   Miami FL
009    11115 NE 13th Avenue   Miami FL
010    1301 NE 111th Street   Miami FL
011    11 NW 135th   Miami FL
012    480 NW 123rd Street   Miami FL
013    16690-92 NE 18th Avenue   Miami FL

## FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

*(a) Area, (c) Total Cost, (m) Admission, (p) Payroll, (s) Gross Sales, (u) Units, (o) Other

This Supplemental Declarations and the Commercial Liability Declarations, together with the common policy conditions, coverage form(s) and endorsements complete the above numbered policy.

CLS-SD-1 (2-92)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED - VOLUNTEER WORKERS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

WHO IS AN INSURED (Section II) is amended to include as an insured any person(s) who are volunteer worker(s) for you, but only while acting at the direction of, and within the scope of their duties for you. However, no volunteer workers(s) are insureds for:

1. "Bodily Injury" or "personal injury":

   a. To you, to your partners or members (if you are a partnership or joint venture), to your other volunteer worker(s) or to your "employees" arising out of and in the course of their duties for you;

   b. To the spouse, child, parent, brother or sister of your volunteer worker(s) or your "employees" as a consequence of paragraph 1.a. above;

   c. For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in paragraphs 1.a or b. above; or

   d. Arising out of his or her providing or failing to provide professional health care services.

2. "Property damage" to property:

   a. Owned, occupied, or used by,

   b. Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

   you, any of your other volunteer worker(s), your "employees" or, if you are a partnership or joint venture, any partner or member.

CG 20 21 10 93        Copyright, Insurance Services Office, Inc., 1992

POLICY NUMBER: OPS000607             COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION--DESIGNATED PROFESSIONAL SERVICES

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART.

### SCHEDULE

**Description of Professional Services:**

1. All Professional Services

2.

3.

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any professional services shown in the Schedule, this insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" due to the rendering or failure to render any professional service.

CG 21 16 11 85            Copyright, Insurance Services Office, Inc., 1984

COMMERCIAL GENERAL LIABILITY
CG 21 47 10 93

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Bodily Injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to paragraph 2., Exclusions of COVERAGE B - PERSONAL AND ADVERTISING INJURY LIABILITY (Section 1 - Coverages):

This insurance does not apply to:

"Personal Injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

CG 21 47 10 93                   Copyright, Insurance Services Office, Inc., 1992

COMMERCIAL GENERAL LIABILITY
CG 21 49 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# TOTAL POLLUTION EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:
COMMERICAL GENERAL LIABILITY COVERAGE PART

Exclusion f. under paragraph 2., Exclusions of COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section 1 - Coverages) is replaced by the following:

This insurance does not apply to:

f. (1) "Bodily Injury" or "property damage" which would not have occured in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand or order that any insured or others test for, monitor, clean up. remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

(b) Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant including smoke, vapor, soot, fumes, acid, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed.

CG 21 49 10 93              Copyright, Insurance Services Office, Inc., 1992

# PROFESSIONAL LIABILITY COVERAGE PART



SCOTTSDALE INSURANCE COMPANY®

Scottsdale, Arizona

(A stock insurance company)

**THIS IS A CLAIMS MADE POLICY. READ YOUR POLICY CAREFULLY.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

The word "insured" means any person or organization qualifying as such under **SECTION III—WHO IS AN INSURED**. Other words and phrases that appear in capitalized bold print have special meaning. Refer to **SECTION VII—DEFINITIONS**.

## SECTION I—COVERAGE

### INSURING AGREEMENT

We will pay those sums that the insured becomes legally obligated to pay as **DAMAGES** because of injury as a result of a **WRONGFUL ACT**. This insurance applies to injury only if **CLAIM** for **DAMAGES** because of the injury is first made against the insured during the **POLICY YEAR**.

This insurance does not apply to injury caused by a **WRONGFUL ACT** which was committed before the Retroactive Date shown in the Declarations or which occurs after the **POLICY YEAR**.

A. A **CLAIM** by a person or organization seeking **DAMAGES** will be deemed to have been made when notice of such **CLAIM** is received and recorded by any insured or by us, whichever comes first.

B. All **CLAIMS** arising out of the same **WRONGFUL ACT** shall be considered as having been made at the time the first **CLAIM** is made.

We will have the right and duty to select counsel and to defend any **SUIT** seeking **DAMAGES**. But:

A. The amount we will pay for **DAMAGES** is limited as described in **SECTION IV—LIMITS OF INSURANCE**;

B. We may, at our discretion, investigate any **WRONGFUL ACT** and settle any **CLAIM** or **SUIT** that may result; and

C. Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements.

### SUPPLEMENTARY PAYMENTS

We will pay, with respect to any **CLAIM** or **SUIT** we defend:

A. All expenses we incur.

B. The cost of bonds to release attachments, but only bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

C. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the **CLAIM** or **SUIT** including actual loss of earnings up to $100 a day because of time off from work.

D. All costs taxed against the insured in the **SUIT**.

E. Pre-judgment interest awarded against the insured on the part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

CLS-PRO-1 (10-94)

F. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

## SECTION II—EXCLUSIONS

This insurance does not apply:

A. to bodily injury to an employee of the insured arising out of and in the course of employment by the insured;

B. to any obligation of any insured under any workers' compensation, unemployment compensation, or disability benefits law or under any similar law;

C. to injury arising out of the ownership, maintenance, use or entrustment to others of any aircraft, **AUTO** or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and **LOADING OR UNLOADING**;

D. to injury arising out of a criminal act by any insured;

E. 1. to injury arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:

    a.  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

    b.  At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    c.  Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for any insured or any person or organization for whom you may be legally responsible; or

    d.  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations:

       (1)  If the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor; or

       (2)  If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants.

Subparagraphs a. and d.(1) do not apply to injury arising out of heat, smoke or fumes from a hostile fire.

As used in this exclusion, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

2. Any loss, cost or expense arising out of any:

    a.  Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; or

    b.  **CLAIM** or **SUIT** by or on behalf of a governmental authority for **DAMAGES** because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of pollutants.

Pollutants mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

F. to injury for which the insured is obligated to pay **DAMAGES** by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to **DAMAGES** that the Insured would have in the absence of a contract or agreement.

G. to employment related **WRONGFUL ACTS** including:

1. Termination of employment;

2. Refusal to employ;

3. Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

4. Consequential injury as a result of 1. through 3. above.

This exclusion applies:

1. Whether the insured may be liable as an employer or in any other capacity; and

2. To any obligation to share **DAMAGES** with or repay someone else who must pay **DAMAGES** because of the injury.

CLS-PRO-1-(10-94)

## SECTION III—WHO IS AN INSURED

If you are designated in the Declarations as:

A. an individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are sole owner.

B. a partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

C. an organization other than a partnership or joint venture, you are an insured. Your executive officers and directors are insureds, but only with respects to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

Each of the following is also an insured:

A. Your employees and volunteers, but only for acts within the scope of their employment by you.

B. Physicians, whether salaried or contracted by you, are insureds under this policy with respect to any **CLAIMS** arising from the rendering or failure to render professional services to your patients.

   **Coverage for physicians shall apply in excess over any other valid and collectible insurance.**

## SECTION IV—LIMITS OF INSURANCE

Regardless of the number of:

1. Insureds;

2. **CLAIMS** made or **SUITS** brought;

3. Persons or organizations making **CLAIMS** or bringing **SUITS**,

   the total amount we will pay for all **DAMAGES** because of injury arising out of any one **CLAIM** shall not exceed the limits of insurance stated in the supplemental declarations as applicable to **EACH CLAIM**.

   The most we will pay for all **DAMAGES** because of all injury to which this insurance applies shall not be more than the limits of insurance stated in the schedule as aggregate.

## SECTION V—POLICY TERRITORY

This insurance applies to **DAMAGES** for injury caused by a **WRONGFUL ACT** anywhere in the world, so long as the original **SUIT** for such **DAMAGES** is brought in the United States, its territories or possessions, Puerto Rico or Canada.

## SECTION VI—PROFESSIONAL LIABILITY CONDITIONS

### A. BANKRUPTCY

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

### B. DUTIES IN THE EVENT OF WRONGFUL ACT, CLAIM OR SUIT

1. If, during the **POLICY YEAR** or Extended Reporting Period (if purchased), you first are made aware of a **WRONGFUL ACT** (or alleged **WRONGFUL ACT**) and coverage as provided by this Coverage Part would otherwise apply and if you provide written notice to us during the **POLICY YEAR** or Extended Reporting Period, including:

   a.   the specific **WRONGFUL ACT**; and

   b.   the injury or **DAMAGE** which has or may result because of the **WRONGFUL ACT**; and

   c.   the name(s) of the party(ies) involved; and

   d.   how and when you first became aware of the **WRONGFUL ACT**;

   then any **CLAIM** that may be made arising out of such **WRONGFUL ACT** shall be deemed to have been made during the **POLICY YEAR**, or Extended Reporting Period.

   Subsequent policies issued by us will not apply to any **CLAIMS** arising from any circumstances of which a notice of a **WRONGFUL ACT** has been given/reported under this Coverage Part.

2. If a **CLAIM** is received by any insured you must:

   a.   Immediately record the specifics of the **CLAIM** and the date received; and

   b.   Notify us as soon as practicable.

CLS-PRO-1 (10-94)

You must see to it that we receive written notice of the **CLAIM** as soon as practicable.

3. You and any other involved insured must:

a. Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the **CLAIM** or a **SUIT**;

b. Authorize us to obtain records and other information;

c. Cooperate with us in the investigation, settlement or defense of the **CLAIM** or **SUIT**; and

d. Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or **DAMAGE** to which this insurance may also apply.

4. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without our consent.

## C. LEGAL ACTION AGAINST US

No person or organization has a right under this Coverage Part:

1. To join us as a party or otherwise bring us into a **SUIT** asking for **DAMAGES** from an insured; or

2. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured obtained after an actual trial; but we will not be liable for **DAMAGES** that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

## D. NONRENEWAL

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than thirty (30) days before the expiration date. If notice is mailed, proof of mailing will be sufficient proof of notice.

## E. OTHER INSURANCE

If other valid collectible insurance is available to the insured for a loss we cover, our obligations are limited as follows:

1. Primary Insurance

This insurance is primary except when 2. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in 4. below.

2. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis that is effective prior to the beginning of the **POLICY YEAR** shown in the Declarations of this insurance and applies to professional liability on other than a claims-made basis, if:

a. No Retroactive Date is shown in the Declarations of this insurance; or

b. The other insurance has a **POLICY YEAR** which continues after the Retroactive Date shown in the Declarations of this insurance.

When this insurance is excess, we will have no duty to defend any **CLAIM** or **SUIT** that any other insurer has a duty to defend. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers. When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

a. The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

b. The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

3. When physician(s) are included under this Coverage Part as an insured, the coverage afforded by this Coverage Part shall apply in excess over any other valid

and collectible insurance, and shall apply only to **CLAIMS** arising out of the treatment of patients of the Named Insured.

4. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## F. PREMIUM AUDIT

1. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

2. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period.

Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the **POLICY YEAR** is greater than the earned premium, we will return the excess to the first Named Insured.

3. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

## G. REPRESENTATIONS

By accepting this policy, you agree:

1. The statements in the Declarations are accurate and complete;

2. Those statements are based upon representations you made to us; and

3. We have issued this policy in reliance upon your representations.

## H. SEPARATION OF INSUREDS

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned to the first Named Insured, this insurance applies:

1. As if each Named Insured were the only Named Insured; and

2. Separately to each insured against whom **CLAIM** is made or **SUIT** is brought.

## I. SEVERABILITY CLAUSE

The application, a copy of which is attached to this policy, and the Declarations are the basis of this policy and are to be considered as incorporated in and constituting part of the policy. The particulars and statements contained in the application and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of you. Nothing in this provision will be construed to increase our limits of insurance shown on the Declarations.

## J. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring **SUIT** or transfer those rights to us and help us enforce them.

## K. YOUR RIGHT TO CLAIM AND WRONGFUL ACT INFORMATION

We will provide the first Named Insured shown in the Declarations the following information relating to this and any preceding professional liability claims-made Coverage Part we have issued to you during the previous three years:

1. A list or other record of each **WRONGFUL ACT**, not previously reported to any other insurer, of which we were notified in accordance with paragraph **B.1.** of this Section. We will include the date and brief description of the **WRONGFUL ACT** if that information was in the notice we received.

2. A summary by **POLICY YEAR**, of payments made and amounts reserved.

Amounts reserved are based on our judgment. They are subject to change and should not be regarded as ultimate settlement values.

If we cancel or elect not to renew this Coverage Part, we will provide such information no later than thirty (30) days before the date of policy termination. In other circumstances, we will provide this information only if we receive a written request from the first Named Insured within sixty (60) days after the end of the **POLICY YEAR**. In this case, we will provide this information within forty-five (45) days of receipt of the request. We compile

CLS-PRO-1 (10-94)

CLAIM and WRONGFUL ACT information for our own business purposes and exercise reasonable care in doing so. In providing this information to the first Named Insured, we make no representations or warranties to insureds, insurers, or others to whom this information is furnished by or on behalf of any insured. Cancellation or nonrenewal will be effective even if we inadvertently provide inaccurate information.

## SECTION VII—DEFINITIONS

A. **AUTO** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.

B. **CLAIM** means the receipt of a demand for money or services naming any insured and alleging a **WRONGFUL ACT**.

C. **DAMAGES** means a monetary judgment, award or settlement, but does not include restitution, fines or statutory penalties whether imposed by law or otherwise. **DAMAGES** covered under this policy will not include monies paid to you as fees or expenses for professional services rendered which are to be reimbursed or disclaimed as a part of the judgment or settlement.

D. **LOADING OR UNLOADING** means the handling of persons or property:

1. After being moved from the place where accepted for movement into or onto an aircraft, watercraft or **AUTO**;

2. While in or on an aircraft, watercraft or **AUTO**; or

3. While being moved from aircraft, watercraft or **AUTO** to the place of final delivery.

E. **POLICY YEAR** means the period shown in Item 2 of the Declarations. If the time shown in Item 2 of the Declarations is less than a year, then for the lesser period shown.

F. **SUIT** means a civil proceeding in which **DAMAGES** for injury to which this insurance applies are alleged. **SUIT** includes an arbitration proceeding alleging such **DAMAGES** to which you must submit or submit with our consent.

G. **WRONGFUL ACT** means any act, error or omission in the furnishing of professional health care services. It includes the furnishing of food, beverages, medications or appliances in connection with those services.

Any **WRONGFUL ACT** committed in the furnishing of professional health care services to any one person shall be considered one **WRONGFUL ACT**.

## SECTION VIII—EXTENDED REPORTING PERIODS

A. We will provide one or more Extended Reporting Periods, as described below, if:

1. This Coverage Part is cancelled or not renewed for reasons other than nonpayment of premium; or

2. We renew or replace this Coverage Part with insurance that:

   a. Has a Retroactive Date later than the date shown in the Declarations of the Coverage Part; or

   b. Does not apply to injury because of **WRONGFUL ACTS** on a claims-made basis.

B. A Basic Extended Reporting Period is automatically provided without additional charge. This period starts with the end of the **POLICY YEAR** and lasts for sixty (60) days. The Basic Extended Reporting Period does not apply to **CLAIMS** covered under any subsequent insurance you purchase.

Alternatively, up to three (3) Supplemental Extended Reporting Periods of twelve (12) months each are available, but only if added by endorsement and for an additional premium charge. This supplemental period starts sixty (60) days after the end of the **POLICY YEAR**.

You have the right to select the number of Supplemental Extended Reporting Periods you desire. Up to three (3) Supplemental Extended Reporting Periods of twelve (12) months each may be chosen. An additional premium charge of seventy-five (75) percent of the expiring annual premium of this Coverage Part is immediately due for each Supplemental Extended Reporting Period chosen.

You must give us a written request for the endorsement within thirty (30) days of the cancellation or nonrenewal. Your request should specify the length of the Supplemental Extended Reporting Period desired. The Supplemental Extended Reporting Period will not go into effect unless you pay the additional premium promptly when due and unless you make written request within thirty (30) days of policy cancellation or nonrenewal.

CLS-PRO-1-(10-94)—

C. The Extended Reporting Periods do not extend the **POLICY YEAR** or change the scope of coverage provided. Subject otherwise to the policy's terms, limits of insurance, exclusions and conditions, the policy is extended to apply to **CLAIMS** first made against the insured during the Basic Extended Reporting Period, or if purchased, the Supplemental Extended Reporting Period, but only to **CLAIMS** because of **WRONGFUL ACTS** committed before the end of the **POLICY YEAR** (but not before the Retroactive Date shown in the Declarations).

Extended Reporting Periods do not reinstate or increase the limits of insurance of the policy. **CLAIMS** for injury which are first received and recorded during the Basic Extended Reporting Period or during the Supplemental Extended Reporting Period, if it is in effect, will be deemed to have been made on the last day of the **POLICY YEAR**.

POLICY NUMBER: OP  0607    COMME  AL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED
# MORTGAGEE, ASSIGNEE, OR RECEIVER

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

**Name of Person or Organization:**

     First Union National Bank of Florida

     Corporate Trust Department

     Jacksonville, FL

**Designation of Premises:**

     15055 N.W. 27th Avenue

     Opalocka, FL

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

1. WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule but only with respect to their liability as mortgagee, assignee, or receiver and arising out of the ownership, maintenance, or use of the premises by you and shown in the Schedule.

2. This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

CG 20 18 11 85     Copyright, Insurance Services Office, Inc., 1984

POLICY NUMBER: OPS0006⬤

COMMERICAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED---LESSOR OF LEASED EQUIPMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

## SCHEDULE

**Name of Person or Organization:**

```
Savin Corporation
9500 NW 41st Street
Miami, FL 33126
```

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person(s) or organization(s) shown in the Schedule, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s), subject to the following additional exclusions:

This insurance does not apply:

1.  To any "occurrence" which takes place after the equipment lease expires;

2.  To "Bodily Injury" or "property damage" arising out of the sole negligence of the person or organization shown in the Schedule.

CG 20 28 11 85              Copyright, Insurance Services Office, Inc., 1984

 **Scottsdale Insurance Company**

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| OPS000607 | 07 | 01 | 97 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295018 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SEXUAL MISCONDUCT EXCLUSION ENDORSEMENT

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

**SECTION I—COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 2. Exclusions, is amended to include the following:**

This insurance does not apply to:

"Bodily Injury" to any person arising out of "sexual misconduct".

**SECTION I—COVERAGES, COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY, 2. Exclusions, is amended to include the following:**

This insurance does not apply to:

"Personal injury" or "advertising injury" arising out of "sexual misconduct".

**SECTION V—DEFINITIONS is amended to include the following:**

"Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the Named Insured, whether committed by, caused by or contributed to by any insured, or which is caused by or contributed to by the failure of any insured to:

a. Properly train, hire or supervise any employee; or

b. Properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the Named Insured.

_____ / _____
AUTHORIZED REPRESENTATIVE          DATE

GLS-127s (6/94)

 **Scottsdale Insurance Company** ®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | NO. | DAY | YR. | 12:01 | NOON | | |
| OPS000607 | 07 | 01 | 97 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295018 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# CANCELLATION AND NONRENEWAL—FLORIDA

**COMMON POLICY CONDITIONS A. CANCELLATION** is deleted in its entirety and is replaced by the following:

**A. CANCELLATION.**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. **Cancellation of policies in effect for ninety (90) days or less.**
   If this policy has been in effect for ninety (90) days or less and is not a renewal, we may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

   a. Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. Thirty (30) days before the effective date of cancellation if we cancel for any other reason, except we may cancel immediately if there has been:

      (1) A material misstatement or misrepresentation; or

      (2) A failure to comply with underwriting requirements established by the insurer.

3. **Cancellation of policies in effect for more than ninety (90) days.**

   If this policy has been in effect for more than ninety (90) days or this is a renewal or continuation of a policy issued by us, we may cancel this policy only for one or more of the following reasons:

   a. Nonpayment of premium;

   b. The policy was obtained by material misrepresentation;

   c. There has been a failure to comply with underwriting requirements established by us within ninety (90) days of the effective date of coverage;

   d. There has been a substantial change in the risk covered by the policy; or

   e. The cancellation is for all insureds under such policies for a given class of insureds.

   If we cancel this policy for any of these reasons, we will mail or deliver to the first Named Insured written notice of cancellation, accompanied by the reasons for cancellation, at least:

      (1) Ten (10) days before the effective date of cancellation if we cancel for nonpayment of premium; or

      (2) Forty-five (45) days before the effective date of cancellation if we cancel for any of the reasons stated in 3.b., c., d. or e. above.

4. We will give notice to the first Named Insured at the last mailing address known to us.

5. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

6. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

CLS-626FL (6-93)                    Page 1 of 2

Condition 9. **When We Do Not Renew** is deleted in its entirety and is replaced by the following:

**9. When We Do Not Renew.**

a. If we decide not to renew this policy, we will mail or deliver to the first Named Insured written notice of nonrenewal, accompanied by the reason or reasons for nonrenewal, at least forty-five (45) days prior to the expiration of this policy.

b. Any notice of nonrenewal will be mailed or delivered to the last mailing address of the first Named Insured known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

_____ / _____

**AUTHORIZED REPRESENTATIVE**          **DATE**

CLS-62s-FL (6-93)                    page 2 of 2

 **Scottsdale Insurance Company**®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 A.M. | NOON | | |
| OPS000607 | 07 | 01 | 97 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295018 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER:

PROFESSIONAL LIABILITY COVERAGE PART

SEXUAL MISCONDUCT LIMITATION ENDORSEMENT

In consideration of the premium charged, this endorsement will provide limited coverage under SECTION I COVERAGE for any "wrongful act", arising out of "sexual misconduct".

## SUBLIMIT OF LIABILITY

Each claim limit     $100,000

Aggregate limit     $300,000

Subject to the each claim limit and aggregate limit shown on the professional liability Supplemental Declarations. SECTION IV - LIMITS OF INSURANCE is amended to include the following:

(d)    The sublimit of liability shown in this endorsement is the most we will pay for all damages because of injury arising out of any one claim for "sexual misconduct". The aggregate limit stated in this endorsement is the most we will pay for all claims arising out of "sexual misconduct" in any "policy year".

SECTION VII - DEFINITIONS is amended to include the following:

6.    "Sexual misconduct" means any action or behavior, or any physical contact or touching, which is intended to lead to, or which culminates in any sexual act, arising out of the professional treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured, whether committed by, caused by or contributed to by failure of any insured to:

1.    Properly train, hire or supervise any employee, or;

2.    Properly control, monitor or supervise the treatment and care of any client, patient, or any other person whose care has been entrusted to the named insured.

_____
AUTHORIZED REPRESENTATIVE

CLS-18 (4/91)

 **Scottsdale Insurance Company** °

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| OPS000607 | 07 | 01 | 97 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295018 |

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## SEVERABILITY CLAUSE AMENDATORY ENDORSEMENT

This endorsment modifies Insurance provided under the following:

**Professional Liability Coverage Part**

Condition I. SEVERABILITY CLAUSE, SECTION VI--PROFESSIONAL LIABILITY CONDITIONS, is deleted in its entirety and is replaced by the following:

**I.  SEVERABILITY CLAUSE**

The application will be retained on file by us and will be deemed as attached to the policy. The particulars and statements contained in the application and the conditions and exclusions set forth in this policy will be construed as a separate agreement with each of you.  Nothing in this provision will be construed to increase our limits of insurance shown on the Declarations.

_____/_____
AUTHORIZED REPRESENTATIVE          DATE

CLS-77s (3/95)

# Scottsdale Insurance Company ®

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| OPS000607 | 07 | 01 | 97 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295018 |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## PENDING AND PRIOR LITIGATION EXCLUSION

We shall not be obligated to make any payment or defend any lawsuit in connection with any CLAIM made against you arising from any litigation pending or filed prior to the inception date of this policy or any future CLAIMS or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

_____/_____

AUTHORIZED REPRESENTATIVE              DATE

CLS-75s (11/94)

 **Scottsdale Insurance Company** ®

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| OPS000607 | 07 | 01 | 97 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295018 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SERVICE OF SUIT CLAUSE

It is agreed that in the event of the failure of the Company/or Underwriters to pay any amount claimed to be due under this policy, the Company/or Underwriters at the request of the insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court.

It is further agreed that service of process in such suit may be made upon
Insurance Commissioner of Florida
200 East Gaines
Tallahassee, Florida 32301

and that in any suit instituted against any one of them under this contract, the Company/or Underwriters agree to abide by the final decision of the Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company/or Underwriters in any such suit and/or upon the request of the insured (or reinsured) to give a written undertaking to the Insured (or reinsured) that it or they will enter a general appearance upon the Company's/or Underwriter's behalf in the event a suit is instituted.

Pursuant to any statute of any state, territory or district of the United States of America, which makes a provision, the Company/or Underwriters will designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the Insured (or reinsured) or any beneficiary arising out of this contract of insurance (or reinsurance). The above named is designated as the person to whom the officer is authorized to mail the process or a true copy.

_____                 07/21/97
AUTHORIZED REPRESENTATIVE            DATE

UTS-9g (5-92)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY
COMMERCIAL AUTO COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
SPECIAL PROTECTIVE AND HIGHWAY LIABILITY POLICY NEW YORK DEPARTMENT OF TRANSPORTATION
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:
   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:
   "Hazardous properties" include radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material";

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

IL 00 21 11 94          Copyright, Insurance Services Office, Inc., 1994          Page 1 of 2

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

(a) Any "nuclear reactor";

(b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

(c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium;
   or
   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. CHANGES

This policy contains all the agreement between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys reports or recommendations.

## E. PREMIUMS

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

IL 00 17 11 85          Copyright, Insurance Services Office, Inc., 1982, 1983

# SPECIAL PROPERTY COVERAGE FORM

 SCOTTSDALE INSURANCE COMPANY®

Scottsdale, Arizona
A Stock Insurance Company, herein called Company.

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us" and "our" refer to the Company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION H—PROPERTY DEFINITIONS.

## A. COVERAGE

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

**1. Covered Property**

Covered Property, as used in this policy, means the type of property as described in this section, **A.1.**, and limited in **A.2.**, Property Not Covered, if a Limit of Insurance is shown in the Declarations for that type of property.

a. Buildings, meaning the buildings and structures at the premises described in the Declarations, including:

(1) Completed additions;

(2) Fixtures, including outdoor fixtures;

(3) Permanently installed:

    (a) Machinery; and

    (b) Equipment;

(4) Your personal property in apartments or rooms furnished by you as landlord;

(5) Personal property owned by you that is used to maintain or service the buildings or structures or the premises, including:

    (a) Fire extinguishing equipment;

    (b) Outdoor furniture;

    (c) Floor coverings; and

    (d) Appliances used for refrigerating, ventilating, cooking, dishwashing or laundering;

(6) If not covered by other insurance:

    (a) Additions under construction, alterations and repairs to the buildings or structures;

    (b) Materials, equipment, supplies and temporary structures, on or within 100 feet of the described premises, used for making additions, alterations or repairs to the buildings or structures.

b. **Business Personal Property** located in or on the buildings at the described premises or in the open (or in a vehicle) within 100 feet of the described premises, including:

(1) Property you own that is used in your business;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

CFS-NEG-P-1 (10-96)                     

(2) Property of others that is in your care, custody or control, but this property is not covered for more than the amount for which you are legally liable, plus the cost of labor, materials or services furnished or arranged by you on personal property of others;

(3) Tenant's improvements and betterments. Improvements and betterments are fixtures, alterations, installations or additions:

(a) Made a part of the building or structure you occupy but do not own;

(b) You acquired or made at your expense but cannot legally remove; and

(4) Leased personal property for which you have a contractual responsibility to insure, unless otherwise provided for under Paragraph **A.1.b.(2)**.

## 2. Property Not Covered

Covered Property does not include:

a. Aircraft, automobiles, motortrucks and other vehicles subject to motor vehicle registration;

b. "Money" or "securities" except as provided in the:

(1) Money and Securities Optional Coverage; or

(2) Employee Dishonesty Optional Coverage;

c. Contraband, or property in the course of illegal transportation or trade;

d. Land (including land on which the property is located), water, growing crops or lawns;

e. Outdoor fences, radio or television antennas (including satellite dishes) and their lead-in wiring, masts or towers, signs (other than signs attached to buildings), trees, shrubs or plants, all except as provided in the:

(1) Outdoor Property Coverage Extension; or

(2) Outdoor Signs Optional Coverage;

f. Watercraft (including motors, equipment and accessories) while afloat.

## 3. Covered Causes of Loss

RISKS OF DIRECT PHYSICAL LOSS unless the loss is:

a. Excluded in Section **B.**, Exclusions; or

b. Limited in Paragraph **A.4.**, Limitations;

that follow.

## 4. Limitations

a. We will not pay for loss of or damage to:

(1) Property that is missing, but there is no physical evidence to show what happened to it, such as shortage disclosed on taking inventory. This limitation does not apply to the Optional Coverage for Money and Securities.

(2) Property that has been transferred to a person or to a place outside the described premises on the basis of unauthorized instructions.

b. With respect to glass (other than glass building blocks) that is part of the interior or exterior of a building or structure, or part of an outdoor sign, we will not pay more than $500 for the total of all loss or damage in any one occurrence. Subject to the $500 limit on all loss or damage, we will not pay more than $100 for each plate, pane, multiple plate insulating unit, radiant or solar heating panel, jalousie, louver or shutter.

This limitation does not apply to loss or damage by the "specified causes of loss," except vandalism.

c. We will not pay for loss of or damage to fragile articles such as glassware, statuary, marbles, chinaware and porcelains, if broken, unless caused by the "specified causes of loss" or building glass breakage. This restriction does not apply to:

(1) Glass that is part of the interior or exterior of a building or structure;

(2) Containers of property held for sale; or

(3) Photographic or scientific instrument lenses.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

d. For loss or damage by theft, the following types of property are covered only up to the limits shown:

(1) $2,500 for furs, fur garments and garments trimmed with fur.

(2) $2,500 for jewelry, watches, watch movements, jewels, pearls, precious and semi-precious stones, bullion, gold, silver, platinum and other precious alloys or metals. This limit does not apply to jewelry and watches worth $100 or less per item.

(3) $2,500 for patterns, dies, molds and forms.

## 5. Additional Coverages

### a. Debris Removal

(1) We will pay your expense to remove debris of Covered Property caused by or resulting from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

(a) The date of direct physical loss or damage; or

(b) The end of the policy period.

(2) The most we will pay under this Additional Coverage is 25% of:

(a) The amount we pay for the direct physical loss of or damage to Covered Property; plus

(b) The deductible in this policy applicable to that loss or damage.

But this limitation does not apply to any additional debris removal limit provided in paragraph (4) below.

(3) This Additional Coverage does not apply to costs to:

(a) Extract "pollutants" from land or water; or

(b) Remove, restore or replace polluted land or water.

(4) If:

(a) The sum of direct physical loss or damage and debris removal expense exceeds the Limit of Insurance; or

(b) The debris removal expense exceeds the amount payable under the 25% Debris Removal coverage limitation in paragraph (2) above;

we will pay up to an additional $10,000 for each location in any one occurrence under the Debris Removal Additional Coverage.

### b. Preservation of Property

If it is necessary to move Covered Property from the described premises to preserve it from loss or damage by a Covered Cause of Loss, we will pay for any direct physical loss of or damage to that property:

(1) While it is being moved or while temporarily stored at another location; and

(2) Only if the loss or damage occurs within 30 days after the property is first moved.

### c. Fire Department Service Charge

When the fire department is called to save or protect Covered Property from a Covered Cause of Loss, we will pay up to $1,000 for your liability for fire department service charges:

(1) Assumed by contract or agreement prior to loss; or

(2) Required by local ordinance.

### d. Collapse

(1) We will pay for direct physical loss or damage to Covered Property, caused by collapse of a building or any part of a building insured under this policy, if the collapse is caused by one or more of the following:

(a) The "specified cause of loss" or breakage of building glass, all only as insured against in this policy;

(b) Hidden decay;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

**(c)** Hidden insect or vermin damage;

**(d)** Weight of people or personal property;

**(e)** Weight of rain that collects on a roof;

**(f)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation. However, if the collapse occurs after construction, remodeling or renovation is complete and is caused in part by a cause of loss listed in **d.(1)(a)** through **d.(1)(e)**, we will pay for the loss or damage even if use of defective material or methods in construction, remodeling or renovation, contributes to the collapse.

**(2)** If the direct physical loss or damage does not involve collapse of a building or any part of a building, we will pay for loss or damage to Covered Property caused by the collapse of personal property only if:

**(a)** The personal property which collapses is inside a building insured under this policy; and

**(b)** The collapse was caused by a cause of loss listed in **d.(1)(a)** through **d.(1)(f)** above.

**(3)** With respect to the following property:

**(a)** Awnings;

**(b)** Gutters and downspouts;

**(c)** Yard fixtures;

**(d)** Outdoor swimming pools;

**(e)** Piers, wharves and docks;

**(f)** Beach or diving platforms or appurtenances;

**(g)** Retaining walls; and

**(h)** Walks, roadways and other paved surfaces;

if the collapse is caused by a cause of loss listed in **d.(1)(b)** through **d.(1)(f)**, we will pay for loss or damage to that property only if

such loss or damage is a direct result of the collapse of a building insured under this policy and the property is Covered Property under this policy.

**(4)** Collapse does not include settling, cracking, shrinkage, bulging or expansion.

**e.** **Water Damage, Other Liquids, Powder or Molten Material Damage**

If loss or damage caused by or resulting from covered water or other liquid, powder or molten material damage loss occurs, we will also pay the cost to tear out and replace any part of the building or structure to repair damage to the system or appliance from which the water or other substance escapes.

We will not pay the cost to repair any defect that caused the loss or damage, except as provided in the additional coverage for equipment breakdown; but we will pay the cost to repair or replace damaged parts of fire extinguishing equipment if the damage:

**(1)** Results in discharge of any substance from an automatic fire protection system; or

**(2)** Is directly caused by freezing.

**f.** **Business Income**

**(1)** **Business Income**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration." The suspension must be caused by direct physical loss of or damage to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from any Covered Cause of Loss. If you are a tenant, your premises is the portion of the building which you rent, lease or occupy, including:

**(a)** All routes within the building to gain access to the described premises;

**(b)** Your personal property in the open (or in a vehicle) within 100 feet.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage. We will only pay for ordinary payroll expenses for 60 days following the date of direct physical loss or damage.

Business Income means the:

(i) Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred, but not including any Net Income that would likely have been earned as a result of an increase in the volume of business due to favorable business conditions caused by the impact of the Covered Cause of Loss on customers or on other business; and

(ii) Continuing normal operating expenses incurred, including payroll.

Ordinary payroll expenses mean payroll expenses for all your employees except:

1. Officers;

2. Executives;

3. Department Managers;

4. Employees under contract; and

5. Additional Exemptions shown in the Declarations as:

a. Job Classifications; or

b. Employees.

Ordinary payroll expenses include:

1. Payroll;

2. Employee benefits, if directly related to payroll;

3. FICA payments you pay;

4. Union dues you pay; and

5. Workers' compensation premiums.

**(2) Extended Business Income**

If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period that:

(a) Begins on the date property except finished stock is actually repaired, rebuilt or replaced and "operations" are resumed; and

(b) Ends on the earlier of:

(i) The date you could restore your "operations," with reasonable speed, to the level which would generate the Business Income amount that would have existed if no direct physical loss or damage had occurred; or

(ii) 30 consecutive days after the date determined in **(2)(a)** above.

However, Extended Business Income does not apply to loss of Business Income incurred as a result of unfavorable business conditions caused by the impact of the Covered Cause of Loss in the area where the described premises are located.

**Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.**

This Additional Coverage is not subject to the Limits of Insurance.

**g. Extra Expense**

(1) We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises, including personal property in the open (or in a vehicle) within 100 feet, caused by or resulting from a Covered Cause of Loss. If you are a tenant, your premises is the portion of the building which you rent, lease or occupy, including:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

**(a)** All routes within the building to gain access to the described premises; and

**(b)** Your personal property in the open (or in a vehicle) within 100 feet.

**(2)** Extra Expense means expense incurred:

**(a)** To avoid or minimize the suspension of business and to continue "operations":

  **(i)** At the described premises; or

  **(ii)** At replacement premises or at temporary locations, including relocation expenses, and costs to equip and operate the replacement or temporary locations.

**(b)** To minimize the suspension of business if you cannot continue "operations."

**(c)** To:

  **(i)** Repair or replace any property; or

  **(II)** Research, replace or restore the lost information on damaged valuable papers and records:

to the extent it reduces the amount of loss that otherwise would have been payable under this Additional Coverage or Additional Coverage **f. Business Income.**

We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance.

**h. Pollutant Clean Up and Removal**

We will pay your expense to extract "pollutants" from land or water at the described premises if the discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused by or results from a Covered Cause of Loss that occurs during the policy period. The expenses will be paid only if they are reported to us in writing within 180 days of the earlier of:

**(1)** The date of direct physical loss or damage; or

**(2)** The end of the policy period.

The most we will pay for each location under this Additional Coverage is $10,000 for the sum of all such expenses arising out of Covered Causes of Loss occurring during each separate 12 month period of this policy.

**i. Equipment Breakdown**

**(1)** We will pay for loss caused by or resulting from an Accident to Covered Equipment. As used in this Additional Coverage, an Accident means direct physical loss as follows:

**(a)** mechanical breakdown, including rupture or bursting caused by centrifugal force;

**(b)** artificially generated electric current, including electric arcing, that disturbs electrical devices, appliances or wires;

**(c)** explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control;

**(d)** loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

**(e)** loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

If an initial Accident causes other Accidents, all will be considered one Accident. All Accidents that are the result of the same event will be considered one Accident.

Covered Equipment means covered property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.

**(2)** The following additional coverages also apply to loss caused by or resulting from an Accident.

**(a) Expediting Expenses**

With respect to your damaged Covered Property, we will pay the reasonable extra cost to:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

(i)  make temporary repairs; and

(ii)  expedite permanent repairs or re-placement.

**(b) Hazardous Substances**

We will pay for the additional cost, up to $25,000, to repair or replace Covered Property because of contamination by a hazardous substance. This includes the additional expenses to clean up or dispose of such property.

Hazardous substance means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

Additional costs mean those beyond what would have been required had no hazardous substance been involved.

**(c) Drying Out Coverage**

If covered electrical equipment requires drying out as a result of a flood, we will pay for the direct expenses of such drying out.

**(d) Perishable Goods**

(i)  We will pay, up to $25,000, for your loss of "perishable goods" due to spoilage or due to contamination from the release of refrigerant, including but not limited to ammonia.

(ii)  We will also pay any necessary expenses you incur to reduce the amount of loss under this coverage. We will pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.

(iii) If you are unable to replace the "perishable goods" before its anticipated sale, the amount of our payment will be determined on the basis of the sales price of the "perishable goods" at the time of the Accident, less discounts and expenses

you otherwise would have had. Otherwise our payment will be determined in accordance with the Loss Payment condition.

(iv) Additional Definition. For the purpose of this coverage, "perishable goods" means personal property maintained under controlled conditions for its preservation, and susceptible to loss or damage if the controlled conditions change.

**(e) Computer Equipment**

We will pay for direct damage to "computer equipment" that is damaged by an Accident to such equipment. We will also pay for actual loss of Business Income you sustain and necessary Extra Expense you incur caused by such damage. "Computer equipment" means Covered Property that is electronic computer or other data processing equipment, including peripherals used in conjunction with such equipment, and Electronic Media and Records as defined in Property Conditions Limitation—Electronic Media and Records.

**(f) CFC Refrigerants**

We will pay for the additional cost, up to $25,000, to repair or replace Covered Property because of the use or presence of a refrigerant containing CFC (chlorinated fluorocarbon) substances. This means the additional expense to do the least expensive of the following:

(i)  Repair the damaged property and replace any lost CFC refrigerant;

(ii)  Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or

(iii) Replace the system with one using a non-CFC refrigerant.

Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

**(3) Exclusions**

**(a)** In addition to all other exclusions and limitations, we will not pay under this Additional Coverage for loss or damage caused by or resulting from:

**(i)** the breakdown of any structure, foundation, cabinet, compartment or air supported structure or building;

**(ii)** the breakdown of any insulating or refractory material;

**(iii)** the breakdown of any sewer piping, any underground vessels or piping, any piping forming a part of a sprinkler system or water piping other than boiler feed water piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;

**(iv)** the breakdown of any vehicle, dragline, excavation or construction equipment;

**(v)** the breakdown of any equipment manufactured by you for sale;

**(vi)** any of the following tests:

a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or

an insulation breakdown test of any type of electrical equipment.

**(b)** With respect to Perishable Goods coverage, we will also not pay for loss or damage as a result of your failure to use all reasonable means to protect the "perishable goods" from damage following an Accident.

**(c)** With respect to Computer Equipment coverage, we will also not pay for loss or damage caused by or resulting from any defect, virus, loss of data or other situation within Electronic Media and Records. But if loss or damage from an Accident results, we will pay for that resulting loss or damage.

**(4) Condition Suspension**

When any equipment is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance against loss from an Accident to that equipment. We can do this by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice from us. If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

**j.** **Money Orders and Counterfeit Paper Currency**

We will pay for loss due to the good faith acceptance of:

**(1)** Any U.S. or Canadian post office, express company, or national or state (or Canadian) chartered bank money order that is not paid upon presentation to the issuer; or

**(2)** Counterfeit United States or Canadian paper currency;

in exchange for merchandise, "money" or services or as part of a normal business transaction.

The most we will pay for any loss under this Additional Coverage is $1,000.

**k.** **Forgery and Alteration**

**(1)** We will pay for loss resulting directly from forgery or alteration of, any check, draft, promissory note, bill of exchange or similar written promise of payment in "money," that you or your agent has issued, or that was issued by someone who impersonates you or your agent.

**(2)** If you are sued for refusing to pay the check, draft, promissory note, bill of exchange or similar written promise of payment in "money," on the basis that it has been

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

forged or altered, and you have our written consent to defend against the suit, we will pay for any reasonable legal expenses that you incur in that defense.

(3) The most we will pay for any loss, including legal expenses, under this Additional Coverage is $2,500.

### I. Civil Authority

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.

The coverage for Business Income will begin 72 hours after the time of that action and will apply for a period of up to three consecutive weeks after coverage begins.

The coverage for necessary Extra Expense will begin immediately after the time of that action and ends:

(1) 3 consecutive weeks after the time of that action; or

(2) When your Business Income coverage ends;

whichever is later.

The definitions of Business Income and Extra Expense contained in the Business Income and Extra Expense Additional Coverages also apply to this Civil Authority Additional Coverage. The Civil Authority Additional Coverage is not subject to the Limits of Insurance.

### 6. Coverage Extensions

In addition to the Limits of Insurance, you may extend the insurance provided by this policy as provided below.

Except as otherwise provided, the following Extensions apply to property located in or on the building described in the Declarations or in the open (or in a vehicle) within 100 feet of the described premises.

### a. Personal Property at Newly Acquired Premises

(1) You may extend the insurance that applies to Business Personal Property to apply to that property at any premises you acquire.

The most we will pay for loss or damage under this Extension is $100,000 at each premises.

(2) Insurance under this Extension for each newly acquired premises will end when any of the following first occurs:

(a) This policy expires;

(b) 30 days expire after you acquire or begin construction at the new premises; or

(c) You report values to us.

We will charge you additional premium for values reported from the date you acquire the premises.

### b. Personal Property Off Premises

You may extend the insurance that applies to Business Personal Property to apply to covered Business Personal Property, other than money and securities, while it is in course of transit or temporarily at a premises you do not own, lease or operate. The most we will pay for loss or damage under this Extension is $10,000.

### c. Newly Acquired or Constructed Property

(1) You may extend the insurance that applies to Building to apply to:

(a) Your new buildings while being built on the described premises; and

(b) Buildings you acquire at locations other than the described premises, intended for:

(i) Similar use as the building described in the Declarations; or

(ii) Use as a warehouse.

The most we will pay for loss or damage under this Extension is $250,000 at each building.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

**(2)** You may extend the insurance that applies to your Business Personal Property to apply to that property at any location you acquire other than at fairs or exhibitions.

The most we will pay for loss or damage under this Extension is $100,000 at each building.

**d. Personal Effects and Property of Others**

You may extend the insurance that applies to Your Business Personal Property to apply to:

**(1)** Personal effects owned by you, your officers, your partners or your employees. This extension does not apply to loss or damage by theft.

**(2)** Personal property of others in your care, custody or control.

The most we will pay for loss or damage under this Extension is $2,500 at each described premises. Our payment for loss of or damage to personal property of others will only be for the account of the owner of the property.

**e. Outdoor Property**

You may extend the insurance provided by this policy to apply to your outdoor fences, radio and television antennas (including satellite dishes), signs (other than signs attached to buildings), trees, shrubs and plants, including debris removal expense, caused by or resulting from any of the following causes of loss:

**(1)** Fire;

**(2)** Lightning;

**(3)** Explosion;

**(4)** Riot or Civil Commotion; or

**(5)** Aircraft.

The most we will pay for loss or damage under this Extension is $1,000, but not more than $250 for any one tree, shrub or plant.

**f. Valuable Papers and Records—Cost of Research**

You may extend the insurance that applies to Business Personal Property to apply to your costs to research, replace or restore the lost information on lost or damaged valuable papers and records, including those which exist on electronic or magnetic media, for which duplicates do not exist. The most we will pay under this Extension is $1,000 at each described premises.

## B. EXCLUSIONS

1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Ordinance or Law**

The enforcement of any ordinance or law:

**(1)** Regulating the construction, use or repair of any property; or

**(2)** Requiring the tearing down of any property, including the cost of removing its debris.

This exclusion, Ordinance or Law, applies whether the loss results from:

**(1)** An ordinance or law that is enforced even if the property has not been damaged; or

**(2)** The increased costs incurred to comply with an ordinance or law in the course of construction, repair, renovation, remodeling or demolition of property or removal of its debris, following a physical loss to that property.

**b. Earth Movement**

**(1)** Any earth movement (other than sinkhole collapse), such as an earthquake, landslide, mine subsidence or earth sinking, rising or shifting. But if earth movement results in fire or explosion, we will pay for the loss or damage caused by that fire or explosion.

**(2)** Volcanic eruption, explosion or effusion. But if volcanic eruption, explosion or effusion results in fire, building glass breakage or volcanic action, we will pay for the loss or damage caused by that fire, building glass breakage or volcanic action.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

Volcanic action means direct loss or damage resulting from the eruption of a volcano when the loss or damage is caused by:

(a) Airborne volcanic blast or airborne shock waves;

(b) Ash, dust, or particulate matter; or

(c) Lava flow.

All volcanic eruptions that occur within any 168-hour period will constitute a single occurrence.

Volcanic action does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss of or damage to Covered Property.

**c. Governmental Action**

Seizure or destruction of property by order of governmental authority.

But we will pay for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire would be covered under this policy.

**d. Nuclear Hazard**

Nuclear reaction or radiation, or radioactive contamination, however caused.

But if nuclear reaction or radiation, or radioactive contamination, results in fire, we will pay for the loss or damage caused by that fire.

**e. Power Failure**

The failure of power or other utility service supplied to the described premises, however caused, if the failure occurs away from the described premises.

But if failure of power or other utility service results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

**f. War and Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**g. Water**

(1) Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not;

(2) Mudslide or mudflow;

(3) Water that backs up or overflows from a sewer, drain or sump; or

(4) Water under the ground surface pressing on, or flowing or seeping through:

(a) Foundations, walls, floors or paved surfaces;

(b) Basements, whether paved or not; or

(c) Doors, windows or other openings.

But if Water, as described in **B.1.g.(1)** through **B.1.g.(4)**, results in fire, explosion or sprinkler leakage, we will pay for the loss or damage caused by that fire, explosion or sprinkler leakage.

2. We will not pay for loss or damage caused by or resulting from any of the following:

**a. Electrical Apparatus**

Except as provided in the additional coverage for equipment breakdown, artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires.

But if artificially generated electrical current results in fire, we will pay for the loss or damage caused by fire.

**b. Consequential Losses**

Delay, loss of use or loss of market.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

c.  **Smoke, Vapor, Gas**

Smoke, vapor or gas from agricultural smudging or industrial operations.

d.  **Steam Apparatus**

Except as provided in the additional coverage for equipment breakdown, explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by you, or operated under your control. But if explosion of steam boilers, steam pipes, steam engines or steam turbines results in fire or combustion explosion, we will pay for the loss or damage caused by that fire or combustion explosion. We will also pay for loss or damage caused by or resulting from the explosion of gases or fuel within the furnace of any fired vessel or within the flues or passages through which the gases of combustion pass.

e.  **Frozen Plumbing**

Water, other liquids, powder or molten material that leaks or flows from plumbing, heating, air conditioning or other equipment (except fire protective systems) caused by or resulting from freezing, unless:

(1) You do your best to maintain heat in the building or structure; or

(2) You drain the equipment and shut off the supply if the heat is not maintained.

f.  **Dishonesty**

Dishonest or criminal acts by you, any of your partners, employees, directors, trustees, authorized representatives or anyone to whom you entrust the property for any purpose:

(1) Acting alone or in collusion with others; or

(2) Whether or not occurring during the hours of employment.

This exclusion does not apply to acts of destruction by your employees; but theft by employees is not covered.

g.  **False Pretense**

Voluntary parting with any property by you or anyone else to whom you have entrusted the property if induced to do so by any fraudulent scheme, trick, device or false pretense.

h.  **Exposed Property**

Rain, snow, ice or sleet to personal property in the open.

i.  **Collapse**

Collapse, except as provided in the Additional Coverage for Collapse. But if collapse results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

j.  **Pollution**

We will not pay for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release or escape of "pollutants" unless the discharge, dispersal, seepage, migration, release or escape is itself caused by any of the "specified causes of loss." But if the discharge, dispersal, seepage, migration, release or escape of "pollutants" results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."

k.  **Other Types of Loss**

(1) Wear and tear;

(2) Rust, corrosion, fungus, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

(3) Smog;

(4) Settling, cracking, shrinking or expansion;

(5) Nestling or infestation, or discharge or release of waste products or secretions, by insects, birds, rodents or other animals;

(6) Except as provided in the additional coverage for equipment breakdown, mechanical breakdown, including rupture or bursting caused by centrifugal force; or

(7) The following causes of loss to personal property:

(a) Dampness or dryness of atmosphere;

(b) Changes in or extremes of temperature; or

(c) Marring or scratching.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

But if an excluded cause of loss that is listed in **B.2.k.(1)** through **B.2.k.(7)** results in a "specified cause of loss," accident or building glass breakage, we will pay for the loss or damage caused by that "specified cause of loss," accident or building glass breakage.

3. We will not pay for loss or damage caused by or resulting from any of the following **B.3.a.** through **B.3.c.** But if an excluded cause of loss that is listed in **B.3.a.** through **B.3.c.** results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss.

   a. **Weather Conditions**

      Weather conditions. But this exclusion only applies if weather conditions contribute in any way with a cause or event excluded in paragraph **1.** above to produce the loss or damage.

   b. **Acts or Decisions**

      Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.

   c. **Negligent Work**

      Faulty, inadequate or defective:

      (1) Planning, zoning, development, surveying, siting;

      (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction;

      (3) Materials used in repair, construction, renovation or remodeling; or

      (4) Maintenance;

      of part or all of any property on or off the described premises.

4. **Business Income and Extra Expense Exclusions**

   We will not pay for:

   a. Any Extra Expense, or increase of Business Income loss, caused by or resulting from:

      (1) Delay in rebuilding, repairing or replacing the property or resuming "operations," due to interference at the location of the rebuilding, repair or replacement by strikers or other persons; or

      (2) Suspension, lapse or cancellation of any license, lease or contract. But if the suspension, lapse or cancellation is directly caused by the suspension of "operations," we will cover such loss that affects your Business Income during the "period of restoration."

   b. Any other consequential loss.

## C. LIMITS OF INSURANCE

1. The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations.

2. The most we will pay for loss of or damage to outdoor signs attached to buildings is $1,000 per sign in any one occurrence.

3. The limits applicable to the Coverage Extensions and the Fire Department Service Charge and Pollutant Clean Up and Removal Additional Coverages are in addition to the Limits of Insurance.

4. **Building Limit—Automatic Increase**

   a. The Limit of Insurance for Buildings will automatically increase by the annual percentage shown in the Declarations.

   b. The amount of increase will be:

      (1) The Building limit that applied on the most recent of the policy inception date, the policy anniversary date, or any other policy change amending the Building limit, times

      (2) The percentage of annual increase shown in the Declarations, expressed as a decimal (example: 8% is .08), times

      (3) The number of days since the beginning of the current policy year of the effective date of the most recent policy change amending the Building limit, divided by 365.

   Example:

   If:  The applicable Building limit is $100,000. The annual percentage increase is 8%. The number of days since the beginning of the policy year (or last policy change) is 146.

   The amount of increase is
   $100,000 x .08 x 146 ÷ 365 = $3,200.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

5. **Business Personal Property Limit—Seasonal Increase**

   a. The Limit of Insurance for Business Personal Property will automatically increase by 25% to provide for seasonal variations.

   b. This increase will apply only if the Limit of Insurance shown for Business Personal Property in the Declarations is at least 100% of your average monthly values during the lesser of:

      (1) The 12 months immediately preceding the date the loss or damage occurs; or

      (2) The period of time you have been in business as of the date the loss or damage occurs.

## D. DEDUCTIBLES

1. We will not pay for loss or damage in any one occurrence until the amount of loss or damage exceeds the Deductible shown in the Declarations. We will then pay the amount of loss or damage in excess of the Deductible up to the applicable Limit of Insurance.

2. Regardless of the amount of the Deductible, the most we will deduct from any loss or damage under all of the following Optional Coverages in any one occurrence is the Optional Coverage Deductible shown in the Declarations:

   a. Money and Securities;

   b. Employee Dishonesty;

   c. Exterior Glass;

   d. Interior Glass; and

   e. Outdoor Signs.

   But this Optional Coverage Deductible will not increase the Deductible shown in the Declarations. This Deductible will be used to satisfy the requirements of the Deductible in the Declarations.

3. No deductible applies to the following Additional Coverages:

   a. Fire Department Service Charge;

   b. Business Income;

   c. Extra Expense; and

   d. Civil Authority.

## E. PROPERTY LOSS CONDITIONS

1. **Abandonment**

   There can be no abandonment of any property to us.

2. **Appraisal**

   If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

   a. Pay its chosen appraiser; and

   b. Bear the other expenses of the appraisal and umpire equally.

   If there is an appraisal, we will still retain our right to deny the claim.

3. **Duties in the Event of Loss or Damage**

   a. You must see that the following are done in the event of loss or damage to Covered Property:

      (1) Notify the police if a law may have been broken.

      (2) Give us prompt notice of the loss or damage. Include a description of the property involved.

      (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

      (4) Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim. This will not increase the Limit of Insurance.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss. Also, if feasible, set the damaged property aside and in the best possible order for examination.

(5) At our request, give us complete inventories of the damaged and undamaged property. Include quantities, costs, values and amount of loss claimed.

(6) As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

(7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 60 days after our request. We will supply you with the necessary forms.

(8) Cooperate with us in the investigation or settlement of the claim.

(9) Resume all or part of your "operations" as quickly as possible.

b. We may examine any insured under oath, while not in the presence of any other insured and at such times as may be reasonably required, about any matter relating to this insurance or the claim, including an insured's books and records. In the event of an examination, an insured's answers must be signed.

4. **Legal Action Against Us**

No one may bring a legal action against us under this insurance unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

5. **Limitation—Electronic Media and Records**

We will not pay for any loss of Business Income caused by direct physical loss of or damage to Electronic Media and Records after the longer of:

a. 60 consecutive days from the date of direct physical loss or damage; or

b. The period, beginning with the date of direct physical loss or damage, necessary to repair, rebuild or replace with reasonable speed and similar quality, other property at the described premises due to loss or damage caused by the same occurrence.

Electronic Media and Records are:

(1) Electronic data processing, recording or storage media such as films, tapes, discs, drums or cells;

(2) Data stored on such media; or

(3) Programming records used for electronic data processing or electronically controlled equipment.

Example No. 1:

A Covered Cause of Loss damages a computer on June 1. It takes until September 1 to replace the computer, and until October 1 to restore the data that was lost when the damage occurred. We will only pay for the Business Income loss sustained during the period June 1 – September 1. Loss during the period September 2 – October 1 is not covered.

Example No. 2:

A Covered Cause of Loss results in the loss of data processing programming records on August 1. The records are replaced on October 15. We will only pay for the Business Income loss sustained during the period August 1 – September 29 (60 consecutive days). Loss during the period September 30 – October 15 is not covered.

6. **Loss Payment**

In the event of loss or damage covered by this policy:

a. At our option, we will either:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

(1) Pay the value of lost or damaged property;

(2) Pay the cost of repairing or replacing the lost or damaged property;

(3) Take all or any part of the property at an agreed or appraised value; or

(4) Repair, rebuild or replace the property with other property of like kind and quality, subject to **d.(1)(e)** below.

b. We will give notice of our intentions within 30 days after we receive the sworn proof of loss.

c. We will not pay you more than your financial interest in the Covered Property.

d. Except as provided in **(2)** through **(7)** below, we will determine the value of Covered Property as follows:

(1) At replacement cost without deduction for depreciation, subject to the following:

(a) If, at the time of loss, the Limit of Insurance on the lost or damaged property is 80% or more of the full replacement cost of the property immediately before the loss, we will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:

(i) The Limit of Insurance under this policy that applies to the lost or damaged property;

(ii) The cost to replace, on the same premises, the lost or damaged property with other property;

i.   Of comparable material and quality; and

ii.  Used for the same purpose; or

(iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property;

(b) If, at the time of loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

(i) The actual cash value of the lost or damaged property;

(ii) A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the cost of repair or replacement; or

(iii) The amount that you actually spend to repair or replace the lost or damaged property.

(c) You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis. In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim on a replacement cost basis if you notify us of your intent to do so within 180 days after the loss or damage.

(d) **We will not pay on a replacement cost basis for any loss or damage:**

(i) Until the lost or damaged property is actually repaired or replaced; and

(ii) Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(e) The cost to repair, rebuild or replace does not include the increased cost attributable to enforcement of any ordinance or law regulating the construction, use or repair of any property.

(2) If the "Actual Cash Value—Buildings" option applies, as shown in the Declarations, paragraph **(1)** above does not apply to Buildings. Instead, we will determine the value of Buildings at actual cash value.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

(3) The following property at actual cash value:

    (a) Used or second-hand merchandise held in storage or for sale;

    (b) Property of others;

    (c) Household contents, except personal property in apartments or rooms furnished by you as landlord;

    (d) Manuscripts;

    (e) Works of art, antiques or rare articles, including etchings, pictures, statuary, marbles, bronzes, porcelains and bric-a-brac.

(4) Glass at the cost of replacement with safety glazing material if required by law.

(5) Tenants' Improvements and Betterments at:

    (a) Replacement cost if you make repairs promptly.

    (b) A proportion of your original cost if you do not make repairs promptly. We will determine the proportionate value as follows:

        (i) Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

        (ii) Divide the amount determined in (I) above by the number of days from the installation of improvements to the expiration of the lease.

    If your lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure.

    (c) Nothing if others pay for repairs or replacement.

(6) Valuable Papers and Records, including those which exist on electronic or magnetic media (other than prepackaged software programs), at the cost of:

    (a) Blank materials for reproducing the records; and

    (b) Labor to transcribe or copy the records.

(7) Applicable only to the Optional Coverages:

    (a) "Money" at its face value; and

    (b) "Securities" at their value at the close of business on the day the loss is discovered.

e. Our payment for loss of or damage to personal property of others will only be for the account of the owners of the property. We may adjust losses with the owners of lost or damaged property if other than you. If we pay the owners, such payments will satisfy your claims against us for the owners' property. We will not pay the owners more than their financial interest in the Covered Property.

f. We may elect to defend you against suits arising from claims of owners of property. We will do this at our expense.

g. We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, provided you have complied with all of the terms of this policy, and

    (1) We have reached agreement with you on the amount of loss; or

    (2) An appraisal award has been made.

**7. Recovered Property**

If either you or we recover any property after loss settlement, that party must give the other prompt notice. At your option, you may retain the property. But then you return to us the amount we paid to you for the property. We will pay recovery expenses and the expenses to repair the recovered property, subject to the Limit of Insurance.

**8. Resumption of Operations**

We will reduce the amount of your:

a. Business income loss, other than Extra Expense, to the extent you can resume your "operations," in whole or in part, by using damaged or undamaged property (including merchandise or stock) at the described premises or elsewhere.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

b. Extra Expense loss to the extent you can return "operations" to normal and discontinue such Extra Expense.

9. **Vacancy**

a. Description of Terms

(1) As used in the Vacancy Condition, the term building and the term vacant have the meanings set forth in **(1)(a)** and **(1)(b)** below:

(a) When this policy is issued to a tenant, and with respect to that tenant's interest in Covered Property, building means the unit or suite rented or leased to the tenant. Such building is vacant when it does not contain enough business personal property to conduct customary operations.

(b) When this policy is issued to the owner of a building, building means the entire building. Such building is vacant when 70% or more of its total square footage:

(i) Is not rented; or

(ii) Is not used to conduct customary operations.

(2) Buildings under construction or renovation are not considered vacant.

b. Vacancy Provisions

If the building where loss or damage occurs has been vacant for more than 60 consecutive days before that loss or damage occurs:

(1) We will not pay for any loss or damage caused by any of the following even if they are Covered Causes of Loss:

(a) Vandalism;

(b) Sprinkler leakage, unless you have protected the system against freezing;

(c) Building glass breakage;

(d) Water damage;

(e) Theft; or

(f) Attempted theft.

(2) With respect to Covered Causes of Loss other than those listed in **b.(1)(a)** through **b.(1)(f)** above, we will reduce the amount we would otherwise pay for the loss or damage by 15%.

---

## F. PROPERTY GENERAL CONDITIONS

---

1. **Control of Property**

Any act or neglect of any person other than you beyond your direction or control will not affect this insurance.

The breach of any condition of this Coverage Form at any one or more locations will not affect coverage at any location where, at the time of loss or damage, the breach of condition does not exist.

2. **Mortgageholders**

a. The term "mortgageholder" includes trustee.

b. We will pay for covered loss of or damage to buildings or structures to each mortgageholder shown in the Declarations in their order of precedence, as interests may appear.

c. The mortgageholder has the right to receive loss payment even if the mortgageholder has started foreclosure or similar action on the building or structure.

d. If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

(1) Pays any premium due under this policy at our request if you have failed to do so;

(2) Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and

(3) Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

All of the terms of this policy will then apply directly to the mortgageholder.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

e.  If we pay the mortgageholder for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this policy:

(1)  The mortgageholder's rights under the mortgage will be transferred to us to the extent of the amount we pay; and

(2)  The mortgageholder's right to recover the full amount of the mortgageholder's claim will not be impaired.

At our option, we may pay to the mortgageholder the whole principal on the mortgage plus any accrued interest. In this event, your mortgage and note will be transferred to us and you will pay your remaining mortgage debt to us.

f.  If we cancel this policy, we will give written notice to the mortgageholder at least:

(1)  10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

(2)  30 days before the effective date of cancellation if we cancel for any other reason.

g.  If we elect not to renew this policy, we will give written notice to the mortgageholder at least 10 days before the expiration date of this policy.

### 3. No Benefit to Bailee

No person or organization, other than you, having custody of Covered Property will benefit from this insurance.

### 4. Policy Period, Coverage Territory

Under this form:

a.  We cover loss or damage commencing:

(1)  During the policy period shown in the Declarations; and

(2)  Within the coverage territory or, with respect to property in transit, while it is between points in the coverage territory.

b.  The coverage territory is:

(1)  The United States of America (including its territories and possessions);

(2)  Puerto Rico; and

(3)  Canada.

### G. OPTIONAL COVERAGES

If shown as applicable in the Declarations, the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to property coverage in this policy, except as provided below.

1.  **Outdoor Signs**

a.  We will pay for direct physical loss of or damage to all outdoor signs at the described premises:

(1)  Owned by you; or

(2)  Owned by others but in your care, custody or control.

b.  Paragraph **A.3.**, Covered Causes of Loss, and Section **B.**, Exclusions, do not apply to this Optional Coverage, except for:

(1)  Paragraph **B.1.c.**, Governmental Action;

(2)  Paragraph **B.1.d.**, Nuclear Hazard; and

(3)  Paragraph **B.1.f.**, War and Military Action.

c.  We will not pay for loss or damage caused by or resulting from:

(1)  Wear and tear;

(2)  Hidden or latent defect;

(3)  Rust;

(4)  Corrosion; or

(5)  Mechanical breakdown.

d.  The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Outdoor Signs shown in the Declarations.

e.  The provisions of the Optional Coverage supersede all other references to outdoor signs in this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

2. **Exterior Glass**

a. We will pay for direct physical loss of or damage to glass that is part of the exterior of a covered building or structure at the described premises, including lettering, and ornamentation, provided the glass is:

(1) On the basement or ground floor level of the building or structure, unless the Declarations show that this Optional Coverage is applicable to exterior glass on all floors; and

(2) Owned by you, or owned by others but in your care, custody or control.

b. We will also pay for necessary:

(1) Expenses incurred to put up temporary plates or board up openings;

(2) Repair or replacement of encasing frames; and

(3) Expenses incurred to remove or replace obstructions.

c. Paragraph **A.3.**, Covered Causes of Loss, and Section **B.**, Exclusions, do not apply to this Optional Coverage, except for:

(1) Paragraph **B.1.c.**, Governmental Action;

(2) Paragraph **B.1.d.**, Nuclear Hazard; and

(3) Paragraph **B.1.f.**, War and Military Action.

d. We will not pay for loss or damage caused by or resulting from:

(1) Wear and tear;

(2) Hidden or latent defect;

(3) Corrosion; or

(4) Rust.

e. This Optional Coverage supersedes all limitations in this policy that apply to exterior glass.

3. **Interior Glass**

a. We will pay for direct physical loss of or damage to items of glass that are permanently affixed to the interior walls, floors or ceilings of a covered building or structure at the described premises, provided each item is:

(1) Described in the Declarations as covered under this Optional Coverage; and

(2) Located in the basement or ground floor level of the building or structure, unless the Declarations show that this Optional Coverage is applicable to interior glass at all floors; and

(3) Owned by you, or owned by others but in your care, custody or control.

b. We will also pay for necessary:

(1) Expenses incurred to put up temporary plates or board up openings;

(2) Repair or replacement of encasing frames; and

(3) Expenses incurred to remove or replace obstructions.

c. Paragraph **A.3.**, Covered Causes of Loss, and Section **B.**, Exclusions, do not apply to this Optional Coverage, except for:

(1) Paragraph **B.1.c.**, Governmental Action;

(2) Paragraph **B.1.d.**, Nuclear Hazard; and

(3) Paragraph **B.1.f.**, War and Military Action.

d. We will not pay for loss or damage caused by or resulting from:

(1) Wear and tear;

(2) Hidden or latent defect;

(3) Corrosion; or

(4) Rust.

e. This Optional Coverage supersedes all limitations in this policy that apply to interior glass.

4. **Money and Securities**

a. We will pay for loss of "money" and "securities" used in your business while at a bank or savings institution, within your living quarters or the living quarters of your partners or any employee having use and custody of the property, at the described premises, or in transit between any of these places, resulting directly from:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

**(1)** Theft, meaning any act of stealing;

**(2)** Disappearance; or

**(3)** Destruction.

**b.** In addition to the Limitations and Exclusions applicable to property coverage, we will not pay for loss:

**(1)** Resulting from accounting or arithmetical errors or omissions;

**(2)** Due to the giving or surrendering of property in any exchange or purchase; or

**(3)** Of property contained in any "money"-operated device unless the amount of "money" deposited in it is recorded by a continuous recording instrument in the device.

**c.** The most we will pay for loss in any one occurrence is:

**(1)** The limit shown in the Declarations for Inside the Premises for "money" and "securities" while:

**(a)** In or on the described premises; or

**(b)** Within a bank or savings institution; and

**(2)** The limit shown in the Declarations for Outside the Premises for "money" and "securities" while anywhere else.

**d.** All loss:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of related acts;

is considered one occurrence.

**e.** You must keep records of all "money" and "securities" so we can verify the amount of any loss or damage.

**5. Employee Dishonesty**

**a.** We will pay for direct loss of or damage to Business Personal Property and "money" and "securities" resulting from dishonest acts committed by any of your employees acting alone or in collusion with other persons (except you or your partner) with the manifest intent to:

**(1)** Cause you to sustain loss or damage; and also

**(2)** Obtain financial benefit (other than salaries, commissions, fees, bonuses, promotions, awards, profit sharing, pensions or other employee benefits earned in the normal course of employment) for:

**(a)** Any employee; or

**(b)** Any other person or organization.

**b.** We will not pay for loss or damage:

**(1)** Resulting from any dishonest or criminal act that you or any of your partners commit whether acting alone or in collusion with other persons.

**(2)** The only proof of which as to its existence or amount is:

**(a)** An inventory computation; or

**(b)** A profit and loss computation.

**c.** The most we will pay for loss or damage in any one occurrence is the Limit of Insurance for Employee Dishonesty shown in the Declarations.

**d.** All loss or damage:

**(1)** Caused by one or more persons; or

**(2)** Involving a single act or series of related acts;

is considered one occurrence.

**e.** We will pay only for loss or damage you sustain through acts committed or events occurring during the Policy Period. Regardless of the number of years this policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

**f.** This Optional Coverage does not apply to any employee immediately upon discovery by:

**(1)** You; or

**(2)** Any of your partners, officers or directors not in collusion with the employee,

of any dishonest act committed by that employee before or after being hired by you.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

g. We will pay only for covered loss or damage discovered no later than one year from the end of the Policy Period.

h. If you (or any predecessor in interest) sustained loss or damage during the period of any prior insurance that you could have recovered under that insurance except that the time within which to discover loss or damage had expired, we will pay for it under this Optional Coverage, provided:

(1) This Optional Coverage became effective at the time of cancellation or termination of the prior insurance; and

(2) The loss or damage would have been covered by this Optional Coverage had it been in effect when the acts or events causing the loss or damage were committed or occurred.

i. The insurance under paragraph **h.** above is part of, not in addition to, the Limit of Insurance applying to this Optional Coverage and is limited to the lesser of the amount recoverable under:

(1) This Optional Coverage as of its effective date; or

(2) The prior insurance had it remained in effect.

## H. PROPERTY DEFINITIONS

1. **"Money"** means:

a. Currency, coins and bank notes in current use and having a face value; and

b. Travelers checks, register checks and money orders held for sale to the public.

2. **"Operations"** means your business activities occurring at the described premises.

3. **"Period of Restoration"** means the period of time that:

a. Begins:

(1) 72 hours after the time of direct physical loss or damage for Business Income coverage; or

(2) Immediately after the time of direct physical loss or damage for Extra Expense coverage;

caused by or resulting from any Covered Cause of Loss at the described premises; and

b. Ends on the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that:

(1) Regulates the construction, use or repair, or requires the tearing down of any property; or

(2) Requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants."

The expiration date of this policy will not cut short the "period of restoration."

4. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

5. **"Securities"** means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

a. Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and

b. Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;

but does not include "money."

6. **"Specified Causes of Loss"** means the following:

Fire; lightning; explosion, windstorm or hail; smoke; aircraft or vehicles; riot or civil commotion; vandalism; leakage from fire extinguishing equipment;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

sinkhole collapse; volcanic action; falling objects; weight of snow, ice or sleet; water damage.

a.  Sinkhole collapse means the sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This cause of loss does not include:

   (1)  The cost of filling sinkholes; or

   (2)  Sinking or collapse of land into man-made underground cavities.

b.  Falling objects does not include loss of or damage to:

   (1)  Personal property in the open; or

   (2)  The interior of a building or structure, or property inside a building or structure, unless the roof or an outside wall of the building or structure is first damaged by a falling object.

c.  Water damage means accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of any part of a system or appliance (other than a sump system including its related equipment and parts) containing water or steam.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1996

 **Scottsdale Insurance Company** °

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 | NOON | | |
| OPS000607 | 07 | 01 | 97 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## SPECIAL PROPERTY CONDITIONS

The following Conditions are added to the SPECIAL PROPERTY COVERAGE FORM:

### CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void in any case of fraud by you as it relates to this policy at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This Coverage Form;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

### INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

### LIBERALIZATION

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this Coverage Form.

### OTHER INSURANCE

If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insur-

ance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

### TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

1. Prior to a loss to your Covered Property.

2. After loss to your Covered Property only if, at time of loss, that party is one of the following:

   a. Someone insured by this insurance;

   b. A business firm:

      (1) Owned or controlled by you; or

      (2) That owns or controls you; or

   c. Your tenant.

You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers.

This will not restrict your insurance.

AUTHORIZED REPRESENTATIVE  DATE

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
Copyright, Insurance Services Office, Inc., 1989

CFS-NEG-P-2 (10-96)

SCOTTSDALE INSURANCE COMPANY®

## SPECIAL PROPERTY COVERAGE PART
## SUPPLEMENTAL DECLARATIONS

These Supplemental Declarations form a part of policy number _____ OPS000607 _____

### DESCRIPTION OF PREMISES

| Prem. No. | Bldg. No. | Location, Construction and Occupancy | Mortgage Holder Name and Address |
|---|---|---|---|
| 1 | 1 | 20201 NW 37th Avenue, Miami, FL 33056 | |
| 1 | 2 | 20201 NW 37th Avenue, Miami, FL 133 | |
| 1 | 3 | 20201 NW 37th Avenue, Miami, FL | |

### PROPERTY COVERAGE LIMITS OF INSURANCE

| | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. |
|---|---|---|---|---|---|---|
| | 1 | 1 | 1 | 2 | 1 | 2 3 |
| Buildings | $ 10,000. | | $ 10,000. | | $ 10,000. | |
| • Actual Cash Value—Buildings Option (Y/N) | N | | N | | N | |
| • Automatic Increase—Building Limit (pct.) | | % | | % | | % |
| BUSINESS PERSONAL PROPERTY | $ 5,000. | | $ 5,000. | | $ 5,000. | |

### DEDUCTIBLE

$ __ 1,000 Building Coverage __          $500. Personal Property

### OPTIONAL COVERAGE—Applicable only if an "X" is shown in the boxes below:

|  | Limits of Insurance |
|---|---|
| 1. ☐ Outdoor Signs | $     per occurrence |
| 2. ☐ Exterior Grade Floor Glass | Included |
| 3. ☐ Money and Securities | $     Inside the Premises |
| | $     Outside the Premises |
| 4. ☒ Employee Dishonesty | $ 100,000. per occurrence |
| 5. ☐ Other (specify) _____ | |

### FORMS APPLICABLE

See Schedule of Forms and Endorsements

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMON POLICY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S), AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

CFS-NEG-SD-1 (10-96)

## Scottsdale Insurance Company

**Endorsement No. 1**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 NOON A.M. | | |
| OPS000607 | 07 | 01 | 97 | X | Lock Towns Comm. MH Center | J. J. Negley 295018 |

### DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location, Construction and Occupancy | Mortgage Holder Name and Address |
|---|---|---|---|
| 1 | 4 | 20201 NW 37th Ave., Miami, FL | |
| 1 | 5 | 20201 NW 37th Ave., Miami, FL | |
| 1 | 6 | 20201 NW 37th Ave., Miami, FL | |
| 1 | 7 | 20201 NW 37th Ave., Miami, FL | |
| 1 | 8 | 20201 NW 37th Ave., Miami, FL | |
| 1 | 9 | 20201 NW 37th Ave., Miami, FL | |

### PROPERTY COVERAGE LIMITS OF INSURANCE

| | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. |
|---|---|---|---|---|---|---|
| | 1 | 4 | 1 | 5 | 1 | 6 |
| Buildings | $ 10,000 | | $ 10,000 | | $ 10,000 | |
| Actual Cash Value-Buildings Option (Y/N) | N | | N | | N | |
| Automatic Increase-Building Limit (pct.) | | % | | % | | % |
| BUSINESS PERSONAL PROPERTY | $ 5,000 | | $ 5,000 | | $ 5,000 | |

### PROPERTY COVERAGE LIMITS OF INSURANCE

| | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. |
|---|---|---|---|---|---|---|
| | 1 | 7 | 1 | 8 | 1 | 9 |
| Buildings | $ 10,000 | | $ 20,000 | | $ 20,000 | |
| Actual Cash Value-Buildings Option (Y/N) | N | | N | | N | |
| Automatic Increase-Building Limit (pct.) | | % | | % | | % |
| BUSINESS PERSONAL PROPERTY | $ 5,000 | | $ 10,000 | | $ 10,000 | |

# Scottsdale Insurance Company

**Endorsement No. 2**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| OPS000607 | 07 | 01 | 97 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295018 |

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location, Construction and Occupancy | Mortgage Holder Name and Address |
|---|---|---|---|
| 1 | 10 | 20201 NW 37th Ave., N., Miami, FL | |
| 1 | 11 | 20201 NW 37th Ave., N., Miami, FL | |
| 2 | 1 | 14950-52 NE 11th Ave., Miami, FL | |
| 3 | 1 | 1075 NE 149th St., Miami, FL | |
| 4 | 1 | 15055 NW 37th Ave., Miami, FL | |
| 5 | 1 | 1301 NE 111th St., N., Miami, FL | |

## PROPERTY COVERAGE LIMITS OF INSURANCE

| | Prem. No. 1 | Bldg. No. 10 | Prem. No. 1 | Bldg. No. 11 | Prem. No. 2 | Bldg. No. 1 |
|---|---|---|---|---|---|---|
| Buildings | $ 250,000 | | $ 450,000 | | $ 203,000 | |
| Actual Cash Value-Buildings Option (Y/N) | N | | N | | N | |
| Automatic Increase-Building Limit (pct.) | | % | | % | | % |
| BUSINESS PERSONAL PROPERTY | $ 50,000 | | $ 150,000 | | $ ---- | |

## PROPERTY COVERAGE LIMITS OF INSURANCE

| | Prem. No. 3 | Bldg. No. 1 | Prem. No. 4 | Bldg. No. 1 | Prem. No. 5 | Bldg. No. 1 |
|---|---|---|---|---|---|---|
| Buildings | $ 203,000 | | $ 1,650,000 | | $ 175,000 | |
| Actual Cash Value-Buildings Option (Y/N) | N | | N | | N | |
| Automatic Increase-Building Limit (pct.) | | % | | % | | % |
| BUSINESS PERSONAL PROPERTY | $ ---- | | $ 200,000 | | $ ---- | |

**Scottsdale Insurance Company**

**No.** 3

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| OPS000607 | 07 | 01 | 97 | X (A.M.) | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295018 |

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location. Construction and Occupancy | Mortgage Holder Name and Address |
|---|---|---|---|
| 6 | 1 | 1000 SW 84th Ave., Hollywood, FL | |
| 6 | 2 | 1000 SW 84th Ave., Hollywood, FL | |
| 7 | 1 | 11 NW 135th St., Hollywood, FL | |
| 8 | 1 | 16690-92 NE 18th Ave, N., Miami, FL | |
| 9 | 1 | 11115 NE 13th Ave., N., Miami, FL | |
| 10 | 1 | 480 NW 123rd St., Miami, FL | |

## PROPERTY COVERAGE LIMITS OF INSURANCE

| | Prem. No. 6 | Bldg. No. 1 | Prem. No. 6 | Bldg. No. 2 | Prem. No. 7 | Bldg. No. 1 |
|---|---|---|---|---|---|---|
| Buildings | $ --- | | $ --- | | $ 120,000 | |
| Actual Cash Value-Buildings Option (Y/N) | N | | N | | N | |
| Automatic Increase-Building Limit (pct.) | | % | | % | | % |
| BUSINESS PERSONAL PROPERTY | $ 160,000 | | $ 250,000 | | $ --- | |

## PROPERTY COVERAGE LIMITS OF INSURANCE

| | Prem. No. 8 | Bldg. No. 1 | Prem. No. 9 | Bldg. No. 1 | Prem. No. 10 | Bldg. No. 1 |
|---|---|---|---|---|---|---|
| Buildings | $ 120,000 | | $ 175,000 | | $ 115,000 | |
| Actual Cash Value-Buildings Option (Y/N) | N | | N | | N | |
| Automatic Increase-Building Limit (pct.) | | % | | % | | % |
| BUSINESS PERSONAL PROPERTY | $ --- | | $ --- | | $ --- | |

# Scottsdale Insurance Company

Endorsement No. 4

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| OPS000607 | 07 | 01 | 97 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley 295018 |

## DESCRIPTION OF PREMISES

| Prem No. | Bldg. No. | Location, Construction and Occupancy | Mortgage Holder Name and Address |
|---|---|---|---|
| 11 | 1 | 2351 NW 135th, N. Miami, FL | |
| 12 | 1 | 1095 NE 149th St., N. Miami, FL | |

## PROPERTY COVERAGE LIMITS OF INSURANCE

| | Prem. No. 11 | Bldg. No. 1 | Prem. No. 12 | Bldg. No. 1 | Prem. No. | Bldg. No. |
|---|---|---|---|---|---|---|
| Buildings | $ 1,081,000 | | $ 98,000 | | $ | |
| Actual Cash Value-Buildings Option (Y/N) | N | | N | | | |
| Automatic Increase-Building Limit (pct.) | | % | | % | | % |
| BUSINESS PERSONAL PROPERTY | $ 25,000. | | $ --- | | $ | |

## PROPERTY COVERAGE LIMITS OF INSURANCE

| | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. | Prem. No. | Bldg. No. |
|---|---|---|---|---|---|---|
| Buildings | $ | | $ | | $ | |
| Actual Cash Value-Buildings Option (Y/N) | | | | | | |
| Automatic Increase-Building Limit (pct.) | | % | | % | | % |
| BUSINESS PERSONAL PROPERTY | $ | | $ | | $ | |

POLICY NUMBER:    OPS000607
LOCK TOWNS COMMUNITY MENTAL HEALTH CENTER, INC.

COMMERCIAL PROPERTY
CP 10 54 06 95

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

ENDT. #5                                        EFF. 7/1/97

# WINDSTORM OR HAIL EXCLUSION

This endorsement modifies insurance provided under the following:

CAUSES OF LOSS - BASIC FORM
CAUSES OF LOSS - BROAD FORM
CAUSES OF LOSS - SPECIAL FORM
STANDARD PROPERTY POLICY

**A.** The following is added to the EXCLUSIONS section and is therefore **not** a Covered Cause of Loss:

**WINDSTORM OR HAIL**

We will not pay for loss or damage:

1. Caused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage; or

2. Caused by rain, snow, sand or dust, whether driven by wind or not, if that loss or damage would not have occurred but for the Windstorm or Hail.

   But if Windstorm or Hail results in a cause of loss other than rain, snow, sand or dust, and that resulting cause of loss is a Covered Cause of Loss, we will pay for the loss or damage caused by such Covered Cause of Loss. For example, if the Windstorm or Hail damages a heating system and fire results, the loss or damage attributable to the fire is covered subject to any other applicable policy provisions.

**B.** Under ADDITIONAL COVERAGE - COLLAPSE, in the Causes of Loss - Broad Form, Windstorm or Hail is deleted from paragraph a.(1).

**C.** In the Causes of Loss - Special Form, Windstorm or Hail is deleted from the "specified causes of loss".

**D.** Under ADDITIONAL COVERAGE EXTENSIONS - PROPERTY IN TRANSIT, in the Causes of Loss - Special Form, Windstorm or Hail is deleted from paragraph b.(1).

J.J. Negley Associates, Inc.
#295018
8/22/97 mk

| REG. DESK | CODING | O/W | FILE |
|-----------|--------|-----|------|
|           |        |     |      |

CP 10 54 06 95          Copyright, ISO Commercial Risk Services, Inc., 1994          Page 1 of 1

 SCOTTSDALE INSURANCE·COMPANY®

**ENDORSEMENT NO. 6**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| OPS000607 | 11 | 17 | 97 | X | | Lock Towns Community Mental Health Center, Inc. | J.J. Negley Assoc. 295018 |

Directors & Officers Liability Including Entity Reimbursement and Entity Liability Coverage Part is added to the above Policy, effective 11/17/97, per the following Forms:

|  |  |
|---|---|
| DES-SD-1 | (7/96) |
| DES-43 | (8/96) |
| DES-P-1 | (7/96) |
| DES-3 | (9/95) |

N99

LINDA LANE

DEC - 3 1997

| Additional Premium: | $3,361. |
|---|---|
| Surplus Lines Tax: | 168.05 |

| REG. DESK | CODING | | FILE |
|---|---|---|---|

_____          _____11/21/97_ mk
AUTHORIZED REPRESENTATIVE                              DATE

UTS-3g (3-92)

**Scottsdale Insurance Company®**

**DIRECTORS AND OFFICERS LIABILITY**
**INCLUDING ENTITY REIMBURSEMENT**
**AND ENTITY LIABILITY COVERAGE PART**
**SUPPLEMENTAL DECLARATIONS**
THIS IS A CLAIMS MADE COVERAGE PART.  PLEASE READ IT CAREFULLY.

These Supplemental Declarations form a part of policy number _____ OPS000607 _____

Retention:  $ ___1.000._____ Each LOSS and LOSS ADJUSTMENT EXPENSE.

Limit of Liability each POLICY PERIOD:      $ _____2,000,000._____

Premium:                                    $ _____Included_____

**FORMS AND ENDORSEMENTS (other than applicable forms and endorsements shown elsewhere in the policy)**

Forms and endorsements applying to this Coverage Part and made part of this policy at time of issue:

THIS SUPPLEMENTAL DECLARATIONS AND THE COMMERCIAL LIABILITY DECLARATIONS, TOGETHER WITH THE COMMON POLICY CONDITIONS, COVERAGE FORM(S) AND ENDORSEMENTS COMPLETE THE ABOVE NUMBERED POLICY.

DES-SD-1 (7-96)

 **Scottsdale Insurance Company**

**Endorsement No.**

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 A.M. | NOON | | |
| OPS000607 | 11 | 17 | 97 | X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295018 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## AMENDMENT OF DEFINITION OF INDIVIDUAL INSURED ENDORSEMENT

This endorsement modifies insurance provided under the following:

### DIRECTORS AND OFFICERS LIABILITY INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY

Section III. DEFINITIONS, (C) INDIVIDUAL INSURED is deleted in its entirety and is replaced by the following:

(C) INDIVIDUAL INSURED means any individual who was, now is, or becomes a DIRECTOR, OFFICER, trustee, employee, volunteer or committee member of the ENTITY or of a covered SUBSIDIARY, whether salaried or not, unless specifically excluded.

INDIVIDUAL INSURED also means the lawful spouse of a DIRECTOR or OFFICER of the ENTITY. Such spouse shall be an INDIVIDUAL INSURED only for actual or alleged WRONGFUL ACTS of the DIRECTOR or OFFICER for which they may be deemed liable as their spouse.

DES-43 (8-96)

AUTHORIZED REPRESENTATIVE

# DIRECTORS AND OFFICERS LIABILITY
# INCLUDING ENTITY REIMBURSEMENT
# AND ENTITY LIABILITY COVERAGE PART



## SCOTTSDALE INSURANCE COMPANY®

Scottsdale, Arizona
(A Stock Insurance Company, herein called Company)

**THIS IS A CLAIMS MADE COVERAGE PART. PLEASE READ THE ENTIRE FORM CAREFULLY.**

In consideration of the payment of the premium and subject to all of the terms, conditions and exclusions of this Coverage Part, the Company agrees with the **INDIVIDUAL INSURED(S)** and the **ENTITY** as follows:

## I.   INSURING AGREEMENTS

### COVERAGE

The Company will pay on behalf of the **INDIVIDUAL INSURED(S)** and/or the **ENTITY**, in accordance with the terms, conditions and exclusions of the Coverage Part, **LOSS** which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** shall become legally obligated to pay by reason of any claim or claims made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** as the result of a **WRONGFUL ACT**, provided always that the claim is first made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** during the **POLICY PERIOD**.

### DEFENSE

(A)   In addition to the Limit of Liability, the Company shall pay all applicable **LOSS ADJUSTMENT EXPENSE**.

(B)   The Company shall have the right and duty to defend, any claim or suit against any **INSURED** seeking damages which are payable under the terms of this Coverage Part, even if any of the allegations of the claim or suit are groundless, false or fraudulent. The Company shall have the right to make investigation, negotiation and settlement of any such claim.

(C)   No **LOSS ADJUSTMENT EXPENSE** shall be incurred nor settlements made without the Company's consent. The Company shall not be liable hereunder with respect to any settlements or **LOSS ADJUSTMENT EXPENSE** to which it has not consented.

(D)   The Company shall not be obligated to pay any **LOSS** or judgment or **LOSS ADJUSTMENT EXPENSE** or to defend or to continue to defend any suit after the applicable limit of the Company's liability has been exhausted by payment of **LOSS**.

## II.   EXTENSIONS

(A)   This Coverage Part, subject otherwise to the terms hereof, shall cover all **LOSS** and **LOSS ADJUSTMENT EXPENSE** arising from claims made against the estates, heirs, legal representatives or assigns of deceased persons who were **INDIVIDUAL INSURED(S)** at the time of the **WRONGFUL ACT** upon which such claims are based.

(B)   This Coverage Part shall automatically cover any **SUBSIDIARY** and the **INDIVIDUAL INSURED(S)** of those **SUBSIDIARIES** acquired or created after the inception of this Coverage Part subject to written notice being given to the Company within 30 days of the acquisition or creation of any **SUBSIDIARY**.

DES-P-1 (7-96)

## III.  DEFINITIONS

Whenever used in this Coverage Part, these words shall have the following meanings:

(A) **DIRECTOR** means any individual who was, now is, or becomes a member of the Board of Directors of the **ENTITY** in accordance with the provisions of the Articles of Incorporation or Bylaws of the **ENTITY**.

(B) **ENTITY** means the organization named in Item 1. of the Declarations and any covered **SUBSIDIARY** shown on the application.

(C) **INDIVIDUAL INSURED** means any individual who was, now is, or becomes a **DIRECTOR, OFFICER,** trustee, employee, volunteer or committee member of the **ENTITY** or of a covered **SUBSIDIARY**, whether salaried or not, unless specifically excluded.

(D) **INSURED** means the **ENTITY** and any **INDIVIDUAL INSURED(S)**.

(E) **LOSS** means any amount which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** are legally obligated to pay for any claim or claims made against them for **WRONGFUL ACTS,** and shall include but not be limited to judgments and settlements, provided always, however, such subject of **LOSS** shall not include fines or penalties imposed by law, or matters which may be deemed uninsurable under the law pursuant to which this Coverage Part shall be construed. **LOSS** does not include **LOSS ADJUSTMENT EXPENSE.**

(F) **LOSS ADJUSTMENT EXPENSE** means expenditures including, but not limited to, investigations, experts, adjustment services, legal services, court costs, and such other costs to the Company. **LOSS ADJUST- MENT EXPENSE** also means premium on appeal bonds required in any suit defended by the Company and the cost of attachment or similar bonds. **LOSS ADJUSTMENT EXPENSE** shall not include salaries, wages, overhead or benefit expenses associated with **DIRECTORS, OFFICERS,** trustees, employees, volunteers or committee members of the **ENTITY.**

(G) **OFFICER** means any individual who has, now does, or hereafter occupies a position specifically defined or described in the Bylaws as an **OFFICER** of the **EN-TITY,** and has been, or hereafter is elected to such position by the Board of Directors of the **ENTITY** in accordance with provisions of the Bylaws.

(H) **POLICY PERIOD** means the period of one year following the effective date and hour of this Policy, or if the time between the effective date and the termination of the Policy is less than one year, such lesser period.

(I) **SUBSIDIARY** means:

  (1)  any company in which more than 50% of the ownership is controlled by the **ENTITY**; or

  (2)  any organization whose board is controlled by the **ENTITY.**

(J) **WRONGFUL ACT** means any actual or alleged error or misstatement or misleading statement or act or omission or neglect or breach of duty by one or more of the **INSURED(S)** while acting within the scope of their individual or collective capacities, subject to the terms, conditions and limitations of this Coverage Part.

## IV.  EXCLUSIONS

The Company shall not be obligated to make any payment or defend any lawsuit in connection with any claim made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY**:

(A) for:

  (1)  false arrest, detention or imprisonment, or malicious prosecution;

  (2)  the publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy;

DES-P-1 (7-96)                                   Page 2 of 5

(3) wrongful entry or eviction, or other invasion of the right of private occupancy:

(B) based upon or attributable to the **INSURED(S)** gaining any personal profit or advantage to which they were not legally entitled;

(C) for claims for the return of remuneration illegally paid to the **INSURED(S)**;

(D) for an accounting of profits made from the purchase or sale by the **INSURED(S)** of securities of the **ENTITY** within the meaning of Section 16(b) of the Securities Exchange Act of 1934 and amendments thereto or similar provisions of any state statutory law or common law;

(E) based upon or attributable to the **INSURED(S)** having acted dishonestly, fraudulently, or in bad faith with knowledge or with reasonable cause to believe that such action was in violation of the law;

(F) which is insured by another valid coverage part(s) or policy(ies);

(G) **based upon or attributable to bodily injury, mental anguish, emotional distress, sickness, disease, or death of any person, or to damages to or destruction of any tangible property including losses of use thereof;** however, this exclusion as to mental anguish and emotional distress only does not apply to any claim brought against an **INDIVIDUAL INSURED** or the **ENTITY** by a current, former or prospective employee, **OFFICER, DIRECTOR** or volunteer for wrongful termination, discrimination or sexual harassment.

(H) based upon the rendering of or failure to render any professional services;

(I) for claims, demands, or actions seeking relief or redress in any form other than compensatory damages, or for any fees, costs or expenses which the **INSURED(S)** may become obligated to pay as a result of any adverse judgment for declaratory relief or injunctive relief; however, the Company will afford defense to the **INSURED(S)** for such actions, claims, suits or demands in which compensatory damages are requested if not otherwise excluded;

(J) for any loss, cost or expense arising out of any governmental direction or request to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants. Pollutants means any solid, liquid, gaseous, or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, asbestos, alkalis, chemicals and waste. Waste includes, but is not limited to, materials to be recycled, reconditioned or reclaimed;

(K) based upon the Employee Retirement Income Security Act of 1974, public law 93-406, commonly referred to as the Pension Reform Act of 1974, and amendments thereto, or similar provisions of any federal, state or local statutory law or common law;

(L) based upon or attributable to any anti-trust actions or suits;

(M) based upon or attributable to any failure or omission on the part of any **INSURED** to effect and maintain insurance of any kind;

(N) for any claim brought by any **INDIVIDUAL INSURED(S)** or the **ENTITY** against any other **INDIVIDUAL INSURED(S)** or the **ENTITY**; however, this exclusion does not apply to any claim brought by an **INDIVIDUAL INSURED** for wrongful termination, discrimination or sexual harassment; or

(O) arising from any litigation pending or filed prior to the inception date of this Policy or any future claims or litigation based upon the pending or prior litigation or derived from the same or essentially the same facts (actual or alleged) that gave rise to the prior or pending litigation.

---

## V.  LIMIT OF LIABILITY AND RETENTION

---

(A) The Company shall be liable to pay **LOSS** in excess of the Retention amount, if any, stated in the Declarations, up to the amount stated in the Declarations as the "Limit of Liability each **POLICY PERIOD**." This amount shall be the Company's maximum Limit of Liability for **LOSS** for each **POLICY PERIOD**.

DES-P-1 (7-96)

(B) Losses based on or arising out of the same act or interrelated acts of one or more **INSURED(S)** shall be considered a single claim and only one Retention shall apply. All such claims shall be considered first made on the date on which the earliest claim arising out of such act or interrelated acts was first made against the **INSURED(S)**.

(C) The Retention, if any, shall remain uninsured. It shall be applied first against **LOSS ADJUSTMENT EXPENSE** and, if not exhausted, against **LOSS** payments.

(D) The Company may pay all or any part of the Retention amount to effect settlement of any claim. Upon demand, the **INSURED(S)** shall promptly reimburse the Company for such amount of the Retention that the Company has paid.

(E) The Company's obligation to pay **LOSS ADJUSTMENT EXPENSE** shall not reduce the Loss Limit of Liability.

(F) **IN NO EVENT SHALL THE COMPANY'S MAXIMUM LIMIT OF LIABILITY BE INCREASED BY AN EXTENDED REPORTING PERIOD.**

## VI. NOTICE OF CLAIM AND LOSS PROVISIONS

(A) If, during the **POLICY PERIOD** or the Extended Reporting Periods, the **INSURED(S)** shall receive written or oral notice from any party that it is the intention of such party to hold the **INSURED(S)** responsible for any **WRONGFUL ACT(S)**, the **INSURED(S)** shall give written notice to the Company of the receipt of such written or oral notice as soon as practicable. At that time, any claims made against the **INSURED(S)** arising out of such **WRONGFUL ACT(S)** shall, for the purpose of this Coverage Part, be treated as claims made during the **POLICY PERIOD** in which such notice was given, or, if given during the Extended Reporting Periods, as a claim made during the last **POLICY PERIOD**.

(B) The **INSURED(S)** shall give written notice to the Company as soon as practicable of any claim made against the **INSURED(S)** or of any specific circumstances involved which may result in a claim. The notice shall identify the **INDIVIDUAL INSURED(S)** and the **ENTITY** and contain reasonably obtainable information with respect to the time, place and circumstances of the claim including the names and addresses of those involved and of available witnesses and the extent of the type of claim anticipated. If a claim is made or suit is brought against the **INDIVIDUAL INSURED(S)** or the **ENTITY**, every demand, notice, summons or other process received by the **INDIVIDUAL INSURED(S)** or the **ENTITY** or the **INDIVIDUAL INSURED(S)'** or **ENTITY'S** representatives shall immediately be forwarded to the Company.

(C) The **INSURED(S)** shall cooperate with the Company and, upon the Company's request, assist in making settlements in the conduct of suit and in the enforcement of any right of contribution or indemnity against any person or organization who may be liable.

## VII. GENERAL CONDITIONS

(A) **APPLICATION:** In issuing this Coverage Part, the Company has relied on the declarations and statements which are contained in the application form and which are deemed to be incorporated in this Coverage Part; provided, however, that, except for material facts or circumstances known to the person who subscribed the proposal form, any misstatement or omission in such proposal form in respect of a specified **WRONGFUL ACT** by a particular **INDIVIDUAL INSURED(S)**, his cognizance of any matter which he has reason to suppose might afford grounds for a future claim against him, shall not be imputed to any other **INDIVIDUAL INSURED(S)** for purposes of determining the availability of coverage under this Coverage Part.

(B) **EXTENDED REPORTING PERIODS:**

(1) One or more Extended Reporting Periods, as described below, will be provided:

DES-P-1 (7-96)                    Page 4 of 5

(a) if this Coverage Part is canceled or nonrenewed for other than nonpayment of premium; or

(b) if the Company renews or replaces coverage with insurance that is other than a claims made form.

(2) A "Basic Extended Reporting Period" is automatically provided without additional charge. This period starts with the end of the **POLICY PERIOD** and lasts for sixty (60) days. The "Basic Extended Reporting Period" does not apply to claims covered under any subsequent Director(s) and Officer(s) or Trustee(s) Liability Coverage Part.

(3) In addition, up to three (3) "Supplemental Extended Reporting Periods" of twelve (12) months each are available, but only if added by endorsement and for an additional premium charge. The first period starts sixty (60) days after the end of the **POLICY PERIOD**.

(4) The **ENTITY**, subject to the terms and conditions set forth herein, shall have a right to select that period to which the "Supplemental Extended Reporting Period" shall apply, which in no event shall exceed thirty-six (36) months immediately upon such cancellation or refusal to renew. An additional premium is immediately due in an amount equal to fifty percent (50%) of the premium previously charged by the Company for each year for which the **INSURED(S)** elects to have the "Supplemental Extended Reporting Period" rendered applicable. Once in effect, Supplemental Extended Reporting Periods may not be canceled.

(5) The right of extension shall terminate unless written notice is given to the Company not later than thirty (30) days after the effective date of cancellation or nonrenewal.

(6) The Extended Reporting Periods do not extend the **POLICY PERIOD** or change the scope of coverage provided. Subject otherwise to the Coverage Part's terms, Limit of Liability, Exclusions and Conditions, the Coverage Part is extended to apply to claims first made during the "Basic Extended Reporting Period" or, if purchased, the "Supplemental Extended Reporting Period," but only by reason of any **WRONGFUL ACT** committed prior to the end of the **POLICY PERIOD**.

(7) **EXTENDED REPORTING PERIODS DO NOT REINSTATE OR INCREASE THE LIMITS OF LIABILITY OF THE COVERAGE PART.** Claims for **WRONGFUL ACTS** which are first received during an Extended Reporting Period shall be deemed to have been made on the last day of the **POLICY PERIOD**.

(C) **ACTION AGAINST COMPANY:** No action shall lie against the Company unless, as a condition precedent thereto, the **INSURED(S)** shall have fully complied with all the terms and conditions of this Coverage Part. In the event of the bankruptcy or insolvency of the **ENTITY**, the Company shall not be relieved of the payment of such indemnity hereunder as would have been payable but for such bankruptcy or insolvency.

(D) **SUBROGATION CLAUSE:** In the event of any payment under this Coverage Part, the Company shall be subrogated to the extent of such payment to all rights of recovery therefore, and the **INSURED(S)** shall execute all papers required and shall do everything that may be necessary to secure and preserve such rights including the execution of such documents necessary to enable the Company effectively to bring suit in the name of the **INSURED(S)**.

(E) **AUTHORIZATION CLAUSE AND NOTICES:** By acceptance of this Coverage Part, all **INSURED(S)** agree that the **ENTITY** shall act on behalf of all **INSURED(S)** with respect to the giving and receiving of notice of claim or cancellation, the payment of premiums, the reimbursement of the Retention, and the receiving of any return premiums that may become due under this Coverage Part.

 **Scottsdale**  **surance Company** '

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 1201 | NOON | | |
| OPS000607 | 11 | 17 | 97 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J. J. Negley Assoc., Inc. 295018 |

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREULLY.

## DIRECTORS AND OFFICERS LIABILITY
## INCLUDING ENTITY REIMBURSEMENT AND ENTITY LIABILITY POLICY
## LIMITED RETROACTIVE ENDORSEMENT

In consideration of the premium shown on the Declarations, it is hereby agreed that section I. INSURING AGREEMENTS, coverage is deleted and replaced by the following:

I. INSURING AGREEMENTS

COVERAGE

A. The Company will pay on behalf of the **INDIVIDUAL INSURED(S)** and/or the **ENTITY**, in accordance with the terms, conditions and exclusions of the Policy, **LOSS** which the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** shall become legally obligated to pay by reason of any claim or claims made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** as the result of a **WRONGFUL ACT**, provided always:

1. that the **WRONGFUL ACT** was committed by the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** on or after the Retroactive Date listed in (B) below and prior to the end of the **POLICY YEAR**; and

2. that the claim is first made against the **INDIVIDUAL INSURED(S)** and/or the **ENTITY** during the **POLICY YEAR**.

(B) Retroactive Date:    11/17/95

AUTHORIZED REPRESENTATIVE                                           DATE

DES-3 (9-95)

  

 **SCOTTSDALE INSURANCE COMPANY®**

**ENDORSEMENT NO.** 6

| ATTACHED TO AND FORMING A PART OF POLICY NUMBER | ENDORSEMENT EFFECTIVE (STANDARD TIME) | | | | | INSURED | AGENCY AND CODE |
|---|---|---|---|---|---|---|---|
| | MO. | DAY | YR. | 12:01 | NOON | | |
| OPS000607 | 12 | 14 | 97 | A.M. X | | Lock Towns Community Mental Health Center, Inc. | J.J. Negley Assoc. 295018 |

Commercial General Liability Coverage Part

Code #11111

Coverage is extended to include "Special Event"

Event:          Fund Raiser

Date of Coverage:          12/14/97

Location:          1025 NE Miami Gardens Drive
                   North Miami Beach, Florida

| REG DESK | CODING | USPW | FILE |
|---|---|---|---|
| | | JAN 22 1998 / LINDA LANE | |

EGN

LINDA LANE

DEC 2 8 1997

Additional Premium:     Waived

_____     /     12/10/97 mk
AUTHORIZED REPRESENTATIVE                  DATE

UTS-3g (3-92)

JS 44   (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

SCOTTSDALE INSURANCE COMPANY

## DEFENDANTS

LOCK TOWNS COMMUNITY MENTAL HEALTH CTR, INC., MARK KNOBEL, and KIMBERLY FOSTER

**(b)** County of Residence of First Listed Plaintiff   N/A - a foreign corpora
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)
NOTE   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Julie K. Narhi, Esq., PHELPS DUNBAR, LLP
100 S. Ashley Drive, Suite 1900, Tampa, FL 33602   813-472-7550

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☒ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

### CONTRACT
- ☒ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS
**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

### PRISONER PETITIONS
- ☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

### FORFEITURE/PENALTY
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN   (Place an "X" in One Box Only)

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 2201 and 28 U.S.C. Section 1332

Brief description of cause:
Action for Declaratory Judgment and Diversity Jurisdiction

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE   09/30/2005

SIGNATURE OF ATTORNEY OF RECORD   *Julie K. Narhi*

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____